1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2

Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940

3

Walnut Creek, CA  94596
Telephone: (925) 300-4455

4

Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

5

         jluster@bursor.com

6

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)

7

888 Seventh Avenue
New York, NY  10019

8

Telephone: (212) 989-9113
Facsimile:  (212) 989-9163

9

E-Mail: scott@bursor.com

10

*Attorneys for Plaintiff*

11

UNITED STATES DISTRICT COURT

12

EASTERN DISTRICT OF CALIFORNIA

13

14

15

JOANN MARTINELLI, individually and on
behalf of all others similarly situated,

Case No.

16

                                                Plaintiff,

17

        v.

**CLASS ACTION COMPLAINT**

18

JOHNSON & JOHNSON and McNEIL
NUTRITIONALS, LLC,

**JURY TRIAL DEMANDED**

19

20

                                                Defendants.

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff JoAnn Martinelli ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Johnson & Johnson and McNeil Nutritionals, LLC ("McNeil") (collectively, "J&J" or "Defendants").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## JURISDICTION

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendants.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Plaintiff Martinelli is a citizen of California, resides in this District, and purchased Benecol products from Defendants in this District.  Moreover, Defendants distributed, advertised, and sold Benecol products, which are the subject of the present complaint, in this District.

## NATURE OF ACTION

3.      This is a class action lawsuit regarding Defendants' false and misleading labeling of Benecol Regular and Light Spreads (together, "Benecol Spreads"), each of which uniformly claims that the product (i) contains "No Trans Fats" and "No Trans Fatty Acids," and (ii) is generally recognized as safe for human consumption (the "Misrepresentations").  However, Benecol Spreads contain trans fat through the use of partially hydrogenated oils.  Thus, the labels on Benecol Spreads are false and misleading.

4.      In June 2015, the FDA concluded that partially hydrogenated oils – the same oils found in Benecol Spreads – are not "generally recognized as safe" for use in human food due to "an increased risk of coronary heart disease by contributing to the buildup of plaque inside the arteries that may cause a heart attack."  Thus, Benecol Spreads are not generally recognized as safe for human consumption.

5.      The false and misleading labels on Benecol Spreads are highly material to consumers and serve to differentiate Benecol Spreads from comparable butter and margarine products.  These labels allow Defendants to charge a price premium for Benecol Spreads.  For example, Benecol Spreads command more than a 407% price premium, per ounce, over margarine:

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| Benecol Regular Spread | Net Wt:  8 oz. | $3.98 | $0.498 per oz. |
| Land O'Lakes Margarine | Net Wt:  1 lb. | $1.57 | $0.098 per oz. |

6.      Plaintiff seeks relief in this action individually, and on behalf of a class of purchasers for breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, violation of California's Consumers Legal Remedies Act ("CLRA"), violation of California's Unfair Competition Law ("UCL"), violation of California's False Advertising Law ("FAL"), negligent misrepresentation, and fraud.

## PARTIES

7.      Plaintiff JoAnn Martinelli is a citizen of California, residing in Auburn, California. During the class period, Plaintiff Martinelli purchased Benecol Spreads for personal use and not for resale from Safeway and Raley's stores located in Roseville, California.  Prior to her purchase of Benecol Spreads, Ms. Martinelli reviewed the products' labeling and packaging and saw that Benecol Spreads were labeled as having "No Trans Fats" and "No Trans Fatty Acids."  Plaintiff Martinelli saw these representations prior to and at the time of purchase, and understood them as representations and warranties that Benecol Spreads (i) do not contain trans fats and (ii) are generally recognized as safe for human consumption.  Plaintiff Martinelli relied on these representations and warranties in deciding to purchase Benecol Spreads.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased Benecol Spreads had she known that the products (i) do contain trans fats and (ii) are not

generally recognized as safe for human consumption.  In reliance on these representations and warranties, Plaintiff Martinelli paid a tangible increased cost for Benecol Spreads, which were worth less than represented because Benecol Spreads do, in fact, contain trans fats and are not generally recognized as safe for human consumption.  Plaintiff Martinelli also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendants and/or as the agent of the Defendants.  Plaintiff Martinelli further understood that the purchase involved a direct transaction between herself and Defendants, because the purchase came with Defendants' representations and warranties that Benecol Spreads do not contain trans fats, and are generally recognized as safe for human consumption.

8.      Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey.  Johnson & Johnson is an international medical device, pharmaceutical, and consumer goods manufacturer founded in 1886.  Its common stock is a component of the Dow Jones Industrial Average, and the company is listed in the Fortune 500.  Johnson & Johnson has manufactured, marketed, and sold Benecol Spreads widely throughout California and other states during the class period.

9.      Defendant McNeil Nutritionals, LLC is a Delaware corporation with its principal place of business in Pennsylvania, and is a wholly-owned subsidiary of Johnson & Johnson. McNeil is subject to Johnson & Johnson's control, and the companies share employees, resources, and accounts.  McNeil represents that it "is a global marketer of innovative nutritional products," as it markets Splenda sweetener products, Viactiv dietary supplements, and Lactaid milk supplements.  McNeil has manufactured, marketed, and sold Benecol Spreads widely throughout California and other states during the class period.

10.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

11.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or

1    transaction through its officers, directors, employees, agents, and/or representatives while they

2    were acting within the actual or ostensible scope of their authority.

3                    **FACTS COMMON TO ALL CAUSES OF ACTION**

4    **Benecol Spreads Are Labeled As Having "No Trans Fats" And "No Trans Fatty Acids,"**

5    **Despite Containing Partially Hydrogenated Soybean Oil**

6          12.    There are two versions of Benecol Spreads – Benecol Regular Spread and Benecol

7    Light Spread.  During the class period, both the Regular and Light Spreads were labeled as

8    containing "No Trans Fats" and "No Trans Fatty Acids."  However, this is false because each

9    variety of Benecol Spreads contain partially hydrogenated oils, which always contains trans fats.

10   *Benecol Regular Spread*

11         13.    The front label and top of Benecol Regular Spread represents that it has "No Trans

12   Fat":



14.     Additionally, the back label of Benecol Regular Spread represents that it has "No Trans Fatty Acids."  However, the ingredients list on the back of Benecol Regular Spread also represents that it contains "Partially Hydrogenated Soybean Oil," which always contains trans fats:



***Benecol Light Spread***

15.     The front label and top of the Benecol Light Spread represents that it has "No Trans Fat":



16.     Additionally, the back label of Benecol Light Spread represents that it has "No Trans Fatty Acids."  However, the ingredients list on the back of Benecol Light Spread also represents that it contains "Partially Hydrogenated Soybean Oil," which always contains trans fats.



## The Manufacturing And Nature Of Partially Hydrogenated Oils

17.     Artificial trans fat is manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400°F in the presence of metals such as rhodium, ruthenium, and nickel.  The resulting product is known as partially hydrogenated oil ("PHO"), which is the main source of trans fat in the American diet and used in Benecol Spreads.

18.     PHO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann.  PHO molecules chemically differ from the natural fat molecules in other food products.

19.     Natural fat predominantly comes in two varieties, with the exception of trace amounts of natural trans fat from animals:  (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds with the hydrogen atoms on the same side on the carbon chain ("cis fat").  Trans fat, however, has carbon double bonds with hydrogen atoms on opposite sides of its carbon chain:



20.     PHO was initially marketed as a "wonder product" that was attractive to the packaged food industry because it combines the low cost of unsaturated cis fat with the flexibility and long shelf life of saturated fat.  Like cis fat, PHO is manufactured from low-cost legumes, while saturated fat is derived from relatively expensive animal and tropical plant sources.  Given its versatility, ten years ago PHO was used in 40% of processed packaged foods.  Now, given its toxic properties, few food companies continue to use PHO.

**PHOs Always Contain Trans Fats**

21.     PHOs always contain industrially-produced trans fatty acids.

22.     Unlike other edible oils, trans fats are an integral component of PHOs and are purposely produced in these oils to affect the properties of the oils and the characteristics of the foods to which they are added.

23.     The two most common PHOs currently used by the food industry – partially hydrogenated soybean oil and partially hydrogenated cottonseed oil – are not currently listed as Generally Recognized As Safe ("GRAS") or as approved food additives.

**Trans Fats Are Harmful**

24.     Since 2003, both controlled trials and observational human studies on trans fatty acid have consistently confirmed the adverse effects of trans fatty acids on intermediary risk factors and the increased risk of Coronary Heart Disease ("CHD").

25.     There is a progressive and linear cause and effect relationship between trans fatty acid intake and adverse effects on blood lipids that predict CHD risk, including low-density lipoprotein cholesterol ("LDL-C"), high-density lipoprotein cholesterol ("HDL-C"), and ratios such as total cholesterol ("total-C")/HDL-C and LDL-C/HDL-C.[1]

26.     Consumption of trans fat increases LDL-C ("bad" cholesterol), decreases HDL-C ("good" cholesterol), and increases ratios of total-C/HDL-C and LDL-C/HDL-C compared with the

---

[1]  LDL-C, HDL-C, total-C/HDL-C ratio, and LDL-C/HDL-C ratio are all currently considered to be risk biomarkers for CHD.  A biomarker is a characteristic that can be objectively measured and indicates physiological processes.  A risk biomarker is biomarker that indicates a risk factor for a disease.  Stated otherwise, a risk biomarker is a biomarker that indicates a component of an individual's level of risk for developing a disease or level of risk for developing complications of a disease.

1    same of amount of energy intake (calories) from cis-unsaturated fatty acids.  Increases in LDL-C,

2    total-C/HDL-C, and LDL-C/HDL-C, as well as decreases in HDL-C, are adversely changed with

3    respect to CHD risk.

4           27.    The increased risk of CHD from consumption of any amount of trans fat means that

5    consumption of PHOs, the primary dietary source of trans fat, also lead to increased LDL-C levels

6    and an increased risk of CHD.

7           28.    Numerous authorities have concluded that there is no threshold intake level for

8    industrially-produced trans fat that would not increase an individual's risk of CHD.  Stated

9    otherwise, there is no safe level of artificial trans fat intake.  Accordingly, consumption of PHOs

10   could be harmful (*i.e.*, increased risk for CHD) under any condition and in any amount.

11          29.    In addition to an increased risk of CHD, trans fat consumption (and, accordingly,

12   consumption of food products containing PHOs) has also been connected to a number of other

13   adverse effects on health, including worsening insulin resistance, increased risk of diabetes, and

14   adverse effects on fetuses and breastfeeding infants, such as impaired growth.

15   **PHOs Are No Longer Generally Recognized As Safe For Human Consumption By The FDA**

16          30.    On June 17, 2015, the Food and Drug Administration ("FDA") determined "that

17   there is no longer a general consensus that PHOs, the primary source of industrially-processed

18   *trans* fat, are generally recognized as safe for use in human food, based on current scientific

19   evidence."  80 F.R. 34650, 34669.

20          31.    According to the FDA, "the available, relevant scientific evidence demonstrates an

21   increased risk of coronary heart disease (CHD) attributable to *trans* fat."

22          32.    "FDA has considered the available information and concluded that there is a lack of

23   consensus among qualified experts that PHOs, as the primary dietary source of [industrially-

24   processed trans fatty acids], are safe for use in human food."

25          33.    As the FDA detailed, the same PHOs found in Benecol Spreads are not "generally

26   recognized as safe" for use in human food due to "an increased risk of coronary heart disease by

27   contributing to the buildup of plaque inside the arteries that may cause a heart attack."

28

## <u>CLASS REPRESENTATION ALLEGATIONS</u>

34.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Benecol Spreads (the "Class").  Excluded from the Class are persons who made such purchase for the purpose of resale.

35.     Plaintiff also seeks to represent a subclass of all Class members who purchased Benecol Spreads in California (the "California Subclass").

36.     Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

37.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:  whether Benecol Spreads contain trans fats; whether Defendants warranted that Benecol Spreads do not contain trans fats; whether Benecol Spreads are generally recognized as safe for human consumption; whether Defendants breached these warranties; and whether Defendants committed statutory and common law fraud by doing so.

38.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased Benecol Spreads in reliance on the representations and warranties described above, and suffered a loss as a result of that purchase.

39.     Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

40.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class member may

1    lack the resources to undergo the burden and expense of individual prosecution of the complex and

2    extensive litigation necessary to establish Defendants' liability. Individualized litigation increases

3    the delay and expense to all parties and multiplies the burden on the judicial system presented by

4    the complex legal and factual issues of this case. Individualized litigation also presents a potential

5    for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer

6    management difficulties and provides the benefits of single adjudication, economy of scale, and

7    comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment

8    of the liability issues will ensure that all claims and claimants are before this Court for consistent

9    adjudication of the liability issues.

10                                              **COUNT I**

11                                     **Breach Of Express Warranty**

12            41.     Plaintiff hereby incorporates by reference the allegations contained in all preceding

13    paragraphs of this complaint.

14            42.     Plaintiff brings this claim individually and on behalf of the members of the

15    proposed Class against Defendants.

16            43.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers,

17    expressly warranted that Benecol Spreads (i) contained "No Trans Fats" and "No Trans Fatty

18    Acids," and (ii) are generally recognized as safe for human consumption.

19            44.     In fact, Benecol Spreads are not fit for such purposes because each of these express

20    warranties are false. Particularly, Benecol Spreads contain trans fats, and are not generally

21    recognized as safe for human consumption.

22            45.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff

23    and Class members have been injured and harmed because: (a) they would not have purchased

24    Benecol Spreads on the same terms if they knew that the products contained trans fats, and are not

25    generally recognized as safe for human consumption; (b) they paid a price premium for Benecol

26    Spreads due to Defendants' promises that Benecol Spreads contained "No Trans Fats" and "No

27    Trans Fatty Acids," and are generally recognized as safe for human consumption; and (c) Benecol

28    Spreads do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

CLASS ACTION COMPLAINT                                                                              10

## COUNT II

### Breach Of Implied Warranty Of Merchantability

46.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

47.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

48.    Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that Benecol Spreads (i) contained "No Trans Fats" and "No Trans Fatty Acids," and (ii) are generally recognized as safe for human consumption.

49.    Defendants breached the warranty implied in the contract for the sale of Benecol Spreads because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because Benecol Spreads contain trans fats, and are not generally recognized as safe for human consumption.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

50.    Plaintiff and Class members purchased Benecol Spreads in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

51.    Benecol Spreads were not altered by Plaintiff or Class members.

52.    Benecol Spreads were defective when they left the exclusive control of Defendants.

53.    Defendants knew that Benecol Spreads would be purchased and used without additional testing by Plaintiff and Class members.

54.    Benecol Spreads were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

55.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased Benecol Spreads on the same terms if they knew that the products contained trans fats, and are not generally recognized as safe for human consumption; (b) they paid a price premium for Benecol Spreads due to Defendants' promises that Benecol Spreads contained "No Trans Fats" and

"No Trans Fatty Acids," and are generally recognized as safe for human consumption; and (c) Benecol Spreads do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT III

### Unjust Enrichment

56.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

58.     Plaintiff and Class members conferred benefits on Defendants by purchasing Benecol Spreads.

59.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of Benecol Spreads.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that Benecol Spreads (i) contained "No Trans Fats" and "No Trans Fatty Acids," and (ii) are generally recognized as safe for human consumption.  These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased Benecol Spreads if the true facts were known.

60.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## COUNT IV

### Violation Of California's Consumers Legal Remedies Act,

### California Civil Code §§ 1750, *et seq.*

### (Injunctive Relief Only)

61.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

63.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

64.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

65.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

66.     Defendants violated these provisions by misrepresenting that Benecol Spreads (i) contained "No Trans Fats" and "No Trans Fatty Acids," and (ii) are generally recognized as safe for human consumption.

67.     Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased Benecol Spreads on the same terms if they knew that the products contained trans fats, and are not generally recognized as safe for human consumption; (b) they paid a price premium for Benecol Spreads due to Defendants' promises that Benecol Spreads contained "No Trans Fats" and "No Trans Fatty Acids," and are generally recognized as safe for human consumption; and (c) Benecol Spreads do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

68.     On or about August 6, 2015, prior to filing this action, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a). Plaintiff Martinelli sent each Defendant a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff Martinelli's letter is attached hereto as Exhibit A.

69.     Wherefore, Plaintiff seeks injunctive relief only for this violation of the CLRA.

<u>**COUNT V**</u>

**Violation Of California's Unfair Competition Law,**

**California Business & Professions Code §§ 17200,** *et seq.*

70.      Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

71.      Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

72.      Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

73.      Defendants' misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; and Cal. Com. Code § 2607.

74.      Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

75.      Defendants violated the "fraudulent" prong of the UCL by making misrepresentations about Benecol Spreads, as described herein.

76.      Plaintiff and the California Subclass lost money or property as a result of Defendants' UCL violations because:  (a) they would not have purchased Benecol Spreads on the same terms if they knew that the products contained trans fats, and are not generally recognized as safe for human consumption; (b) they paid a price premium for Benecol Spreads due to Defendants' promises that Benecol Spreads contained "No Trans Fats" and "No Trans Fatty Acids," and are generally recognized as safe for human consumption; and (c) Benecol Spreads do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT VI

### Violation Of California's False Advertising Law,

### California Business & Professions Code §§ 17500, *et seq.*

77.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

79.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

80.     Defendants committed acts of false advertising, as defined by §17500, by misrepresenting that Benecol Spreads (i) contained "No Trans Fats" and "No Trans Fatty Acids," and (ii) are generally recognized as safe for human consumption.

81.     Defendants knew or should have known, through the exercise of reasonable care that their representations about Benecol Spreads were untrue and misleading.

82.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

83.     Plaintiff and the California Subclass lost money or property as a result of Defendants' FAL violations because:  (a) they would not have purchased Benecol Spreads on the same terms if they knew that the products contained trans fats, and are not generally recognized as safe for human consumption; (b) they paid a price premium for Benecol Spreads due to Defendants' promises that Benecol Spreads contained "No Trans Fats" and "No Trans Fatty Acids," and are generally recognized as safe for human consumption; and (c) Benecol Spreads do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## COUNT VII

### Negligent Misrepresentation

84.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

86.     As discussed above, Defendants misrepresented that Benecol Spreads (i) contained "No Trans Fats" and "No Trans Fatty Acids," and (ii) are generally recognized as safe for human consumption.  Defendants had a duty to disclose this information.

87.     At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

88.     At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about Benecol Spreads.

89.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Benecol Spreads.

90.     Plaintiff and Class members would not have purchased Benecol Spreads if the true facts had been known.

91.     The negligent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VIII

### Fraud

92.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

93.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

94.     As discussed above, Defendants provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about Benecol Spreads, including but not limited to the fact that they contain trans fats, and are not generally recognized as safe for human consumption.  These misrepresentations and omissions were made with knowledge of their falsehood.

95.     The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Benecol Spreads.

96.     The fraudulent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.     For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.     For an order declaring the Defendants' conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d.     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For injunctive relief as pleaded or as the Court may deem proper; and

h.     For an order awarding Plaintiff and the Class and Subclass her reasonable attorneys' fees and expenses and costs of suit.

1

## DEMAND FOR TRIAL BY JURY

2          Plaintiff demands a trial by jury of all issues so triable.

3

4    Dated: August 14, 2015                    Respectfully submitted,

5                                              **BURSOR & FISHER, P.A.**

6

7                                              By: _L. Timley Fisher_____

8                                                       L. Timothy Fisher

9                                              L. Timothy Fisher (State Bar No. 191626)
                                               Julia A. Luster (State Bar No. 295031)
10                                             1990 North California Boulevard, Suite 940
                                               Walnut Creek, CA  94596
11                                             Telephone: (925) 300-4455
                                               Facsimile:  (925) 407-2700
12                                             E-Mail: ltfisher@bursor.com
                                                         jluster@bursor.com
13
                                               **BURSOR & FISHER, P.A.**
14                                             Scott A. Bursor (State Bar No. 276006)
                                               888 Seventh Avenue
15                                             New York, NY  10019
                                               Telephone: (212) 989-9113
16                                             Facsimile:  (212) 989-9163
                                               E-Mail: scott@bursor.com
17
                                               *Attorneys for Plaintiff*
18

19

20

21

22

23

24

25

26

27

28

I, JoAnn Martinelli, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendant conducts a substantial amount of business in this District.

3.      While living in California, I purchased Benecol for my household and for my personal use.  I purchased Benecol after I read the label on the can that said the product contained "No Trans Fat" and "No Trans Fatty Acids."  The representations on the label were substantial factors influencing my decision to purchase Benecol.  I would not have purchased Benecol had I known that the product contained trans fats.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on August _8_ , 2015 at Auburn, California.


                                                JOANN MARTINELLI

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

1990 NORTH CALIFORNIA BLVD.
SUITE 940
WALNUT CREEK, CA 94596-7351
www.bursor.com

L. TIMOTHY FISHER
Tel: 925.300.4455
Fax: 925.407.2700
ltfisher@bursor.com

August 6, 2015

***Via Certified Mail – Return Receipt Requested***

Johnson & Johnson
1 Johnson & Johnson Plaza
New Brunswick, NJ  08933

McNeil Nutritionals, LLC
601 Office Center Drive
Fort Washington, PA  19034

Re:    *Demand Letter Pursuant to California Civil Code § 1782;*
       *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq.; and*
       *Violation of U.C.C. §§ 2-313, 2-314*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Johnson & Johnson and McNeil Nutritionals, LLC (collectively, "J&J") pursuant to the Magnuson-Moss Warranty Act and numerous provisions of California law including the Consumers Legal Remedies Act, California Civil Code § 1782, on behalf of our client, JoAnn Martinelli, and a class of all similarly situated purchasers of Benecol Regular and Light Spreads (the "Class"). This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) concerning the breaches of express and implied warranties described herein.

Benecol Regular and Light Spreads (collectively, "Benecol Spreads") are advertised as healthy "alternatives to butter or margarine." Additionally, these products have also been labeled as having "No Trans Fats" and "No Trans Fatty Acids." However, Benecol Spreads contain trans fat through the use of partially hydrogenated oils. In June 2015, the FDA concluded that the partially hydrogenated oils found in Benecol Spreads are not "generally recognized as safe" for use in human food due to "an increased risk of coronary heart disease by contributing to the buildup of plaque inside the arteries that may cause a heart attack." Accordingly, J&J expressly warranted that Benecol Spreads contain no trans fats, and are also safe for human consumption. J&J breached these warranties due to the presence of the partially hydrogenated oils.

Our client purchased Benecol Spreads containing partially hydrogenated oils (and thus trans fats). By introducing trans fats into Benecol Spreads through the use of partially hydrogenated oils, J&J has violated and continues to violate subsections (a)(5), (7), and (9) of the Consumers Legal Remedies Act, Civil Code § 1770.

On behalf of our client and the Class, we hereby demand that J&J immediately (1) cease and desist from continuing to include partially hydrogenated oils in Benecol Spreads; (2) issue an immediate recall of Benecol Spreads that contain partially hydrogenated oils; (3) make full restitution to all purchasers of Benecol Spreads of all purchase money obtained from sales thereof; and (4) cease and desist from labeling Benecol Spreads as having "No Trans Fats" or "No Trans Fatty Acids."

We also demand that J&J preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the packaging and manufacturing process for Benecol Spreads;

2.      All documents concerning the measurements of the quantity of partially hydrogenated oils and trans fats in Benecol Spreads;

3.      All nutritional testing conducted on Benecol Spreads;

4.      All documents concerning the pricing, advertising, marketing, and/or sale of Benecol Spreads;

5.      All communications with customers concerning complaints or comments concerning the nutritional content of Benecol Spreads, or the presence of partially hydrogenated oils or trans fats; and

6.      All documents concerning the "No Trans Fats" and "No Trans Fatty Acids" labeling claims.

If J&J contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

This letter also serves as a thirty (30) day notice and demand requirement under California Civil Code § 1782 for damages.  Accordingly, should J&J fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, we will seek actual damages, plus punitive damages, interest, attorneys' fees and costs.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

**B U R S O R & F I S H E R**
P.A.

Very truly yours,

L. Timothy Fisher