UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN MARTINELLI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC,<br><br>Defendants. | No. 2:15-cv-1733-MCE-EFB (TEMP)<br><br>ORDER |

This matter was before the court on June 22, 2016, for hearing on plaintiff's motion to compel discovery. Attorney Annick Persinger appeared on behalf of the plaintiff and attorneys Ronie Schmelz and Amanda Villalobos appeared on behalf of the defendants. Oral argument was heard and the court ordered the parties to submit supplemental briefing. ECF No. 35. On July 1, 2016, defendants filed their supplemental opposition. ECF No. 39. On July 8, 2016, plaintiff filed a supplemental response.[1] ECF No. 40.

---

[1] At oral argument plaintiff referred to and relied in part on this court's prior discovery analysis of marketing information and data in *Salazar v. Honest Tea, Inc.*, 2015 WL 6535348 (denying reconsideration of discovery order to produce marketing data, No. 2:13-cv-2318 KJM EFB, ECF Nos. 64 and 66). Defense counsel noted that defendants had not had the opportunity to address that case and, accordingly, supplemental briefing was ordered. Supplemental briefs were submitted but defendants' supplemental brief does not address *Salazar*. Although discovery was bifurcated in *Salazar,* 2015 WL 6535348 at *1, as discussed below this court found in that case

## ANALYSIS

According to the June 15, 2016 updated joint statement, ECF No. 34, the parties' disputes are as follows.

A.  Plaintiff's RFP No. 4

Plaintiff's motion to compel seeks discovery "dating back to mid-2008." ECF No. 34 at 9.[2] Defendants, however, "object to producing information that is beyond the appropriate statute of limitations applicable to Plaintiff's state law claims." *Id.* at 12. Specifically, defendants contend that the statute of limitations for plaintiff's claims extends only to 2011 and object to producing discovery for periods prior to that. *Id.* at 9. Defendants add that they "presently intend to file a motion pursuant to Rule 12(c) . . . seeking an order that defines the appropriate temporal scope of the putative class Plaintiff seeks to represent." *Id.* at 12. However, they have not filed a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure nor has the court issued an order setting a temporal limitation on the scope of the putative class.[3] To the contrary, on March 7, 2016, the assigned District Judge issued a Scheduling Order, permitting the parties to proceed with discovery of "facts that are relevant to whether this action should be certified as a class action . . . ." ECF No. 25 at 2.

/////

---

that marketing research data is relevant to the reasonable consumer standard for purposes of discovery of that data.

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[3] Moreover, the determination of the appropriate temporal limitation may require the development of a factual record. *See generally Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) ("California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation."); *Senne v. Kansas City Royals Baseball Corp.*, 114 F. Supp. 3d 906, 926 n.2 (N.D. Cal. 2015) ("to the extent that Plaintiffs contend there may have been equitable tolling as to some claims due to lack of notice . . . this is a question that is more appropriately addressed at a later stage of the case when a factual record has been developed"); *In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation*, 111 F. Supp. 3d 79, 84 (D. Mass. 2015) ("Questions of timeliness are often fact-intensive questions that are more appropriately applied at the summary judgment or trial stage of litigation.").

2

1  In this regard, the court finds defendants' argument unpersuasive and orders defendants to
2  respond to plaintiff's request for production of documents number 4.
3      B.      Plaintiff's RFP Nos. 10, 12, 13, 24, and 36
4  Requests numbers 10, 12, 13, 24, and 36 are characterized as concerning "consumer
5  research and marketing." ECF No. 34 at 13.  Plaintiff argues that the information sought by these
6  requests is "relevant to class certification because Plaintiff must demonstrate that each element of
7  each claim can be proven with evidence common to the class." *Id.*  Many of these requests,
8  however, seek discovery beyond the complaint's allegations concerning Benecol Spreads' claims
9  of "No Trans Fats," and "No Trans Fatty Acids." ECF No. 1 at 2.
10 In request number 10, plaintiff seeks:

> ALL DOCUMENTS and COMMUNICATIONS CONCERNING consumer feedback regarding the BENECOL SPREADS made within the CLASS PERIOD, including but not limited to the number and nature of consumer complaints and the complaints themselves.

ECF No. 34 at 33.

In number 12, plaintiff seeks:

> ALL DOCUMENTS and COMMUNICATIONS CONCERNING YOUR consumer research regarding the BENECOL SPREADS, including but not limited to e-mails, surveys, and correspondence with consumers and any findings, summaries, or analyses of same.

*Id*.

In number 24, plaintiff seeks:

> ALL DOCUMENTS related to any policy, procedure, or marketing strategy YOU used to market, ADVERTISE, promote, and/or sell the BENECOL SPREADS within the CLASS PERIOD.

*Id*. at 35.

These requests seek essentially all documents relating to Benecol Spreads, even if those documents have nothing to do with Benecol Spreads' claims that it contained no trans fats or fatty acids.  Plaintiff's RFP No. 13 is partially limited in that it seeks "consumer research regarding trans fat or trans fatty acids," but that request also seeks labeling or advertising of Benecol Spreads, without any limitation to claims of no trans fat or trans fatty acids. *Id.* at 33.  Only

3

1  plaintiff's RFP No. 36 is squarely limited to the Benecol Spreads' claims of no trans fat or trans

2  fatty acids.[4]  *Id.* at 37.

3        Thus, defendants' argument that "consumer research and marketing materials unrelated to

4  Benecol's trans-fat label statements are not relevant to class certification" is well taken. ECF No.

5  34 at 18. Accordingly, defendants will be ordered to respond to plaintiff's request for production

6  of documents numbers 10, 12, 13, 24, and 36 to the extent such documents concern Benecol

7  Spreads' claims that it contained no trans fats or no trans fatty acids.

8        C.      <u>Plaintiff's RFP Nos. 15, 18, 20, and 22</u>

9        The requests are characterized as concerning "Benecol Spreads' labeling, advertising, and

10 ingredients." ECF No. 34 at 14. As was true of some of the requests discussed above, plaintiff's

11 request number 20 seeks far more than information related to Benecol Spreads' claims of no trans

12 fat or trans fatty acids, and instead seeks "any internal testing or other quality control

13 measure[s]." *Id.* at 34.

14       Moreover, defendants argue that even if plaintiff's requests are limited to the complaint's

15 allegations concerning claims of no trans fat or trans fatty acids, internal documents and

16 communications regarding consumer complaints, consumer research, and marketing materials are

17 "unnecessary for class certification." ECF No. 34 at 18. Defendants argue that:

> . . . internal documents and communications regarding what they may have intended to communicate to consumers on the product labels is simply not probative of what a reasonable consumer actually understood the labels to mean and therefore the Court should not compel their production before determining whether a class can be certified.

22 *Id.*

23       In support of this argument, defendants cite to an unpublished California Court of Appeal

24 decision, *Weiss v. AstraZeneca Pharmaceuticals*, No. B215901, 2010 WL 3387220 at *13 (Cal.

25 App. 2 Dist. Aug. 30, 2010), specifically quoting the following passage:

---

[4] Plaintiff's RFP No. 36 seeks documents and communications concerning market research, surveys, or analyses concerning Benecol Spreads' claims of "no trans fats" and "no trans fatty acids." ECF No. 34 at 37.

4

> Although the internal marketing materials may be evidence of defendants' marketing ambitions, they are not persuasive evidence of the materiality of the alleged misrepresentation or of what consumers would find to be persuasive.

*Id.*

*Weiss*, however, involved an "appeal from the trial court's denial of [a] motion for class certification and from . . . summary judgment," not a motion to compel discovery. *Id.* at *1. Whether the requested evidence will suffice to prevail on the question of class certification is simply not the question. Rather the issue presented is one of discoverability. Rule 26 generally permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id*. Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Ibanez v. Miller*, No. CIV S-06-2668 JAM EFB P, 2009 WL 1706665, at *1 (E.D. Cal. Oct. 22, 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Moreover, "[t]he question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Id*. (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). The marketing research, strategy and consumer feedback information sought by these requests are relevant. As the *Weiss* opinion itself makes clear, the defendant's "internal marketing materials" were considered by that court in ruling on the motion for class certification. *Id*. at *13. Further, as this court previously explained in *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-2318 KJM EFB, ECF No. 64 at 6, 9-10, the test that applies is whether a reasonable person in deciding whether to purchase a product would attach importance to the product claim at issue, i.e. that Benecol Spreads contain no trans fats or fatty acids. Whatever information, marketing data, research and analysis defendants possess that shows whether consumers favorably respond to sales strategies centered on such a claim is relevant to whether that reasonable person standard is satisfied.

/////

1  There is little doubt that "[c]ertifying a class under Rule 23(b)(3) requires 'that the
2  questions of law or fact common to the members of the class predominate over any questions
3  affecting only individual members, and that a class action is superior to other available methods
4  for the fair and efficient adjudication of the controversy.'" *In re ConAgra Foods, Inc.*, 90 F.
5  Supp. 3d 919, 981 (C.D. Cal. 2015) (quoting Fed. R. Civ. P. 23(b)(3)).

6  Here, with respect to defendants' alleged misrepresentations, "'reliance on the alleged
7  misrepresentations may be inferred as to the entire class if the named plaintiff can show that
8  material misrepresentations were made to the class members.'" *Makaeff v. Trump University,*
9  *LLC*, No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164, at *13 (S.D. Cal. Feb. 21, 2014) (quoting
10 *Chavez v. Blue Sky Natural Bev.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010)). "Materiality . . . is
11 judged by the effect on a 'reasonable consumer.'" *Falk v. General Motors Corp.*, 496 F. Supp. 2d
12 1088, 1095 (N.D. Cal. 2007).

13 The documents plaintiff seeks, even if not viewed by any consumer, could speak to the
14 effect of the alleged misrepresentation on a reasonable consumer. *See Mullins v. Premier*
15 *Nutrition Corporation*, Case No. 13-cv-1271 RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15,
16 2016) ("Premier's own marketing research and surveys tend to show that numerous consumers
17 cite joint pain, stiffness, and function as the reasons behind their purchase."); *In re ConAgra,* 90
18 F. Supp. 3d at 1018 (noting plaintiff's reliance on "portions of ConAgra's market research").
19 Here, marketing research and data that the defendants may possess which bears on whether
20 consumer choice of product to purchase is affected by the product claim in question is relevant
21 and discoverable.

22  D.  Plaintiff's RFP No. 23

23 Plaintiff's RFP No. 23 seeks all Benecol Spreads advertisements during the class period,
24 as well as the medium and time period each advertisement was used. ECF No. 34 at 35.
25 Defendants "object to producing advertisements that appeared outside the state of California,"
26 citing *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), in support of their
27 argument that "material differences between the consumer protection laws of California and the
28 other 49 states preclude certification of a nationwide class." ECF No. 34 at 21.

6

In *Mazza*, the U.S. Court of Appeals for the Ninth Circuit held that the district court erred by "certifying a class under California law that contained class members . . . in different jurisdictions with materially different consumer protection laws." *Id.* at 590.  The court in *Mazza*, however, reached that conclusion in response to a comparison between California law and the laws of the other jurisdictions involved in that action.  In this regard, the court in *Mazza* noted:

> In its briefing, Honda exhaustively detailed the ways in which California law differs from the laws of the 43 other jurisdictions in which class members reside . . . .  With respect for the district court's judgment, we are persuaded that at least some differences that Honda identifies are material.

*Id.* at 591.  The *Mazza* court then compared California's laws to some of the other jurisdictions involved in that action.  *Id.*

As in *Weiss*, *Mazza* concerned the certification of a class—not class discovery—an issue reserved for the assigned District Judge at a later date.  *See generally Id.* at 594 ("We express no view whether on remand it would be correct to certify a smaller class containing only those who purchased or leased Acura RLs in California, or to certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law.").

## CONCLUSION

Accordingly, upon consideration of the arguments on file and at the hearing, and for the reasons set forth on the record at the hearing and above, IT IS HEREBY ORDERED that plaintiff's motion to compel (ECF No. 29) is granted in part and denied in part as follows:

1. Within thirty days of the date of this order, defendants shall produce responsive documents to plaintiff's request for production of documents number 4 and request for production of documents number 23; and

/////
/////
/////
/////
/////

7

2. Within thirty days of the date of this order, defendants shall produce responsive documents to plaintiff's request for production of documents numbers 10, 12, 13, 15, 18, 20, 22, 24 and 36, to the extent such documents concern Benecol Spreads' claims that it contained no trans fats or no trans fatty acids.

DATED: July 28, 2016.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE