**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANN MARTINELLI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC,<br><br>Defendants. | Case Number: 15-cv-01733-MCE-DB<br><br>**STATEMENT OF DISCOVERY DISAGREEMENT RE MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date: February 3, 2017<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 27, 8th Floor<br><br>Hon. Deborah Barnes |

REDACTED VERSION

Pursuant to Local Rule 251, Plaintiff JoAnn Martinelli ("Plaintiff" or "Martinelli") and Defendants Johnson & Johnson ("J&J") and McNeil Nutritionals, LLC ("McNeil") (collectively, "Defendants") hereby submit this Statement Regarding Discovery Disagreement in connection with Plaintiff's January 5, 2017 Motion to Compel Production of Documents (Dkt. No. 56), which raises the following issues: (i) whether Defendants have failed to produce documents responsive to certain of Plaintiff's document requests, (ii) whether Defendants have improperly redacted documents for relevancy, in whole or in part, and (iii) whether Defendants have failed to properly search the records of its identified custodians.

**1. <u>Conferences re Discovery Disagreement</u>**

**A. Plaintiff's Statement**

On November 2, 2015, Plaintiff served her first sets of Requests for Production ("Requests" or "RFPs") and Interrogatories on Defendants. *See* Plaintiff's First Set of Requests for Production, Ex. A; Plaintiff's First Set of Interrogatories, Ex. B. Defendants served their discovery responses on January 8, 2016. *See* Defendants' Responses to Plaintiff's First Set of Requests for Production, Ex. C; Defendants' Responses to Plaintiff's First Set of Interrogatory Responses, Ex. D.

On April 14, 2016, following a series of meet and confer discussions, Plaintiff filed her first Motion to Compel Production of Documents. *See* Dkt. No. 29; *see also* Dkt. No. 29-1 (Joint Statement Re Discovery Disagreement); Dkt. No. 34 (Updated Joint Statement Re Discovery Disagreement). Among other issues, Plaintiff argued that Defendants had improperly withheld relevant and proportional discovery materials:

> On March 7, 2016, the Court entered a Scheduling Order that bifurcated discovery. *See* 3/7/16 Scheduling Order [Dkt. No. 25] at IV. During a subsequent meet and confer call on March 18, 2016, Defendants represented that they would not presently produce documents and information responsive to Request Nos. 10, 12, 13, 15, 16, 17, 18, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 33, 36, and 37 on the basis of that such information is purportedly not relevant to class certification. The disputed Requests fall within two categories: (1) consumer research and marketing, and (2) labeling, advertising, and ingredients.

> …
>
> The parties' initial dispute concerned two additional categories: (3) government regulations and communications (Request Nos. 16, 17, and 25), and (4) pricing (Request Nos. 26, 27, 33, and 36). However, in an April 1, 2016 email, Defendants conceded that categories 3 and 4 were proper subjects for Phase I discovery.

6/15/16 Updated Joint Statement Re Discovery Disagreement, at 11, n.8 (footnotes omitted).

Following a discovery dispute hearing before the Honorable Edmund F. Brennan on June 22, 2016, the Court issued its Order granting in part and denying in part Plaintiff's Motion to Compel on July 28, 2016. *See* 7/28/16 Order (Dkt. No. 41). First, with respect to RFP Nos. 10, 12, 13, 24, and 36, which concern (i) "consumer research and marketing," (ii) "consumer feedback," and (iii) "market research, surveys, or analysis," the Court ordered Defendants to produce these materials, inasmuch as they concern the "No Trans Fats" and "No Trans Fatty Acids" representations on the Benecol labeling and packaging. *See id.* at 4 ("[D]efendants will be ordered to respond to plaintiff's request for production of documents numbers 10, 12, 13, 24, and 36 to the extent such documents concern Benecol Spreads' claims that it contained no trans fats or no trans fatty acids."). Second, with respect to RFP Nos. 15, 18, 20, and 22, which concern "Benecol Spreads' labeling, advertising, and ingredients" and "internal testing and quality control measures," the Court ordered Defendants to produce these materials, inasmuch as they "bear[] on whether consumer choice of product to purchase is affected by the product claim in question." *See id.* at 6.

In its Order, the Court instructed Defendants to produce these documents no later than August 30, 2016. *See id.* at 7-8 ("[W]ithin thirty days of the date of this order, defendants shall produce responsive documents …."). On Defendants' request, based on the representation of their lawyers that a production by this date would be "infeasible," the parties entered into a joint stipulation to extend this deadline to October 7, 2016. Expecting further delays, Plaintiff's counsel also negotiated a 4-month stipulated extension for the completion of class certification discovery. The parties' stipulation was "So Ordered" on August 30, 2016. *See* 8/30/16 Joint Stipulation and Order at 2 (Dkt. No. 44).

However, Defendants did not complete their production of these documents by October 7, 2016. Instead, Defendants' lawyers informed Plaintiff's counsel in an e-mail dated October 6, 2016 that "there will be a delay" in the completion of Defendants' production, but no alternate deadline or estimate was provided. *See* 10/6/16 E-Mail from Amanda Villalobos to Neal Deckant, Ex. E. Following a series of e-mails and voicemails from Plaintiff's counsel on October 11, 17, and 18, 2016 – who characterized the delay as "unacceptable" and explained that they were prepared to initiate contempt proceedings – the parties convened a conference call to discuss these issues on October 19, 2016. *See* 10/18/16 E-Mail from Neal Deckant to Amanda Villalobos, Ex. F ("Your clients' continuing failure to complete substantial production – the deadline for which was already extended by stipulation – is unacceptable... If I do not hear back from you by [October 19, 2016], then we will begin contempt proceedings."). However, on this call, Defendants' lawyers were <u>still</u> unable to provide an estimated timeline for completing their document production.

The parties then arranged another follow-up conference call for October 21, 2016, but Defendants' lawyers did not join this call. Instead, Defendants' lawyers sent an e-mail later that day stating that they "got tied up" and would "reach out early next week with an update." *See* 10/21/16 E-Mail from Amanda Villalobos to Neal Deckant, Ex. G. In response, Plaintiff's counsel once again informed Defendants' lawyers that "[y]our clients are violating a Court order" to produce the documents and that they would begin contempt proceedings, but that Plaintiff's counsel were nonetheless available to discuss on October 24, 2016 "[a]s a <u>final</u> extension as a professional courtesy." *See* 10/21/16 E-Mail from Neal Deckant to Amanda Villalobos, Ex. H (emphasis added); *see also id.* ("If we do not have these documents by 11:59 p.m. PDT on Wednesday, we will bring a contempt motion on Thursday."). The parties ultimately agreed that Plaintiff's counsel would hold off on filing a contempt motion, so long as the production of documents would be completed by October 31, 2016. *See* 10/27/16 E-Mail from Neal Deckant to Amanda Villalobos, Ex. I. As agreed, Plaintiff received Defendants' production on October 31, 2016.

Upon review of Defendants' documents, Plaintiff's counsel identified several issues. First, as will be discussed below, Defendants had failed to produce documents responsive to numerous discovery requests. Second, Defendants had redacted certain documents – in whole or in part – for "relevancy." Third, Defendants had failed to search the records of several individuals who were likely to be custodians.

Plaintiff's counsel raised these issues in a conference call on December 14, 2016.[1] The parties convened another conference call on December 23, 2016 to discuss further. Recognizing that the parties were at an impasse, Plaintiff filed her second Motion to Compel Production on January 5, 2017. *See* Dkt. No. 56. After filing her motion, the parties convened additional meet and confer calls on January 18, 19, and 26, 2017.

**B. Defendants' Statement**

[Defendants' lawyers informed Plaintiff's counsel that they did not want their portion submitted herewith, and that they would file their portion next week.]

**2. <u>Nature of the Action</u>**

**A. Plaintiff's Statement**

On July 10, 2015, *Reid v. Johnson & Johnson* – a putative class action alleging claims nearly identical to those alleged here – was voluntarily dismissed following an individual settlement. *See Reid v. Johnson & Johnson*, No. 11-cv-01310, Dkt. No. 79 (S.D. Cal. July 10, 2015). Roughly a month later on August 14, 2015, Plaintiff filed the initial Class Action Complaint in this action. *See* Dkt. No. 1. On October 16, 2015, Plaintiff filed a First Amended Complaint ("FAC"), concerning labels on Benecol Regular and Light Spreads (the "Benecol Spreads") that claim the Benecol Spreads (i) contain "No Trans Fats" and "No Trans Fatty Acids," and (ii) are generally recognized as safe for human consumption. *See* FAC ¶ 3 (Dkt. No. 9). Plaintiff contends these labels are false and misleading because Benecol Spreads contain

---

[1] The parties opted for a conference call, rather than an in-person meeting, due to the distances between their offices. Plaintiff's counsel is based in Walnut Creek, California and in New York City, while Defendants' counsel is based in Los Angeles.

trans fats as a result of their use of partially hydrogenated oils. *Id.* ¶¶ 3, 12.[2] Based on these allegations, Plaintiff Martinelli asserts claims on behalf of herself and a nationwide class of purchasers of Benecol Spreads, for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, negligent misrepresentation, and fraud. *See* FAC ¶ 6. Plaintiff Martinelli also asserts claims on behalf of herself and a California subclass for violation California's Consumers Legal Remedies Act ("CLRA"), violation of California's Unfair Competition Law ("UCL"), violation of California's False Advertising Law ("FAL"), negligent misrepresentation, and fraud. *Id.*

On October 30, 2015, Defendants filed their answer to the FAC. *See* Dkt. No. 11. Additionally, on December 17, 2015, Defendants moved to stay discovery pending the Ninth Circuit's ruling on three appeals currently before it. *See* Dkt. No. 14. On February 10, 2016, this Court denied Defendants' motion to stay. *See* 2/10/16 Memorandum and Order (Dkt. No. 24). Defendants also filed a motion to deny nationwide class certification on September 23, 2016, which was fully briefed on January 5, 2017 and is awaiting a ruling. *See* Dkt. No. 45. Plaintiff also filed a motion for leave to amend on September 30, 2016, which was fully briefed on October 27, 2016 and is awaiting a ruling. *See* Dkt. No. 46.

---

[2] In fact, the Ninth Circuit recently considered the exact same claims against Johnson & Johnson concerning Benecol in another consumer class action, *Reid v. Johnson & Johnson*, where it denied a motion to dismiss based on the doctrine of preemption and held that such claims should move forward into discovery. In its opinion, the Ninth Circuit concluded that these claims were "not true":

> Reid's basic contention in this case is that Benecol is being improperly marketed and sold to consumers as a health food. At this early stage of the proceedings, we cannot say whether he is right or wrong. It is clear, however, that Benecol's label prominently states that Benecol contains "No Trans Fat." <u>That statement is not true</u>. Although Benecol may contain a relatively small amount of trans fat per serving, the FDA found that the existing scientific evidence was not sufficient for it to approve "No Trans Fat" claims.

*Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (emphasis added).

On March 7, 2016, the Court issued a scheduling order that bifurcated discovery and set a schedule for Phase I (class certification) discovery and class certification briefing. *See* 3/7/16 Scheduling Order (Dkt. No. 25) at 2. As discussed above, these deadlines were extended following the submission of the parties' joint stipulation, which was "So Ordered" on August 30, 2016. *See* 8/30/16 Joint Stipulation and Order at 3 (Dkt. No. 44). The current deadline to complete Phase I discovery is February 24, 2017. *Id.* Plaintiff's motion for class certification is due March 31, 2017, with Defendants' opposition due April 28, 2017, and Plaintiff's reply due May 26, 2017. *Id.* Plaintiff's motion for class certification is currently scheduled to be heard on June 15, 2017. *Id.*

**B. Defendants' Statement**

[Defendants' lawyers informed Plaintiff's counsel that they did not want their portion submitted herewith, and that they would file their portion next week.]

**3. <u>Discovery Issues in Dispute</u>**

**A. Whether Defendants Have Failed To Produce Documents Responsive To Certain Of Plaintiff's Document Requests**

***i. Plaintiff's Statement***

Defendants have failed to produce documents that are responsive to numerous of Plaintiff's discovery requests, in contravention of the Court's July 28, 2016 Order granting in part and denying in part Plaintiff's Motion to Compel Production of Documents. *See* 7/28/16 Order (Dkt. No. 41). These requests include:

> **<u>REQUEST FOR PRODUCTION NO. 13:</u>**
>
> ALL DOCUMENTS and COMMUNICATIONS CONCERNING YOUR consumer research regarding trans fats or trans fatty acids, or the LABELING or ADVERTISING of the BENECOL SPREADS, including but not limited to e-mails, surveys, and correspondence with consumers and any findings, summaries, or analyses of same.
>
> **<u>REQUEST FOR PRODUCTION NO. 33:</u>**
>
> All DOCUMENTS and COMMUNICATIONS that identify or discuss the purported product claims, attributes,

> characteristics, uses, or qualities of the BENECOL SPREADS that affect product pricing and sales.[3]
>
> **<u>REQUEST FOR PRODUCTION NO. 36:</u>**
>
> All DOCUMENTS and COMMUNICATIONS concerning market research, surveys, or analyses that YOU conducted or caused to be conducted concerning the BENECOL SPREADS claims "no trans fats" and "no trans fatty acids," and its eventual removal, including but not limited to whether and how the removal of that claim would affect product pricing and sales.

The Court ordered Defendants to produce documents that are responsive to each of these Requests in its July 28, 2016 Order, as discussed above. Accordingly, sanctions are appropriate under Rule 37(b)(2)(A), given Defendants' failure to comply with this Court's discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A) ("If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders."). Appropriate sanctions include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; …
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; …
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Additionally, the Court "must" order the payment of "reasonable expenses" and / or attorneys' fees "caused by [Defendants'] failure" to produce these documents. *See* Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."). Here, Plaintiff requests that the Court issue

---

[3] This Request is closely tied to RFP No. 32: "All DOCUMENTS and COMMUNICATIONS concerning the price premium attributed to the BENECOL SPREADS label claims 'no trans fats' and 'no trans fatty acids.'"

an order that: (i) compels Defendants to produce these documents within 14 days, (ii) prohibits Defendants from offering any evidence in connection with Requests for which they have failed to produce documents, and (iii) awards attorneys' fees to Plaintiff in the amount of money, which corresponds to the amount billed by Plaintiff's counsel in connection with bringing this motion.

In response, Defendants argue that they "have fulfilled their discovery obligations under the terms negotiated by the parties" because "the parties agreed that they would use a negotiated set of search terms to identify relevant documents." However, Defendants "did not plan to literally review each and every document collected from all 12 custodians." While that methodology would be appropriate for the bulk of their production, it ignores Judge Brennan's July 28, 2016 order, where he instructed Defendants to simply produce documents – whether or not they were captured by certain search terms – in response to a narrowly targeted set of requests. *See, e.g.*, Dkt. No. 41 at 8 ("[D]efendants shall produce responsive documents to plaintiff's request for production of documents numbers 10, 12, 13, 15, 18, 20, 22, 24 and 36, to the extent such documents concern Benecol Spreads' claims that it contained no trans fats or no trans fatty acids.").

Moreover, Defendants argue that "Plaintiff's motion is based entirely on speculation as Defendants have already produced the relevant documents that were identified by the agreed-upon ESI search terms." That is wrong. For example, Request 13 concerns "LABELING or ADVERISING of the BENECOL SPREADS, including but not limited to e-mails, surveys, and correspondence with consumers and any findings, summaries, or analyses of same." Ex. A. Yet Defendants have produced no documents related to the various labeling changes found on the Benecol Spreads, other than exemplars of the final labels. That is, Defendants produced no internal emails about the label changes. Nor any internal drafts. Nor any documents or surveys. Common sense dictates that multinational corporations, such as Defendants, do not simply change their product labels without any internal discussion. The same is true of Requests 33 and 36. It is simply not credible that Johnson & Johnson has no documents concerning "the purported product claims, attributes, characteristics, uses, or qualities of the BENECOL

SPREADS that affect product pricing and sales," nor is it credible that Defendants have no "market research, surveys, or analyses … concerning the BENECOL SPREADS claims 'no trans fats' and 'no trans fatty acids.'"

***ii. Defendants' Statement***

[Defendants' lawyers informed Plaintiff's counsel that they did not want their portion submitted herewith, and that they would file their portion next week.]

**B. Whether Defendants Have Improperly Redacted Documents For Relevancy, In Whole Or In Part**

***i. Plaintiff's Statement***

"Given the broad standards of discoverability under federal law, unilateral redactions based on relevance by the producing party is not appropriate." *Islander Grp., Inc. v. Swimways Corp.*, 2014 WL 12573995, at *3 (D. Haw. Jan. 28, 2014). Indeed, "[s]everal district courts have held that where a protective order is in place, the unilateral redaction of otherwise responsive documents is improper. … [I]f materials are already shielded by a protective order, unilateral redactions do little more than breed suspicion between the parties, generate discovery disputes, and invite unnecessary intervention by the court." *United States v. McGraw-Hill Companies, Inc.*, 2014 WL 8662657, at *3 (C.D. Cal. Sept. 25, 2014). Moreover, these types of redactions are foreclosed in this matter by the parties' Stipulated ESI and Hard Copy Protocol ("ESI Protocol"), which <u>only</u> permits redaction of otherwise responsive documents in limited circumstances, which do not include relevancy. *See* Dkt. No. 28 at 5 ("The Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity, that is governed by California Civil Code § 1798.1 or that the Protective Order entered in this Action allows to be redacted."). Likewise, nothing in the parties' Stipulated Protective Order ("Protective Order") permits unilateral redactions on the basis of relevancy. *See* Dkt. No. 21.

However, Defendants' document production contains numerous instances where they have produced relevant and responsive e-mails, but have selectively withheld certain attachments to those e-mails on the basis of relevancy. For example, an email concerning the [redacted]

[redacted] appears to have [redacted] Ex. J at McNeil0008948. Nonetheless, the [redacted] *id.* at McNeil0008949. As noted above, that is improper. If an e-mail is produced, Defendants must produce the e-mail <u>*in its entirety*</u> – including attachments. *See Hill v. Asset Acceptance, LLC*, 2014 WL 3014945, at *4 (S.D. Cal. July 3, 2014) ("Defendant must remove all redactions unless the redacted content is privileged. If Defendant redacts information based upon a privilege, Defendant must provide Plaintiff with a privilege log providing the legal basis for each redaction."); *see also* ESI Protocol, ¶ A6 ("Parent-child relationships (*e.g.*, the associations between emails and their attachments) [are to] be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record.") (Dkt. No. 28); *id.* ¶ A13 ("[T]he producing party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached.").[4]

Furthermore, partial redactions of a document (*i.e.*, black boxes drawn over the text) on the basis of relevancy are also improper. Indeed, outside of very limited circumstances, "a party should not take it upon him, her, or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case" *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010); *see also Islander Grp.*, 2014 WL 12573995, at *3 ("Pacific Souvenir's redactions based on confidential or commercially sensitive information are unfounded because protective measures for such information were agreed to by the parties and ordered by the Court in the Stipulated Confidentiality Order. … The

[4] Additionally, there are several instances where Defendants have apparently failed to produce attachments to relevant and responsive e-mails, <u>*without*</u> specifying that the attachment was being withheld on the basis of relevancy. For example, in an e-mail chain bearing Bates number McNeil0006836, [redacted] Ex. K. However, the [redacted] referenced by [redacted] were not produced, as the next page in the production is a different email chain. *See* Ex. L at McNeil0006837. That email is also missing an attachment as the next document is a different email chain. *Compare id.* at McNeil0006838 [redacted], *with* Ex. M at McNeil0006840 (no attachment). Defendants should be compelled to produce these attachments as well.

Court finds that the 'HIGHLY CONFIDENTIAL' designation is sufficient to protect Pacific Souvenir's proprietary and commercially sensitive information.").

Here again, Defendants have also produced numerous documents with partial redactions on the basis that they purportedly concern [redacted] For example, Defendants partially redacted a document titled [redacted] on the basis of relevancy. *See* Ex. N at McNeil0010079. Defendants' redactions appear to be selective, as other portions of that same document were produced without redactions. *See id.* at McNeil0010076 ([redacted]). Since there is a protective order in place, these partial redactions are improper. *See Live Nation Merch., Inc. v. Miller*, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) ("The Court agrees with Artists that Live Nation's redactions of otherwise discoverable documents here are unwarranted because Live Nation's concern about protecting privacy interests and confidential / proprietary information could be addressed through a protective order. As courts have recognized, this type of unilateral redaction is disfavored, and a protective order could ensure the confidentiality of sensitive information."). Accordingly, Defendants must be compelled to re-produce the documents they have redacted for relevancy, in whole or in part.

In response, Defendants raise no particular or specific concerns of any harm that could result from the introduction of these documents in unredacted form. The only complaint is a speculative concern that these documents may be publicly disclosed at trial. However, trial exhibits must be designated in advance, and the parties can address these concerns, if any, at the appropriate time.

***ii. Defendants' Statement***

[Defendants' lawyers informed Plaintiff's counsel that they did not want their portion submitted herewith, and that they would file their portion next week.]

### C. Whether Defendants Have Failed To Properly Search The Records Of Its Identified Custodians

#### *i. Plaintiff's Statement*

The ESI Protocol requires the parties to "provide to the other party a list of the party's twelve (12) most likely custodians" and "to meet and confer in good faith in order to agree upon such list." Dkt. No. 28 at 3. Despite having initially agreed to Defendants' list of proposed custodians, Plaintiff's review of Defendants' document production reveals that they have failed to produce documents for several of these individuals. *See* Ex. O (Defendants' Disclosure of Likely Custodians and Non-Custodial Data Repositories). Specifically, Sean Belke has been employed by Defendants as a Manager Global Trade Insights since October 2009 and has knowledge of "marketing, advertising, and promotion" for the Benecol products at issue. *Id.* at 1. Defendants listed Mr. Belke first in their list of "most likely custodians." However, Mr. Belke is a custodian of zero documents that have been produced. Similarly, Cizley Kurian has been employed by Defendants as a Safety Officer since June 2012 and has knowledge of "product safety." *Id.* However, Ms. Kurian is a custodian of zero documents that have been produced. Finally, Jeff Winget has been employed by Defendants in Customer Care since January 2000 and has knowledge of "customer feedback." *Id.* However, Mr. Winget is a custodian of zero documents that have been produced. Thus, Defendants have not produced a single document for the identified custodians Mr. Belke, Ms. Kurian or Mr. Winget.

Moreover, it appears that Defendants produced a *de minimis* number of documents belonging to three additional custodians. Specifically, Steve Kirschenbaum has been employed by Defendants as a Principal Process Engineer since December 2006 and possesses knowledge of "product development." *Id.* at 2. However, Mr. Kirschenbaum is a custodian of only four documents. Similarly, Angela Li has been employed by Defendants since July 2009 as both a Director and Brand Manager and has is identified as having general knowledge of the Benecol Products. *Id.* However, Ms. Li is a custodian of only 22 responsive documents. Finally, Beth Steele has been employed by Defendants as a Director Strategy Development since June 1996

and has knowledge of "strategy, planning, logistics, and external manufacturing" for the Benecol products. *Id.* However, Ms. Steele is a custodian of only 32 responsive documents.

In response, Defendants feign ignorance as to the nature of Plaintiff's dispute. As is clear from the above paragraphs – and in Section 3.A.i above – Plaintiff has severe concerns about the adequacy of Defendants' search for responsive documents for each of their designated custodians. *See supra*. It is simply incredulous that these individuals possess zero – or a *de minimis* amount – of relevant and responsive emails or other documents. Indeed, Defendants themselves designated these people as "likely custodians," after considering the nature of the case and Plaintiff's allegations. Nor are Defendants correct that Plaintiff's counsel failed to raise these issues in a timely manner. To the contrary, the parties' counsel had discussed custodian issues during their meet and confer call on December 14, 2016, as well as on January 19 and 26, 2017. During these conferences, the parties' discussion concerning custodians continued to evolve, as is to be expected from a series of good faith meet and confers. At the very least, Defendants should be required to conduct a *de novo* search of the "likely custodians'" e-mail accounts for documents responsive to Plaintiff's discovery requests, in addition to the searches prescribed by the ESI Protocol, specifically concerning the labeling and marketing claims for the challenged product, pricing, pricing strategy, and the product features and attributes that affect pricing.

***ii. Defendants' Statement***

[Defendants' lawyers informed Plaintiff's counsel that they did not want their portion submitted herewith, and that they would file their portion next week.]

Dated: January 27, 2017

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
Frederick J. Klorczyk III (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com
ndeckant@bursor.com
fklorczyk@bursor.com

*Attorneys for Plaintiff*