TUCKER ELLIS LLP
Mollie F. Benedict – SBN 187084
mollie.benedict@tuckerellis.com
Ronie M. Schmelz – SBN 130798
ronie.schmelz@tuckerellis.com
Amanda Villalobos – SBN 262176
amanda.villalobos@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone:    213.430.3400
Facsimile:      213.430.3409

Attorneys for Defendants MCNEIL NUTRITIONALS, LLC and
JOHNSON & JOHNSON

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANN MARTINELLI, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC,<br><br>                    Defendants. | Case No. Case No. 2:15-cv-01733-MCE-DB<br><br>**[REDACTED]**<br><br>**DEFENDANTS MCNEIL NUTRITIONALS, LLC AND JOHNSON & JOHNSON'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. DENISE MARTIN**<br><br>[Filed concurrently with Declaration of Amanda Villalobos, Opposition to Motion to Exclude Expert Testimony of Dr. Scott Swain, and Opposition to Motion to Exclude Expert Testimony of Dr. Bruce Isaacson]<br><br>Date:      March 8, 2018<br>Time:     2:00 p.m.<br>Judge:   Hon. Morrison C. England, Jr.<br><br>[Hearing vacated per Court's 1/8/17 Order] |

**CONFIDENTIAL**

**PURSUANT TO JANUARY 13, 2016 STIPULATED PROTECTIVE ORDER**

# **TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................1 | |
| II. | DR. MARTIN'S EXPERT OPINION ..................................................................................1 | |
| III. | LEGAL STANDARDS .......................................................................................................2 | |
| IV. | ARGUMENT .......................................................................................................................3 | |
| | A. Defendants' Opposition and Dr. Martin's Supplemental Report are timely and compliant with the Court's Scheduling Order and the Federal Rules of Civil Procedure. ................................................................................................................3 | |
| | B. Plaintiff's assertion that Dr. Martin incorrectly concluded that Plaintiff's damages model did not account for supply factors is neither a proper basis for exclusion under Rule 702 nor supported by evidence. ...........................................................4 | |
| | C. Dr. Martin's threshold for admissibility is met by properly questioning whether Mr. Weir has satisfied his burden to proffer a reliable, relevant damages methodology and her before-and-after validity check is offered for that limited purpose. ...................................................................................................................7 | |
| | D. Plaintiff mischaracterizes Dr. Martin's opinion on market perceptions of trans fats and moves to strike an opinion which does not exist. .........................................8 | |
| V. | CONCLUSION ....................................................................................................................9 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013) .................................................................................................. 4

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 11-cv-01846, 2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ............................................... 5

*Carter v. Dial Corp.*,
  869 F.3d 13 (1st Cir. 2017) ..................................................................................................... 5

*Cates v. Sears, Roebuck & Co.*,
  928 F.2d 679 (5th Cir. 1991) .................................................................................................. 2

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
  No. 15-cv-02177-SI, 2017 WL 4772348 (N.D. Cal. Oct. 23, 2017) ...................................... 4

*Clear-View Techs., Inc. v. Rasnick*,
  No. 13-cv-02744, 2015 WL 3509384 (N.D. Cal. June 3, 2015) ..................................... 2, 4, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ........................................................................................ 3, 4, 6

*In re Dial Complete Mktg. & Sales Practices Litig.*,
  320 F.R.D. 326 (D.N.H.) ........................................................................................................ 5

*In re NJOY, Inc. Consumer Class Action Litig.*,
  No. 14-cv-428, 2016 WL 787415 (C.D. Cal. Feb. 2, 2016) ................................................... 5

*Nat'l R.R. Passenger Corp. v. Young's Commercial Transfer, Inc.*,
  No. 1:13-cv-01506, 2016 WL 1573262 (E.D. Cal. Apr. 19, 2016) ........................................ 2

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
  100 F. App'x 296 (5th Cir. 2004) ........................................................................................... 6

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
  49 F. Supp. 3d 385 (S.D.N.Y. 2014),
  *aff'd*, 638 F. App'x 43 (2d Cir. 2016) .................................................................................... 6

*Saavedra v. Eli Lilly & Co.*,
  No. 12-cv-9366, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ............................................. 5

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
  No. 99-cv-7654, 2003 WL 25781900 (C.D. Cal. Jan. 27, 2003) ............................................ 7

**OTHER AUTHORITIES**

Greg Allenby, et al., *Economic Valuation of Product Features*,
  12 QUANTITATIVE MKTG. & ECON. 421-56 (2014) ............................................................... 5

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Greg Allenby, et al., *Valuation of Patented Product Features*,
    57 J. LAW & ECON. 629-63 (Aug. 2014) .................................................................................. 5

Bryan K. Orme, GETTING STARTED WITH CONJOINT ANALYSIS: STRATEGIES FOR
    PRODUCT DESIGN AND PRICING RESEARCH (4th ed. 2014) ..................................................... 5

**RULES**

Fed. R. Civ. P. 26 ....................................................................................................................... 3

Fed. R. Evid. 702 ............................................................................................................... 2, 3, 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff's motion (Dkt. 102) and premature reply brief (Dkt. 117) urge the Court to strike Defendants' expert, Dr. Denise Martin, under Rule 702, but rather than focusing on undermining Dr. Martin's opinions, Plaintiff dedicates her briefs almost exclusively to bolstering her own experts' opinions. In so doing, Plaintiff demonstrates a complete misunderstanding of *Daubert* analysis; indeed, Plaintiff cannot invalidate Defendants' experts by substantiating her own. And, tellingly, the few criticisms Plaintiff actually advances against Dr. Martin's opinions are easily repudiated by the record, long-standing case law, and accepted principles of economics. As such, they provide no cause whatsoever to strike Dr. Martin's expert testimony, which is derived from reliable principles and methodologies properly applied to the facts of this case.

Plaintiff's procedural challenges are similarly misguided. Plaintiff's allegations that Defendants' opposition is untimely and Dr. Martin's Supplemental Report runs afoul of the Federal Rules of Civil Procedure are contradicted by the Court's January 8, 2018 Minute Order (Dkt. 106) and basic tenets of rebuttal expert testimony.

At bottom, Plaintiff fails to articulate a basis to strike either Dr. Martin's Supplemental Report or her expert opinions in their entirety. Her motion must be denied.

## II. DR. MARTIN'S EXPERT OPINIONS

As a damages rebuttal expert, Dr. Martin's role is to opine on whether the methodology employed by Plaintiff's expert, Colin B. Weir, to conduct his conjoint analysis reveals reliable estimates of the premium class members allegedly paid for Benecol as a result of the "No Trans Fat" and "No Trans Fatty Acids" claims on the Benecol labels. Martin 10/2/17 Rebuttal Report ¶¶ 1, 5. Conjoint analysis is a representative survey technique that asks consumers to evaluate products, which contain various combinations of attributes, to assess consumers' relative "willingness to pay" for any individual product attribute, including those at issue in putative class actions. *Id.* ¶ 18.

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

Dr. Martin's credentials are unassailable and the role she is tasked with in this litigation is well within her wheelhouse. Indeed, she holds a Ph.D. in Economics from Harvard University; has taken and taught coursework in microeconomics, statistics, and econometrics; and she routinely uses and evaluates conjoint analyses. *Id*. ¶¶ 3-5. Drawing upon this background, Dr. Dennis concluded that Mr. Weir has not identified a reliable method of measuring class-wide damages because a standalone conjoint analysis cannot independently measure price premium damages and the conjoint analysis upon which he relies is otherwise fatally flawed. *Id*. ¶ 9. Dr. Dennis notes that the cumulative effect of these defects is easily observable because real marketplace data contradicts Mr. Weir's hypothetical and formulaic price premium calculation. *Id*. ¶ 10.

In response to the opinions proffered by Mr. Weir and the questions raised by Plaintiff in response to Dr. Martin's Rebuttal Report, Dr. Martin issued a Supplemental Report which was filed concurrently with Defendants' reply to their motion to exclude Mr. Weir (Dkt. 109). That Supplemental Report, Dr. Martin's 10/2/17 Rebuttal Report, and her deposition testimony currently form the entirety of her expert opinions.

## III.    LEGAL STANDARDS

Plaintiff moves to strike Dr. Martin under parts (c) and (d) of Federal Rule of Evidence 702 but then largely ignores the standard and ample case law interpreting it. Pl.'s Mot. (Dkt. 102) at 1-2. Under Rule 702, an expert's testimony may be excluded if her testimony is not the "product of reliable principles and methods" or if she has failed to "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d). "[A] defendant's rebuttal expert is limited to offering opinions rebutting and refuting the [damages] theories set forth by [the] plaintiff's expert(s)." *Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015) (citing *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991)); *Nat'l R.R. Passenger Corp. v. Young's Commercial Transfer, Inc*., No. 1:13-cv-01506, 2016 WL 1573262, at *3 (E.D. Cal. Apr. 19, 2016). A rebuttal expert need not disprove the plaintiff's expert's damages calculation nor provide a viable

counter-model to withstand inquiry under Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). "Absent a stipulation or a court order" a rebuttal expert may make her disclosures "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26 (a)(2)(D).

## IV. ARGUMENT

### A. Defendants' opposition and Dr. Martin's Supplemental Report are timely and comply with the Court's Scheduling Order and the Federal Rules of Civil Procedure.

As a threshold issue, Plaintiff's assertions that her motion to exclude Dr. Martin is unopposed, Defendants' opposition is untimely, and Dr. Martin's Supplemental Report violates scheduling and procedural limitations lack merit. Pl.'s Reply (Dkt. 117) at 1. Plaintiff solely relies on the October 31, 2017 Scheduling Order to substantiate her position on the controlling deadlines. *Id*. But the January 8, 2018 Minute Order—which was issued immediately after Plaintiff filed her motions to exclude and specifically references those motions by their docket numbers—provides that briefing deadlines for those are derived from the March 8, 2018 hearing date. 1/8/18 Minute Order (Dkt. 106). Therefore, Defendants' oppositions are due no earlier than February 22, 2018. *Id*. Consequently, Defendants' opposition is timely, Plaintiff's motion is opposed, and Plaintiff's reply is premature.

Plaintiff's procedural arguments to strike Dr. Martin's Supplemental Report fare no better. Relying upon a slew of case law striking supplemental expert reports filed after expert discovery expired and designed to sandbag opposing litigants with new arguments, Plaintiff urges the Court that Dr. Martin's Supplemental Report does the same. Pl.'s Reply (Dkt. 117) at 2-5. This pronouncement rings hollow for two reasons.

First, the Court's Scheduling Order does not even provide a cutoff for expert discovery. And Dr. Martin's Supplemental Report was certainly issued in the midst of expert discovery because it was filed concurrently with Defendants' *Daubert* replies and prior to the opposition and reply briefing to Plaintiff's *Daubert* motions. Furthermore, although Rule 26 (a)(2)(D) allows experts 30 days to provide rebuttal opinions, Dr. Martin submitted her Supplemental Report just two weeks after Mr. Weir filed his Reply Declaration. Fed. R. Civ. P. 26 (a)(2)(D).

Second, Dr. Martin's Supplemental Report solely offers rebuttal arguments that counter information introduced and questions advanced by Plaintiff and Mr. Weir since Dr. Martin signed her

3

Rebuttal Report on October 2, 2017. In response to Mr. Weir's Reply Declaration—in which he for the first time implies that Dr. Dennis's conjoint analysis separately accounted for market supply by steps including calculating the *marginal* consumer's willingness to pay rather than the *average* consumer's—Dr. Martin's Supplemental Report explains the principles of economics underlying willingness to pay to disprove Mr. Weir's suggestion. *Compare* Martin 1/19/18 Supp'l Report ¶¶ 7-24, *with* Weir 1/5/18 Reply Decl. ¶ 21. Addressing questions raised by Plaintiff's counsel at her deposition and Mr. Weir in his Reply Declaration, Dr. Martin's Supplemental Report also clarifies that she is not responsible for advancing a viable damages model and is not offering her analysis of real marketplace data for that purpose, though she is capable of identifying a potential methodology for calculating damages. *Compare* Martin 1/19/18 Supp'l Report ¶¶ 20-21, 25-26, *with* Weir 1/5/18 Reply Decl. ¶ 28, *and* Ex. A,[1] Martin Dep. Tr. 104:1-10, 115:9-116:24. These opinions "rebut[] and refut[e] the theories set forth by plaintiff's expert[]" after Dr. Martin submitted her Rebuttal Declaration and are properly offered in compliance with the Court's Scheduling Order and the Federal Rules of Civil Procedure. *Clear-View Techs.*, 2015 WL 3509384, at *2.

### B. Plaintiff's assertion that Dr. Martin incorrectly concluded that Plaintiff's damages model did not account for supply factors is neither a proper basis for exclusion under Rule 702 nor supported by evidence.

Plaintiff argues that Dr. Martin's "testimony should be stricken" because "Dr. Martin contends that the conjoint study relied upon by Mr. Weir accounts only for the demand-side of the market" and "Dr. Martin is incorrect." Pl.'s Mot. (Dkt. 102) at 4, 6 (internal quotations omitted). Even setting aside whether Dr. Martin is correct—and she plainly is—Plaintiff's criticism is not a basis for exclusion under *Daubert*. *Daubert* and its progeny test the soundness of an expert's methodology, not the correctness of her conclusions. *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-02177, 2017 WL 4772348, at *1 (N.D. Cal. Oct. 23, 2017). In other words, "district court[s] [are] not tasked with deciding whether the expert is right or wrong, just whether h[er] testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013).

---

[1] All exhibits referenced herein are attached to the Declaration of Amanda Villalobos, filed concurrently herewith.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Dr. Martin's opinion that Mr. Weir's damages model is unreliable satisfies *Daubert* because it is rooted in reliable principles of economics that have long been accepted by courts and academics alike. Given that Mr. Weir has been charged with measuring Benecol's alleged price premium—*i.e.*, the difference between the estimated sales price of Benecol without the "No Trans Fat" statement and the price at which Benecol was sold *with* the statement—he must identify and utilize a methodology capable of estimating the price at which Benecol would have sold without the challenged labeling.  Martin 10/2/17 Rebuttal Report ¶¶ 9, 14.  But, as Dr. Martin's Rebuttal Report demonstrates, he has not.  *Id.* This is because the methodology Mr. Weir employed is fundamentally incapable of capturing a price premium.  *See infra* nns.3-5 & accompanying text.  It is unable to do so because "[t]he ultimate price of a product is a combination of market demand and market supply."  *In re NJOY, Inc. Consumer Class Action Litig.*, No. 14-cv-428, 2016 WL 787415, at *6 (C.D. Cal. Feb. 2, 2016).  Put differently, price premium damages are "a combination of market demand and market supply."  *Id.*[2]   However, because conjoint analyses solely calculate market demand and do not—and cannot—account for market supply, Dr. Martin,[3] courts,[4] academics,[5] *and* the very authority[6] upon which Mr. Weir relies have all concluded

---

[2] *See also In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 334 (D.N.H.), *leave to appeal denied sub nom. Carter v. Dial Corp.*, 869 F.3d 13 (1st Cir. 2017); Martin 1/19/18 Supp'l Report ¶ 7 (explaining that <u>market demand</u> represents consumers' input into a purchase and is comprised of "willingness to pay"—the maximum price they are willing to pay for a product based upon how they value its attributes—and that <u>market supply</u> accounts for sellers' half of the equation and measures the minimum price that sellers are willing charge for a product based upon their costs, strategy, and responses to competition).

[3] Martin 10/2/17 Rebuttal Report ¶¶ 17-18 ("[A] conjoint survey is a demand-side tool, providing an estimate of how consumers' willingness to pay might change with a labeling change.").

[4] *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2014 WL 976898, at *12 (N.D. Cal. Mar. 6, 2014) (explaining that conjoint analysis "measures only demand" and "does not account for supply at all, much less the real-world intersection of market demand and market supply, which sets the real-world market price"); *Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014) ("[The conjoint] model looks only to the demand side of the market equation. . . . The Court has found no case holding that a consumer may recover based on consumers' willingness to pay irrespective of what would happen in a functioning market (*i.e.*[,] what could be called sellers' willingness to sell).").

[5] Greg Allenby, et al., *Valuation of Patented Product Features*, 57 J. LAW & ECON. 629-63 (Aug. 2014); Greg Allenby, et al., *Economic Valuation of Product Features*, 12 QUANTITATIVE MKTG. & ECON. 421-56 (2014).

[6] Bryan K. Orme, GETTING STARTED WITH CONJOINT ANALYSIS: STRATEGIES FOR PRODUCT DESIGN AND PRICING RESEARCH (4th ed. 2014) at 26-27, 108-09 ("Believing that we have an accurate predictor of

that conjoint analyses are incapable of measuring price premium damages. As such, Mr. Weir's opinions are not based on a sound methodology and are therefore irreparably unreliable and should be excluded.

Plaintiff argues that Dr. Martin's (and essentially the legal and academic communities') conclusion is "wrong" because Benecol's sales prices with the challenged labeling were an input of the conjoint analysis, sales prices reflect supply-side factors, and therefore the conjoint analysis accounts for supply-factors affecting the sales price of Benecol without the challenged labeling. Pl.'s (Dkt. 102) Mot. 4-6. But supply-side factors are an *input*, and market prices are the *output*. Martin 1/19/18 Supp'l Report ¶ 18. Benecol's sales price *with* the challenged labeling cannot serve as a proxy for the supply-side factors affecting Benecol's sales price *without* the challenged labeling any more than how a person is dressed in New York is a proxy for the temperature in Los Angeles.

Perhaps recognizing how flimsy this argument is, Plaintiff asserts that her conjoint analysis separately accounted for market supply because its "results were calculated using Hierarchical Bayes regression" and "influenced" by Mr. Weir's "review[ of] annual 10K filings from a number of prominent grocers . . ., which discuss[ed] the grocers' willingness to adjust prices in response to changing economic conditions and consumer preferences." Pl.'s Mot. (Dkt. 102) at 5 (internal quotation marks omitted); Weir 8/28/17 Decl. ¶ 39. But "regression analysis is not a magic formula. It is simply a mathematical tool . . ., which may or may not yield statistically significant results." *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 299 (5th Cir. 2004). "[I]it is the proponent who must establish that the major factors have been accounted for in a regression analysis." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385, 403 (S.D.N.Y. 2014) (internal quotation omitted), *aff'd*, 638 F. App'x 43 (2d Cir. 2016). Mr. Weir's vague assurances that he and Dr. Dennis accounted for market supply do not undermine Dr. Martin's conclusion that:

> There is no evidence that either expert has conducted any economic analysis of the supply side of the market for Benecol . . . or how prices were actually determined . . . *and, certainly, neither expert has produced such an analysis*[.]

---

market share can lead us to misuse a model. . . . Divorcing oneself from the idea that conjoint simulations predict market shares is one of the most important steps to getting value from a conjoint analysis study and the resulting simulator.").

Pl.'s Mot. (Dkt. 102) at 4 (quoting Martin 10/2/17 Rebuttal Report ¶ 19) (emphasis added).  But even if they did, they would not give cause to strike Dr. Martin's opinion under *Daubert*.

In sum, Dr. Martin's rebuttal opinions, which demonstrate the ineptitude and glaring flaws in Mr. Weir's opinions, are well-supported by relevant academic literature and legal decisions, and are, ultimately, the product of a sound methodology.  Accordingly, her opinions are admissible rebuttal expert testimony and Plaintiff's motion to exclude them should be denied.

### C. Dr. Martin's threshold for admissibility is met by properly questioning whether Mr. Weir has satisfied his burden to proffer a reliable, relevant damages methodology and her before-and-after validity check is offered for that limited purpose.

The price premium question in this litigation is complicated by the fact that the product at issue was sold with and without the challenged labeling in the same formulation and with otherwise identical packaging during consecutive time periods.  Martin 10/2/17 Rebuttal Report ¶ 30.  Plaintiff conveniently omits this key distinction in her briefing, and there is no evidence that Mr. Weir accounted for it in his analysis.

Given this labeling history, Dr. Martin compared the actual sales price of Benecol without the challenged labeling against Mr. Weir's estimated price (Martin 10/2/17 Rebuttal Report ¶¶ 30-34) because, in her role as a rebuttal expert, it is her responsibility to "refut[e] the theories set forth by plaintiff's expert[]" if they do not "fit the facts of the case" (*Clear-View Techs.*, 2015 WL 3509384, at *2; *Ticketmaster Corp. v. Tickets.Com, Inc.*, No. 99-cv-7654, 2003 WL 25781900, at *1 (C.D. Cal. Jan. 27, 2003)).  ██████████████████████████████████████████████████████████ Martin 10/2/17 Rebuttal Report ¶ 10. But, to be clear, Dr. Martin is not "putting [this observation] forward as a measure of the price premium damages in this litigation." Ex. A, Martin Dep. Tr. 28:3-29:1.  Moreover, Plaintiff neither criticizes the data nor calculations underlying Dr. Martin's assessment.  Plaintiff's only two criticisms of Dr. Martin's calculation—*i.e.*. that Dr. Martin (1) should not have limited her analysis to the time periods immediately surrounding the labeling change but (2) should have supplemented her analysis with a standalone model of market supply—solely address issues beyond the purview of the narrow purpose of Dr. Martin's observation and her role as a rebuttal expert.  Indeed, neither provides a basis to exclude Dr. Martin's rebuttal opinions and they further evidence Plaintiff's confusion surrounding the differing

legal standards governing admissibility of affirmative and rebuttal experts. *See* Reply to Defs.' Mot. to Exclude Weir (Dkt. 109) at 2. Plaintiff's second criticism is also internally inconsistent with her position that Mr. Weir properly accounted for supply-side factors in his damages model because he, like Dr. Martin, used marketplace data. *Compare* Martin 10/2/17 Rebuttal Report ¶ 10, *with* Pl.'s Mot. (Dkt. 102) at 4-6.

### D. Plaintiff mischaracterizes Dr. Martin's opinion on market perceptions of trans fats and moves to strike an opinion which does not exist.

Rather than responding to Dr. Martin's well-founded criticism that Mr. Weir's conjoint analysis does not account for how market perception of trans fats changed between the class and survey periods, Plaintiff builds a straw man by asserting that Dr. Martin's market perception opinion wholly relies on Dr. Isaacson's findings. Building upon her contention that Dr. Isaacson's market perception findings are inadmissible, Plaintiff reasons that Dr. Martin's market perceptions opinion is similarly ill-fated and offers that as her *only* basis for striking that portion of Dr. Martin's expert opinion. Pl.'s Mot. (Dkt. 102) at 7-8. Even setting aside whether Dr. Isaacson's opinion in admissible—and it is, as set forth in Defendants' opposition to Plaintiff's motion to exclude Dr. Isaacson (filed concurrently herewith)—Plaintiff's deductive logic is unpersuasive because Dr. Martin's market perceptions opinion is independently substantiated by her own findings.

As detailed in her Rebuttal Declaration, Dr. Martin asserts that Mr. Weir's price premium opinion is "plague[d]" by the fact that the conjoint surveys underlying it were taken by respondents who were likely "significantly and negatively" more aware of trans fat than the class members they purport to represent. Martin 10/2/17 Rebuttal Report ¶ 29. Dr. Martin arrived at her opinion by evaluating how "[p]ublic information about trans fats has changed significantly" in the intervening six to nine years. *Id*. ¶ 9. Her research revealed that, during that time period, the FDA issued a tentative finding that "partially hydrogenated oils are not generally recognized as safe" and soon thereafter announced that "manufacturers would no longer be allowed to use partially hydrogenated oils, including trans fats, in food after 2018." *Id*. At her deposition and in her Supplemental Report, Dr. Martin confirmed that this research laid the foundation for her opinions:



Ex. A, Martin Dep. Tr. 68:7-19; *see also* Martin 1/19/18 Supp'l Report ¶ 9 ("I independently reviewed and described in my report the time line of the public FDA disclosures related to this issue, which are consistent with changing market perceptions about trans fats.").

Despite this, Plaintiff asserts that Dr. Martin "relied on Dr. Isaacson's [allegedly] flawed analysis" "when coming to this conclusion" and moves to strike Dr. Martin's opinion on that basis. Pl.'s Mot. (Dkt. 102) at 7-8. While Dr. Isaacson does offer the opinion that the conjoint survey respondents were "likely more concerned about trans fats in 2017, compared to . . . the 2008 to 2011 class period," his opinion only corroborates, not validates, Dr. Martin's opinion. Isaacson 10/2/17 Rebuttal Report ¶ 18. Because Plaintiff's mischaracterization is her singular justification for striking Dr. Martin's market perceptions opinion, the Court should admit the proffered testimony.

## V. CONCLUSION

Much of Plaintiff's motion is dedicated to buttressing her own experts' opinions under Rule 702, but the relative strength or weakness of Plaintiff's experts does not dictate whether Dr. Martin's opinions are admissible. Indeed, Plaintiff's motion offers no legitimate grounds for striking Dr. Martin's expert opinions. Dr. Martin's qualifications are uncontested, her principles and methodologies are reliable, and her analysis is relevant to whether Plaintiff has proffered an admissible model for calculating price premium damages. For these reasons, Plaintiff's motion to exclude the expert of Dr. Denise Martin (Dkt. 102) must be denied.

DATED:  February 22, 2018                TUCKER ELLIS LLP

                                         By:    */s/ Ronie M. Schmelz*
                                                Mollie F. Benedict - SBN 187084
                                                mollie.benedict@tuckerellis.com
                                                Ronie M. Schmelz – SBN 130798
                                                ronie.schmelz@tuckerellis.com
                                                Amanda Villalobos - SBN 262176
                                                amanda.villalobos@tuckerellis.com
                                                515 South Flower Street
                                                Forty-Second Floor
                                                Los Angeles, CA 90071-2223
                                                Telephone:213.430.3400
                                                Facsimile: 213.430.3409

                                                Attorneys for Defendants MCNEIL
                                                NUTRITIONALS, LLC and JOHNSON &
                                                JOHNSON

# CERTIFICATE OF SERVICE

This Certificate of Service is made in compliance with Local Rule 5.1.2 and Civ.R. 5(b). I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071-2223.

On the date indicated below, a true and correct copy of the foregoing **DEFENDANTS MCNEIL NUTRITIONALS, LLC AND JOHNSON & JOHNSON'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. DENISE MARTIN** was filed with Court and served electronically and will be available for viewing and downloading from the Court's CM/ECF system:

The Notice of Electronic Case Filing automatically generated by the system and sent to all parties entitled to service under the Federal Rules of Civil Procedure and the Local Rules of the District of California who have consented to electronic service shall constitute service of the filed document to all such parties.

Executed on, **February 22, 2018**, at Los Angeles, CA.

I declare under penalty of perjury that I am employed in the office of a member admitted to practice and ECF registered in this Court at whose direction the service was made and that the foregoing is true and correct.

By */s/ Ronie M. Schmelz*
Ronie M. Schmelz