1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| JOANN MARTINELLI, individually and on behalf of all others similarly situated, | No. 2: 15-cv-01733-MCE-DB |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC, | |
| Defendants. | |

Through this class action, Plaintiff Joann Martinelli ("Plaintiff"), individually and on behalf of others similarly situated, seeks relief from Defendants Johnson & Johnson and McNeil Nutritionals, LLC (collectively "Defendants") arising from the labeling and sale of Benecol Regular and Light Spreads ("Benecol Spreads"). Plaintiff alleges eight causes of action: (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) unjust enrichment, (4) violation of California's Consumers Legal Remedies Act, (5) violation of California's Unfair Competition Law, (6) violation of California's False Advertising Law, (7) negligent misrepresentation, and (8) fraud. First Am. Compl. ("FAC"), ECF No. 9.

Presently before the Court are three motions: Plaintiff's Motions to Certify Class (ECF No. 171) and Exclude Expert Testimony (ECF No. 184), and Defendants' Motion to

1

Exclude Expert Testimony (ECF No. 176). Both parties filed timely oppositions and replies to each motion. ECF Nos. 175, 182, 183, 193, 195, 204. For the reasons set forth below, Plaintiff's Motion to Certify Class is DENIED in part and GRANTED in part. Defendants' Motion to Exclude Experts and Plaintiff's Motion to Exclude are each DENIED.[1]

## BACKGROUND[2]

Defendants manufactured, marketed, and sold their Benecol Spreads throughout California and other states. The front labels provide that the product has "no trans fats" and the back labels state the product has "no trans fatty acids." Artificial trans fats are a product of a process called partial hydrogenation and are integral to partially hydrogenated oils. Plaintiff cites to a 2015 FDA report concluding that hydrogenated oils may not be safe for human consumption, as well as more studies concluding that trans fats increase the risk of coronary heart disease and other adverse health effects.

Plaintiff contends she purchased Benecol Spreads for personal use in California after she reviewed the products' labels and believed them to be true. Plaintiff claims the representations on the labels led her to believe the Benecol Spreads had neither trans fats nor trans fatty acids, and that the spreads were therefore safe for human consumption. Plaintiff alleges she relied on these representations and warranties in deciding to buy the Benecol Spreads and asserts she would not have bought the spreads if she knew they contained trans fats or trans fatty acids. Plaintiff further alleges she paid a premium for the Benecol Spreads and understood the purchase to be a transaction between herself and Defendants.

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local R. 230(g).

[2] The following recitation of facts is taken, at times verbatim, from the FAC.

According to Plaintiff, the Benecol Spreads necessarily contain trans fats because they have partially hydrogenated soybean oil as an ingredient. Thus, Plaintiff asserts that Defendants' labels on the Benecol Spreads are false and misleading. Finally, Plaintiff alleges the incorrect labels led consumers to distinguish Benecol Spreads from other comparable products and allowed Defendants to charge a premium for their products.

Plaintiff initially sought to represent both a nationwide class and a California subclass of individuals who purchased Benecol Spreads for personal use. Plaintiff thereafter sought leave to file a Second Amended Complaint ("SAC") proposing to add a representative plaintiff from New York, a New York subclass, and two claims arising under New York law. However, on May 23, 2017, the Court denied Plaintiff's Motion for Leave to File a SAC (ECF No. 46) and granted Defendants' Motion to Deny Nationwide Class Certification (ECF No. 45). Order, ECF No. 78. The Order denied certification of Plaintiff's proposed nationwide class, but otherwise left Plaintiff's proposed California subclass unaffected. On April 25, 2018, Plaintiff filed a renewed Motion to Certify two classes: the previously named California Class, and a Multi-state Express Warranty Class. ECF No. 171.

**ANALYSIS**

Defendants oppose Plaintiff's Motion for Class Certification based on five primary contentions: (1) Plaintiff's damages model based on a "price premium" cannot be applied on a class-wide basis because her experts' testimony is unreliable (Defs.' Mot. Exclude Testimony, ECF No. 176, at 7)[3]; (2) Benecol labels complied with FDA regulations because the amount of trans fat was insignificant (Defs.' Opp'n to Mot. Class Cert., ECF No. 175, at 7); (3) named-Plaintiff's claims are not "typical" of the class (id. at 15-16);

---

[3] The page numbers used in this Memorandum and Order refer to the pagination assigned by the Court's ECF system and not to the pagination assigned by the parties.

(4) this Court's May 2017 Order (ECF No. 78) barring a nationwide class likewise prohibits certification of Plaintiff's purported Multi-State Express Warranty Class, (ECF No. 175, at 16); and (5) the temporal scope of the putative classes is overbroad because the maximum statute of limitations for Plaintiff's claims is four years, the initial Complaint was not filed until August 14, 2015, and equitable tolling does not apply. Id. at 18-21 and 20 n. 5. The Court first addresses the motions to exclude experts, then turns to the question of class certification.

### A. Motions to Exclude Experts

The Court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (clarifying that the court's role extends not only to "scientific" expert testimony, but also to testimony based on technical or other specialized knowledge). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue… Many factors bear on the inquiry." Daubert, 509 U.S. at 592-93.

Federal Rule of Evidence 702 ("Rule 702") was amended in 2000 in response to the Supreme Court's Daubert and Kumho decisions, and now provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expert training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The objective of the Court's gatekeeping function as now articulated in Rule 702 "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 152.

The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho, 526 U.S. at 152; see also Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 991, 1018 (9th Cir. 2004) (wide latitude is afforded to the court in determining whether expert testimony should be admitted and in determining how to test reliability). Notably, "trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function." United States v. Alatorre, 222 F.3d 1098, 1100 (9th Cir. 2000).

### 1. Defendants' Motion to Exclude the Testimony of Plaintiff's Experts Michael Dennis, Ph.D., and Colin Weir.

Defendants seek to exclude the testimony of Plaintiff's two designated experts, Michael Dennis, Ph.D., ("Dennis"), and Mr. Colin Weir ("Weir"). ECF No. 176. For the reasons that follow, Defendants' Motion to Exclude is DENIED.

#### a. Surveys

Defendants argue that the opinions of Dennis and Weir are "based solely on the faulty and unreliable consumer surveys conducted by Dr. Dennis." ECF No. 176 at 7. Defendants contend that the surveys are unreliable for several reasons: (1) the surveys "include[d] few putative class members," (id. at 12); (2) they were "conducted under unrealistic conditions that do not remotely resemble market conditions," (id. at 16); and (3) they "purposely inflate[d] the importance of the trans fat claims on Benecol labels." Id. at 18. Plaintiff opposes the motion, arguing that these criticisms of Dennis and Weir are dependent on the opinions of Defendants' own experts, Dr. Bruce Isaacson and Dr. Denise Martin, and therefore "go to the weight, not the admissibility" of the evidence. Pl.'s Opp'n to Mot. Exclude, ECF No. 190, at 5.

The Ninth Circuit has explained that "issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1263 (9th Cir. 2001); see also Odyssey Wireless, Inc. v. Apple, Inc., No. 15-cv-01735-H-RBB, 2016 WL 7644790, at *10 (S.D. Cal.

Sept. 14, 2016) (finding Defendants' challenge to the survey as unreliable in design and scope went to the weight of the evidence, not its admissibility). The Court notes that Defendants' Motion to Exclude may raise legitimate criticisms of the surveys conducted by Plaintiff's experts. See, e.g., ECF No. 176 at 15 (contesting Dennis' decision to limit survey respondents to consumers over 50 years of age when the class is not so limited). However, such criticisms, even if justified, do not render Plaintiff's expert's opinions inadmissible under Rule 702. See Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion."). Therefore, Defendants' Motion to Exclude is DENIED.

### b. Conjoint Analysis

Defendants additionally contend that because the "proffered [conjoint analysis] methodology does not, and cannot, measure Plaintiff's alleged price premium damages," her expert's testimony must be excluded. ECF No. 176 at 20. The Court disagrees.

As a result of their conjoint analysis, Weir and Dennis concluded that the measure of damages for the class "rests on the fact that a certain percentage of the price consumers paid for Benecol constituted a [20.8%] price premium [about $1.00] solely attributable to the No Trans Fat claim." Mot. Class Cert., ECF No. 174, at 18. Defendants define "conjoint analysis" as "a survey and statistical technique that can measure consumers' relative preferences for specific product attributes." ECF No. 176 at 8 (internal citations omitted). Under a conjoint analysis, "representative respondents . . . answer survey questions presenting similar products containing various combinations of product attributes [that are] designed to elicit how important specific attributes are to them." Id. Defendants argue that reliance on conjoint analysis as a measure of damages is flawed because it only measures demand-side factors (i.e., consumer's willingness to pay), not supply-side factors (the actual price paid). ECF No. 176 at 21.

///

The Ninth Circuit has held that at the class certification stage, plaintiffs need only propose a valid method for calculating class-wide damages, not an actual calculation of damages. Leyva v. Medline Indus., Inc., 716 F.3d 510, 514 (9th Cir. 2013); see Guido v. L'Oreal, USA, Inc., Nos. 2:11-cv-01067-CAS (JCx), 2:11-cv-05465-CAS (JDx), 2014 WL 6603730, at *8 (C.D. Cal. July 24, 2014) ("[P]laintiffs need not show on class certification that they paid a premium for [the product] . . . . Instead, they must merely provide a method for calculating that premium on a classwide basis."). District courts have recognized conjoint analysis as "a generally accepted method for valuing the individual characteristics of a product," and have certified classes where plaintiffs used conjoint analysis. Odyssey, 2016 WL 7644790, at *9 (approving conjoint analysis used to "determine the value a customer would be willing to pay for a particular characteristic of a smartphone"); see also In re Lenovo Adware Litig., Case No. 15-md-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (approving conjoint analysis to "determine how consumers would value the laptops' attributes").

Defendants point out that some courts have rejected conjoint analyses that only measure demand-side willingness to pay. See In re NJOY, Inc., Consumer Class Action Litig., 120 F. Supp. 3d 1050, 1050 (C.D. Cal. Aug. 14, 2015); see also Saavedra v. Eli Lilly & Co., No. 12-CV-9366-SVW (MANx), 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014). However, supply-side factors are incorporated in a conjoint analysis "when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period." Hadley v. Kellogg Sales Co., 324 F. Supp. 3d 1084, 1105 (N.D. Cal. Aug. 17, 2018); see also Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc., 326 F.R.D. 592, 606 (N.D. Cal. June 26, 2018) ("Here, the conjoint survey used actual market-clearing prices as the basis for the prices in the survey, actual competitor products, and actual label claims on those products."); Lenovo, 2016 WL 6277245, at *21 (same).

///

Here, Plaintiff's conjoint analysis "included market-based price points for the price attribute based on actual real-world prices of the Defendants' product and for competing products . . . [and] on actual real-world prices that consumers paid for the Defendants' products and for competing products." Pl.'s Opp'n, ECF No. 190, at 20. Additionally, "[t]he actual real-world pricing of the products reflects the actual number of units sold, the costs of manufacturing, the costs for distribution, advertising, and market, and margin, among other supply-side factors." Id. As the conjoint analysis relied upon by Plaintiff factored supply-side data into its design, Defendants' arguments to the contrary are unavailing. Accordingly, Defendants' Motion to Exclude the Testimony of Plaintiff's Experts Weir and Dennis is DENIED.

**2. Plaintiff's Motion to Exclude the Testimony of Defendants' Experts Dr. Bruce Isaacson and Dr. Denise Martin.**

Plaintiff seeks to exclude the testimony of Defendants' experts, Dr. Bruce Isaacson ("Isaacson") and Dr. Denise Martin ("Martin"). ECF No. 184. For the reasons that follow, Plaintiff's Motion to Exclude is DENIED.

"The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 749, 759 (8th Cir. 2006). "Although a defendant need not put forth expert opinions to challenge affirmative theories on which the plaintiff bears the burden of proof, such as damages, a defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s)." Clear-View Tech., Inc. v. Rasnick, Case No. 13-cv-02744-BLF, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015).

Here, Plaintiff simply nitpicks Isaacson and Martin's review of the surveys. For example, Plaintiff repeatedly asserts that Defendants' experts failed to conduct their own research or surveys. See, e.g., ECF No. 190 at 16 ("Dr. Isaacson has failed to ask any consumers their opinions of the survey questions."). Yet, in supplying rebuttal testimony, Defendants' experts had no obligation to conduct their own surveys. Plaintiff merely responds to Defendant experts' criticisms with testimony from her own experts. See,

8

e.g., id. at 13 (contesting Isaacson's criticism of Dennis' use of distractor attributes in the survey with Weir's testimony). Defendants' experts merely poke holes in the testimonies offered by Plaintiff's experts, which is exactly the purpose of a rebuttal expert. Plaintiff essentially uses her Motion for Exclusion to bolster the credibility of her own experts, which is improper. Accordingly, Plaintiff's Motion to Exclude the Testimony of Defendants' Experts Isaacson and Martin is DENIED.

### B. Plaintiff's Motion for Class Certification

As an initial matter, Defendants contend that Plaintiff's Motion for Class Certification should be denied on the grounds that Benecol's labels followed all FDA regulations. Defs.' Opp'n to Mot. Class Cert., ECF No. 175, at 2-4. This contention, however, is directly contradicted by earlier court rulings on the issue. In Reid v. Johnson & Johnson, an earlier case concerning Benecol, a Ninth Circuit panel found that, "Benecol's label prominently states that Benecol contains 'No Trans Fat.' That statement is not true." 780 F.3d 952, 967 (9th Cir. 2015). Thus, Defendants' arguments on this point are not well taken.

Here, Plaintiff moves the Court to certify the following two classes:

(1) The "Multi-State Express Warranty Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia; and

(2) The "California Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California.

A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a)[4] have been met, and that at least one of the requirements of Rule 23(b) has been met. See Fed. R. Civ. P. 23; Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

9

certification has met the prerequisites of Rule 23. Valentino, 97 F.3d at 1233. While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

### 1. The putative class meets the requirements of Rule 23(a).

#### a. Numerosity

The numerosity requirement of Rule 23(a)(1) is established if "the class is so numerous that joinder of all members is impracticable." The geographical disbursement of class members outside of one district increases the impracticability of joinder, and "when the class is large, numbers alone are dispositive." Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986). At the same time, courts have been inclined to certify classes of fairly modest size. See, e.g., Jordan v. Los Angeles Cty., 669 F.2d 1311, 1319 (9th Cir. 1982) (willing to find numerosity for classes with thirty-nine, sixty-four, and seventy-one people), vacated on other grounds, 459 U.S. 810 (1982).

Here, Plaintiff asserts numerosity is met because between 2008 and 2011, Defendants sold 1,854,859 units of Benecol in the Multi-State Express Warranty Class states and 806,630 units in California. Mot. Class Cert., ECF No. 174, at 19. The Court

///

agrees and finds that the class is so numerous that joinder of all members of both classes is impracticable.

### b.  Commonality

Under Rule 23(a)(2), commonality is established if "there are questions of law or fact common to the class." This requirement is construed permissively and can be satisfied upon a finding of "shared legal issues with divergent factual predicates . . . ." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, every class member has the same basic claim—they purchased Benecol because of statements on the product's packaging and those statements were false. ECF No. 174 at 19.  Resolution of this common claim depends on a critical common question of fact: whether Defendants' statements were in fact false.  Indeed, the Ninth Circuit found the "no trans fat" claim to be false.  Reid, 780 F.3d at 967.  As Plaintiff explains, answering this common question of fact "will resolve an issue that is central to the validity of each one of the claims in one stroke."  ECF No. 174, at 19 (internal citations omitted).  Accordingly, the Court finds the requirement of commonality is met.

### c.  Typicality

Typicality under Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Typicality does not require the claims to be identical.  Hanlon, 150 F.3d at 1020.  Rather, the Ninth Circuit has found typicality is met if the requisite claims "'share a common issue of law or fact' . . . and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'"  Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted), amended, 937 F.2d 465 (9th Cir. 1991).

Here, Defendants contend that named-Plaintiff's claims are not "typical" of the class because Plaintiff purportedly admitted to purchasing Benecol due to the FDA-authorized "heart-healthy" logo on the label.  Defs.' Opp'n to Mot. Class Cert., ECF No. 175, at 15.  As it is uncontested that the heart-healthy logo was authorized, Defendants thus contend that Plaintiff's purchasing motivations were different from the

class she seeks to represent. ECF No. 175, at 15. However, review of Plaintiff's deposition transcript shows that she relied on both the heart logo and the "no trans fat" claim in making her purchasing decision. Because of this, Defendants' contentions are not well taken. The Court finds that Plaintiff's claims are typical of the proposed class, and therefore the typicality requirement is satisfied.

### d. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In Hanlon, the Ninth Circuit identified two issues for determining the adequacy of representation: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." 150 F.3d at 1020.

As previously said, the Court finds that Plaintiff's claims are typical of the proposed class and thus can represent the interests of the class. Defendants do not challenge the competence of class counsel, and upon review of their qualifications, the Court finds that class counsel will fairly and adequately protect the interests of the classes. Accordingly, Plaintiff has satisfied all four elements of Rule 23(a).

### 2. The putative class meets the requirements of Rule 23(b).

The Court finds that certification is proper under Rule 23(b)(3), which permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter.

### a. Predominance

Under the Rule 23(b)(3) predominance analysis, the Court must determine whether the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" Hanlon, 150 F.3d at 1022, citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). The requirement is satisfied if a plaintiff establishes that a "common nucleus of facts and potential legal remedies dominates" the litigation. Hanlon,

150 F.3d at 1022.  "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."  Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016).  In Bouaphakeo, the Court further explained that:

> An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.  The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.

Bouaphakeo, 136 S. Ct. at 1045 (citations and internal quotation marks omitted).

Here, Plaintiff seeks to certify a Multi-State Express Warranty Class of ten jurisdictions.  As a federal court sitting in diversity, we apply the forum state's choice-of-law rule.  See Kohlrautz v. Oilmen Participation Corp., 441 F.3d 827, 833 (9th Cir. 2006) ("In determining what state law to apply, a federal court applies the choice-of-law rules of the state in which it sits.").  California's choice-of-law rule provides that a plaintiff wishing to apply California law to all class members' claims has the initial burden of demonstrating that California has significant contacts to each class member.  Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012) (citing Wash. Mut. Bank v. Superior Ct., 24 Cal. 4th 906, 921 (2001)).  If the plaintiff meets that burden, the burden then shifts to the defendant to demonstrate why other states' laws, rather than California law, should apply to the class members' claims.  Id. at 590.  If interests of other states do not outweigh California's interest in applying its law, then application of California to the multi-state class claims is appropriate.  Id.

Plaintiff contends, and Defendants do not dispute, that "every unit of Benecol sold during the class period was manufactured at Defendants' direction and to Defendants' specification in California by Ventura Foods."  ECF No. 174 at 22.  Because each unit of Benecol sold during the class period can be directly traced to California, the Court finds this is sufficient to establish significant contacts with California.  See Keilholtz v. Lennox Hearth Prods. Inc., 268 F.R.D. 330, 340 (N.D. Cal. Feb. 16, 2010) ("Although many

fireplaces were produced exclusively outside of California, the fact that seventy-six percent maintained a production connection to California weighs in favor of finding that applying California to the class claims would not be arbitrary or unfair."). Because Plaintiff has met her burden, the burden shifts to Defendants to show why California law should not apply.

To determine which state has the greater interest in the application of its law, California courts apply the three-step governmental interest test: (1) determine whether the relevant law for each jurisdiction is different or the same; (2) if different, determine if each jurisdiction has an interest in applying its own law; and (3) compare the interests of each jurisdiction. Mazza, 666 F.3d at 590. Based on this analysis, the court then applies the law of the state whose interest would be most impaired if not applied. Id. Here, it is uncontested that the express warranty laws of California and the jurisdictions in the Multi-State Class are identical. See ECF No. 174 at 22 ("Plaintiff's class definition includes only jurisdictions where individual class member reliance and privity [for the express warranty claims] are not required."). Although the Court recognizes that those states have an interest in applying their own law to conduct within their borders, Defendants do not demonstrate why California law should not apply if the laws are identical. Wash. Mut. Bank, 24 Cal. 4th at 921. Because the express warranty laws of California and the other states are the same, applying California law to the Multi-State Express Warranty Class claims is not arbitrary or unfair. Melgar v. Zicam LLC, No. 2:14-cv-00160-MCE-AC, 2016 WL 1267870 (E.D. Cal. 2016) (certifying multi-state class identical to Plaintiff's multi-state class here). Therefore, the Court finds that the predominance requirement is met.

### b. Superiority of Class Action

Plaintiff must also show that the proposed class action is the superior method of resolving the dispute in comparison to available alternatives. "A class action is the superior method for managing litigation if no realistic alternative exists." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234-35 (9th Cir. 1996). The Ninth Circuit has

recognized that a class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums. Local Joint Exec. Bd. Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001).

Here, the Court finds that this class action is superior to alternative methods of adjudication. As Plaintiff notes, the average price of Benecol was $4.80 and without a class action, most class members will not expend the time or the resources to seek recovery. ECF No. 174, at 28. The Court agrees, as it would be unfeasible for many of the purported class members to obtain relief on an individual basis. Therefore, the proposed class action is the superior method of resolving this dispute, and the Court finds that the requirements of Rule 23(b)(3) are met.

### 3. Equitable Tolling

While the Court has determined that certification of Plaintiff's class is warranted, a question concerning the definition of the classes remains. Defendants argue that the temporal scope of the putative classes is overbroad because the initial Complaint was not filed until August 14, 2015, and a maximum statute of limitations of four years applies to Plaintiff's express warranty claims. ECF No. 175 at 19. Because Plaintiff filed her Complaint on August 14, 2015, Defendants contend that the class period should be limited to August 14, 2011 to December 31, 2011.[5] Id. Plaintiff, in turn, argues that California's equitable tolling doctrine preserves the claims of the classes. ECF No. 191 at 11. The Court considers equitable tolling for each of the classes, in turn.

#### a. California Class

California's equitable tolling doctrine:

> [O]perates to suspend or extend a statute of limitations in order to ensure that a limitations period is not used to bar a claim unfairly. Three factors are taken into consideration when deciding whether to apply equitable tolling under California law: (1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering

---

[5] It is uncontested that the "no trans fat" claims were removed from Benecol's labels in January 2012.

15

> evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

Hatfield v. Halifax PLC, 564 F.3d 1177, 1185 (9th Cir. 2009) (internal citations and quotations omitted). Under this tolling doctrine, California courts have allowed an earlier class action to toll claims in a later class action. Id.

Plaintiff argues the statute of limitations was tolled during the pendency of the earlier Benecol case, Reid v. Johnson & Johnson, 780 F.3d 952 (9th Cir. 2015). ECF No. 174 at 11 n. 4. In opposition, Defendants contend that since California's equitable tolling "only applies when actions are pursued in different forums," and because Reid was filed in a California federal court, that Plaintiff has failed to pursue this action in a "different forum" for purposes of equitable tolling. ECF No. 175, at 20; see also Reid, 780 F.3d at 955 (case originally filed in the Southern District of California). The Court finds that the Southern District is not the same forum as the Eastern District. See Gardner v. Shell Oil Co., No. 09-5876 CW, 2010 WL 1576457, at *6 (N.D. Cal. Apr. 19, 2010) (applying equitable tolling in a present case when the earlier case was filed in different district); compare with Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp., 878 F. Supp. 2d 1009, 1018 (C.D. Cal. Jan. 20, 2011) (declining to apply equitable tolling because the present and earlier cases were filed in the same forum, the Central District of California).

Additionally, the Reid action supplied Defendants notice of Plaintiff's claims such that Defendants suffer no prejudice here. See Reid, 780 F.3d at 967; see also Gardner, 2010 WL 1576457, at *6 ("In many ways, the present case is merely a continuation of the [previous class action] case because Plaintiffs have pursued their claims vigorously since the filing of that case . . ."). Finally, Plaintiff filed the present action just five months after Reid settled, supporting that there was no undue delay. Accordingly, the Court concludes that equitable tolling applies to the California class, such that these claims were preserved during the pendency of the Reid action.

### b. Multi-State Express Warranty Class

Defendant next contends that even if applicable to the California class, California's equitable tolling doctrine does not apply to the non-California residents of Multi-State Express Warranty class. ECF No. 175 at 20 n. 5. For the reasons that follow, this Court agrees.

In <u>Hatfield v. Halifax PLC</u>, the Ninth Circuit provided that, "[a]lthough we conclude that California would allow its resident class members to reap tolling benefits under its equitable tolling doctrine, the same cannot be said for the non-resident class members." 564 F.3d at 1189; <u>see also</u> <u>Clemens v. DaimlerChrysler Corp.</u>, 534 F.3d 1017, 1025 (9th Cir. 2008) ("[T]he weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law."). District courts in California have adhered to this rule in declining to extend California's equitable tolling to non-residents. See <u>Asberry v. Money Store</u>, Case No. 2:18-cv-01291-ODW (PLAx), 2018 WL 3807806, at *9 (C.D. Cal. Aug. 8, 2018) ("With respect to the claims of the class members from outside California, the Court finds they are barred by the applicable statute of limitations because equitable tolling does not apply cross-jurisdictionally"); <u>see also</u> <u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>, Nos. M 07-1827 SI, C 11-2225 SI, 2012 WL 149632, at *3 (N.D. Cal. Jan. 18, 2012) ("Because Office Depot is based in Florida, the Court concludes that it cannot take advantage of California's equitable tolling.").

Plaintiff argues that since "8 of the 10 multi-class states have expressly adopted cross-jurisdictional tolling," that the Court should "thereby [apply] tolling the claims of non-resident class members" as well. ECF No. 191, at 12. Of these 10 multi-class jurisdictions, D.C. has not addressed the issue of cross-jurisdictional tolling, and Virginia has expressly rejected it.[6] ECF No. 191 at 12-13. Additionally, Plaintiff asks the Court to assume that D.C. would apply cross-jurisdictional tolling by relying on <u>In re LIBOR-</u>

---

[6] Plaintiff concedes that because Virginia has expressly rejected cross-jurisdictional tolling, "the claims of class members from Virginia should be limited to August 24, 2011 to December 31, 2011." ECF No. 191 at 13.

17

Based Fin. Instruments Antitrust Litig., No. 11 MDL 2262 NRB, 2015 WL 6243526, at *141 (S.D.N.Y. Oct. 20, 2015) ("[W]e will predict that each state would accept cross-jurisdictional tolling unless state-specific factors suggest otherwise."). However, this request runs counter to Ninth Circuit precedent, as it has refused to "import the doctrine of [cross-jurisdictional equitable tolling] into state law where it did not previously exist." Clemens, 534 F.3d at 1025. Furthermore, regardless of other states' acceptance of cross-jurisdictional tolling, Ninth Circuit precedent mandates this Court to decline applying California's equitable tolling cross-jurisdictionally to the non-resident class members.[7]

Therefore, the Court finds that the claims of the Multi-State Express Warranty class members are not entitled to equitable tolling and are thus limited to the August 24, 2011, to December 31, 2011, period.

**CONCLUSION**

For the reasons set forth above, Defendants' and Plaintiff's Motions to Exclude Experts (ECF Nos. 176, 184, respectively) are each DENIED. Plaintiff's Motion to Certify Class (ECF No. 171) is DENIED in part and GRANTED in part. Plaintiff's classes are certified as follows:

///
///
///
///
///

---

[7] The Court recognizes the modern trend toward accepting cross-jurisdictional tolling. See In re LIBOR-Based Fin. Instruments Antitrust Litig., No. 11 MDL 2262 NRB, 2015 WL 6243526, at *143 (S.D.N.Y. Oct. 20, 2015) ("Cross-jurisdictional tolling may even be the majority rule among state courts that have decided the question, and the trend is in favor of tolling. Since 2010, only Virginia . . . has rejected cross-jurisdictional tolling."). However, because the Ninth Circuit has remained silent on this issue, the Court is bound by its current precedent, which declines to apply tolling cross-jurisdictionally. Hatfield, 564 F.3d at 1189.

1. The "Multi-State Express Warranty Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California, and all Benecol purchasers between August 24, 2011 and December 31, 2011 in Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia; and

2. The "California Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California.

IT IS SO ORDERED.

Dated: March 28, 2019

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE