**O'MELVENY & MYERS LLP**
Richard B. Goetz (State Bar No. 115666)
Carlos M. Lazatin (State Bar No. 229650)
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: rgoetz@omm.com
clazatin@omm.com

**O'MELVENY & MYERS LLP**
Hannah Chanoine (*Pro Hac Vice*)
Times Square Tower
7 Times Square
New York, NY, 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: hchanoine@omm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANN MARTINELLI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC,<br><br>Defendants. | Case Number: 2:15-cv-01733-MCE-DB<br><br>**DEFENDANTS' MOTION TO DECERTIFY THE CLASSES**<br><br>Hon. Morrison C. England, Jr.<br><br>Date: November 12, 2020<br>Time: 2:00 p.m.<br>Courtroom: 7, 14th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on November 12, 2020 at 2:00 p.m., or as soon thereafter as this matter may be heard by the above-entitled Court located at 501 I Street, Suite 4-200, Sacramento, California, 95814, Defendants Johnson & Johnson and McNeil Nutritionals, LLC ("Defendants"), will and hereby do move this Court to decertify the Multi-State Express Warranty Class and the California Class, which were certified in the Court's March 29, 2019 Memorandum and Order, Dkt. 216 ("Order"). Defendants move to decertify pursuant to Rule 23(c)(1)(C) on the basis that new evidence since the Court's Order shows that Plaintiff JoAnn Martinelli did not purchase Benecol—the product at issue in this false advertising consumer class action—and can therefore no longer satisfy the typicality and adequacy requirements under Rule 23(a) for maintaining a class action. Defendants' Motion is based on this Notice, the accompanying Memorandum of Points and Authorities filed concurrently herewith; the declarations of Joseph R. O'Connor, Theodore K. Bell of Safeway Inc., Laurie Weis of Raley's, and Alison Sentie; the pleadings and filings in this action; and such other matters as may be presented at or before the hearing. This motion is made following the conference of counsel pursuant to the Court's standing order which took place on October 15, 2020.

Dated: October 15, 2020

**O'MELVENY & MYERS LLP**

By: */s/ Carlos M. Lazatin*
Carlos M. Lazatin

Carlos M. Lazatin (State Bar No. 229650)
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: clazatin@omm.com

Richard B. Goetz (State Bar No. 115666)
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: rgoetz@omm.com

Hannah Chanoine (*Pro Hac Vice*)
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: hchanoine@omm.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1
II. BACKGROUND ..... 3
- A. Ms. Martinelli's Claims ..... 3
- B. Ms. Martinelli's Deposition Testimony About Her Purported Benecol Purchases ..... 3
- C. Ms. Martinelli's Testimony About Her Medical Advice And Health ..... 4
- D. The Court Found That Ms. Martinelli Satisfied Typicality and Adequacy Based on Her Deposition Testimony ..... 4
- E. Evidence Uncovered Since Class Certification Refutes Plaintiffs' Sworn Testimony and Discovery Responses ..... 5

III. LEGAL STANDARDS ..... 7
IV. MS. MARTINELLI'S LACK OF CREDIBILITY RENDERS HER AN INADEQUATE CLASS REPRESENTATIVE ..... 8
V. MRS. MARTINELLI DID NOT PURCHASE BENECOL AND HER CLAIMS ARE THEREFORE ATYPICAL ..... 11
VI. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Arredondo v. Delano Farms Co.*, 301 F.R.D. 493 (E.D. Cal. 2014) .......... 7, 8

*Beasley v. Lucky Stores, Inc.*, 2020 WL 408971 (N.D. Cal. Jan. 24, 2020) .......... 8

*Bohn v. Pharmamvite*, 2013 WL 4517895 (C.D. Cal. Aug. 7, 2013) .......... 11

*Bowling v. Johnson & Johnson*, 2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019) .......... 2, 5, 10, 12

*Campbell v. PricewaterhouseCoopers, LLP*, 287 F.R.D. 615 (E.D. Cal. 2012) .......... 8

*Fraser v. Wal-Mart Stores, Inc.*, 2016 WL 6208367, (E.D. Cal. Oct. 24, 2016) .......... 8

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150 (S.D.N.Y. 2010) .......... 11

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .......... 12

*Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616 (S.D. Cal. 2007) .......... 13

*Hale v. Sharp Healthcare,* 183 Cal. App. 4th 1373 (2010) .......... 8

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .......... 2, 11, 12

*Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996 (N.D. Cal. 2010) .......... 8

*Herron v. Best Buy Stores, LP*, 2016 WL 1572909 (E.D. Cal. Apr. 19, 2016) .......... 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 8

*Jovel v. Boiron Inc.*, 2014 WL 1027874 (C.D. Cal. Feb. 27, 2014) .......... 11

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Kosta v. Del Monte Foods, Inc.*,
308 F.R.D. 217 (N.D. Cal. 2015) .......... 13

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 8

*Magadia v. Wal-Mart Assocs., Inc.*,
384 F. Supp. 3d 1058 (N.D. Cal. 2019) .......... 11

*Major v. Ocean Spray Cranberries, Inc.*,
2013 WL 2558125 (N.D. Cal. June 10, 2013) .......... 13

*Marlo v. United Parcel Serv., Inc.*,
639 F.3d 942 (9th Cir. 2011) .......... 8

*Martin v. Sysco Corp.*,
325 F.R.D 343 (E.D. Cal. 2018) .......... 8, 13

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 14

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
926 F.3d 528 (9th Cir. 2019) .......... 13, 14

*Nguyen v. Medora Holdings, LLC*,
2015 WL 4932836 (N.D. Cal. Aug. 18, 2015) .......... 14

*Officers for Justice v. Civil Service Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .......... 7

*Ryan v. Jersey Mike's Franchise Sys.*,
2014 WL 1292930 (S.D. Cal. Mar. 28, 2014) .......... 11

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .......... 12, 13

*Valtierra v. Wells Fargo Bank, N.A.*,
2011 WL 2078024 (E.D. Cal. May 25, 2011) .......... 8

*Weiner v. Dannon Co., Inc.*,
255 F.R.D. 658 (C.D. Cal. Jan. 30, 2009) .......... 13

*Weinstat v. Dentsply Internat., Inc.*,
180 Cal. App. 4th 1213 (2010) .......... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Rules**

Fed. R. Civ. P. 23(a)(3) .......... 11

Fed. R. Civ. P. 23(a)(4) .......... 8

Fed. R. Civ. P. 23(c)(1)(C) .......... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

In its March 2019 Order granting in part Plaintiff JoAnn Martinelli's motion for class certification, this Court found that Ms. Martinelli had met Rule 23(a)'s typicality and adequacy requirements because her "deposition transcript" showed that she purchased Benecol and that she did so in reliance on "the 'no trans fat' claim" on the Benecol label. (Dkt. 216 at 11:17–12:17.) Evidence developed since the Court's certification order now reveals none of that to be true—JoAnn Martinelli never actually purchased Benecol, and she appears to have lied multiple times under oath about her supposed purchases.

In fact, it now appears that almost every part of Ms. Martinelli's deposition testimony about her Benecol purchases—and other matters—was false. For example, Ms. Martinelli testified that she purchased Benecol from three grocery stores near her home in Auburn, California—Safeway, Raley's, and Walmart—every few weeks for her husband. According to Ms. Martinelli, she did this for five or six years until she stopped buying Benecol in 2015. But her uncorroborated story has now been refuted by other, independent evidence:

- Defendants subpoenaed Ms. Martinelli's purchase records from Safeway, which revealed that ***not one of Ms. Martinelli's more than 2,700 purchases from Safeway since 2008 was of Benecol.***
- Defendants also subpoenaed Ms. Martinelli's purchase records from Raley's. Here too, Raley's records show that of Ms. Martinelli's nine purchases of butter and margarine spreads, ***not one was of Benecol***.
- Ms. Martinelli could not have purchased Benecol from Walmart because ***Defendants never shipped Benecol to any Walmart in California***.
- Ms. Martinelli's testimony that she bought Benecol for her husband is similarly dubious. In a sworn declaration submitted to this Court, Ms. Martinelli's husband said that he does not remember ever eating Benecol.
- Ms. Martinelli testified that she purchased Benecol for several years until 2015, and that every Benecol tub she bought included the allegedly misleading "No Trans Fats" claim. But this cannot possibly be true since McNeil removed the "No

Trans Fats" claim from the label in 2011, and now, in written discovery, Ms. Martinelli says she cannot remember what was on the label after all.

Ms. Martinelli also provided false testimony about her relevant medical conditions and the medical advice she received about Benecol. [redacted]

At the appropriate time, McNeil will move for summary judgment, as no reasonable jury could conclude that Ms. Martinelli ever bought Benecol in the face of such evidence—let alone that she relied on the "No Trans Fats" label as she claims. For present purposes, however, this new evidence disqualifies Ms. Martinelli from representing this class. The mismatch between her sworn testimony and the independent, documentary evidence bearing on basic issues in the case—including her purchase of the product at issue and her reliance on the challenged claims—will, at the very least, yield a sideshow of distracting credibility disputes and litigation over defenses unique to her. In circumstances such as these, where a class representative is subject to "unique defenses which threaten to become the focus of the litigation," the Ninth Circuit has held that Rule 23's typicality and adequacy requirements cannot be met. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Ms. Martinelli clearly cannot meet them here.

Another district court recently reached that conclusion as to a similarly non-credible plaintiff in parallel litigation in New York brought by these same plaintiffs' lawyers, involving the same legal claims over the labeling of Benecol. In *Bowling v. Johnson & Johnson*, 2019 WL 1760162, at *6–7 (S.D.N.Y. Apr. 22, 2019), the court denied the plaintiff's motion for class certification on adequacy and typicality grounds, finding that "Defendants have raised credible concerns about the central factual predicate of [the plaintiff's] claim—that she purchased Benecol during the relevant period." *See id.* at *7; *id.* at *6. (plaintiff deemed inadequate "in light of the substantial credibility issues that threaten to undermine her claims").

This Court currently has pending before it a separate motion (Dkt. 227) to amend the class definition to eliminate the bulk of the claims in this action because, under binding California law, the class period can consist of no more than four-and-a-half months of claims for purchases made between August 14, 2011 and December 31, 2011. The Court should now decertify the scant claims that remain because it is now clear that, under Ninth Circuit law, the named plaintiff in this case cannot meet the adequacy and typicality requirements of Rule 23.

## II. BACKGROUND

### A. Ms. Martinelli's Claims

JoAnn Martinelli purports to bring this consumer class action on behalf of consumers who purchased Benecol. Benecol is a market-leading cholesterol-lowering spread that has helped millions of Americans. Ms. Martinelli, however, claims that she was induced to purchase Benecol because the product's label misstated its trans fat content. (Dkt. 9 ¶ 7.) Ms. Martinelli alleges that she "saw that Benecol Spreads were labeled as having 'No Trans Fats' and 'No Trans Fatty Acids'" and she purportedly "relied on these representations and warranties in deciding to purchase Benecol Spreads." (*Id.*) She alleges the "No Trans Fats" statements are false and misleading because Benecol contained some amount of trans fat, and has brought eight claims for relief, including claims under the California Unfair Competition Law (UCL), Consumers Legal Remedies Act (CLRA), and False Advertising Law (FAL), as well as common law claims for breach of warranty, fraud, and negligent misrepresentation. (*Id.* ¶¶ 41–96.)

### B. Ms. Martinelli's Deposition Testimony About Her Purported Benecol Purchases

During her May 24, 2016 deposition, Ms. Martinelli testified that she purchased Benecol for her husband every "[t]wo to three weeks" for "[p]robably five or six years" [redacted] (O'Connor Decl., Ex. 1, J. Martinelli Dep. at 126:6–12, 134:9–13.) She used it to cook "daily foods," and her husband enjoyed its taste. (*Id.* at 131:13–24.) Ms. Martinelli could not remember exactly when she began purchasing Benecol, but testified that she stopped purchasing it in "probably 2015." (*Id.* at 126:13-20, 134:9-13.)

According to her deposition testimony, Ms. Martinelli purchased Benecol at "Raley's, Safeway, and at Wal-Mart, too." (*Id.* at 138:5–8.) She did not shop at one store more than the other: "if I'm going down the hill to the mall, I'll stop at Raley's. If I'm up here, I'll go to Safeway. If I'm coming back up the hill, I'll stop at Wal-Mart." (*Id.* at 138:11–21.) Ms. Martinelli testified that she saw the "No Trans Fats" label every time she purchased Benecol, and she "didn't purchase any Benecol product that didn't have that statement on it." (*Id.* at 183:21–185:8.) According to Ms. Martinelli, the only reason she continued to purchase Benecol was because the label stated "No Trans Fat." (*Id.* at 188:8–11.) Ms. Martinelli did not have any documents or any other records supporting her testimony about her Benecol purchases. (*Id.* at 86:12–14; 145:11–152:3.)

**C. <u>Ms. Martinelli's Testimony About Her Medical Advice And Health</u>**

Ms. Martinelli was also asked at her deposition about [redacted] (*id.* at 181:16–20). Ms. Martinelli testified that she had never read any articles about cholesterol (*id.* at 121:23–24) and that she [redacted] (*Id.* at 135:12–18.) In her written discovery responses, verified under oath, Ms. Martinelli swore that [redacted] (O'Connor Decl., Ex. 2 ("Pl. Rog. Resp.") No. 5.)

**D. <u>The Court Found That Ms. Martinelli Satisfied Typicality and Adequacy Based on Her Deposition Testimony</u>**

On April 25, 2018, Ms. Martinelli filed a renewed motion for class certification. (Dkt. 171.) She asserted that her claims were typical and that she was an adequate class representative because she "'relied on the No Trans Fat claim when she decided to purchase Benecol' in California." (Dkt. 171 at 12:19–20.) On March 29, 2019, the Court granted Ms. Martinelli's motion in part and certified two classes:

1. The "Multi-State Express Warranty Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California, and all Benecol purchasers between August 24, 2011 and December 31, 2011 in Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia; and

2. The "California Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California.

(Dkt. 216 at 19:1–7.) The Court found that Ms. Martinelli met the typicality and adequacy requirements because "[her] deposition transcript shows that she relied on . . . the 'no trans fat' claim in making her purchasing decision." (*Id.* at 11:17–12:17.)

### E. <u>Evidence Uncovered Since Class Certification Refutes Plaintiffs' Sworn Testimony and Discovery Responses</u>

This is not the first time the Bursor & Fisher law firm representing Ms. Martinelli here has proposed a class representative who fabricated testimony about buying Benecol. In *Bowling v. Johnson & Johnson,* the Bursor & Fisher firm filed nearly identical claims against these same Defendants in the Southern District of New York. The court in *Bowling* found that the named plaintiff there was "vulnerable to serious attacks on her credibility" since "unrebutted evidence [showed] that [plaintiff] Bowling *could not have purchased* Benecol Light [at Wal-Mart] in the manner in which she ha[d] testified." *Bowling*, 2019 WL 1760162, at *6 (emphasis added). The plaintiff argued that these were just "peripheral details," but the court disagreed, finding that "Defendants [ ] raised credible concerns about [a] *central factual predicate* of Bowling's claim—that she purchased Benecol during the relevant period." *Id.* at *6–7 (emphasis added). The Court therefore denied plaintiff's motion for class certification, concluding that Rule 23(a)'s typicality and adequacy requirements were not met. *Id.* at *7.

The newly developed evidence here reveals the ***exact same problem*** with Ms. Martinelli's claims. The evidence shows that JoAnn Martinelli lied under oath, did not purchase Benecol in the way that she testified, and in all likelihood, did not purchase Benecol at all.

***Safeway.*** Safeway has a loyalty rewards program that offers customers discounts when they use their rewards card or associated telephone number when making purchases. (Decl. of T.

Bell of Safeway ¶¶ 1–2.) Safeway then keeps a record of each customer's purchases. (*Id.* ¶ 2.) Ms. Martinelli testified that when shopping at Safeway, she would enter her phone number associated with her loyalty rewards account to obtain discounted prices. (O'Connor Decl., Ex. 1, J. Martinelli Dep. at 74:11–17.) On February 25, 2020, Defendants subpoenaed Safeway for its records of Ms. Martinelli's purchases made using her loyalty rewards account. (O'Connor Decl. ¶ 2.) Safeway produced records showing 2,769 grocery purchases made by Ms. Martinelli since 2008. ***Not a single one of these purchases was of Benecol***. (Decl. of T. Bell of Safeway ¶¶ 5, 6, Ex. A.)

***Raley's.*** Raley's has a similar rewards program. (Decl. of L. Weis of Raley's ¶¶ 1–2.) Ms. Martinelli also used her rewards program-linked phone number to make purchases at Raley's. (O'Connor Decl., Ex. 2, Pl. Rog. Resp. No. 2; Decl. of L. Weis of Raley's Ex. A.) Defendants similarly subpoenaed Raley's for Ms. Martinelli's purchase records. Raley's records showed that Ms. Martinelli had made nine purchases of butter or similar spreads. Of those, Raley's records ***did not show any Benecol purchases either;*** Raley's specifically confirmed that its records reflected ***no purchases of either Benecol or Benecol Light*** linked to Mrs. Martinelli's account "between January 1, 2008 through March 4, 2020." (Decl. of L. Weis of Raley's ¶ 6, Ex. A.)

***Walmart***. It is impossible for Ms. Martinelli to have purchased Benecol from Walmart in the manner she testified. McNeil's sales records show that ***McNeil never shipped any Benecol products to any Walmart in California***. (Decl. of A. Sentie ¶ 5.) McNeil only started shipping Benecol to Walmart stores *outside* California in September 2011, but by that time, McNeil had already begun removing the "No Trans Fats" and "No Trans Fatty Acid" claims from the label. (O'Connor Decl., Ex. 3, Steele Decl. ¶ 20; Dkt. 216 Order at 15 n.5.)

***Ms. Martinelli's Benecol Purchases After 2011.*** Defendants propounded requests for admission on Ms. Martinelli, asking her to admit that the Benecol she purportedly purchased from 2012 to 2015 did not have the allegedly misleading "No Trans Fats" and "No Trans Fatty Acid" claims. Despite her prior testimony that *every* Benecol tub she ever purchased featured the "No Trans Fats" claim, Ms. Martinelli now refuses to admit or deny that the Benecol she says she bought after 2011 included that claim—in fact, she now refuses to admit or deny that she even

purchased Benecol then. (O'Connor Decl., Ex. 4, Request For Admission Resp. Nos. 1–24 (responding that she has "insufficient" information to respond to requests).)

***Ms. Martinelli's Husband.*** Ms. Martinelli's husband Larry Martinelli also has no memory of ever eating Benecol, despite his wife's testimony that he ate it for years. According to a declaration Larry Martinelli submitted to this Court last May in an attempt to quash a subpoena for his deposition: "I cannot recall any particular occasion where I ate Benecol, or where I was told that I was eating Benecol"—contradicting Ms. Martinelli's testimony that Mr. Martinelli ate Benecol for years and enjoyed its taste. ( O'Connor Decl., Ex. 8, L. Martinelli Decl. ¶ 4.)[1]

***Ms. Martinelli's Doctor.*** At his deposition, [redacted] (O'Connor Decl., Ex. 5 ("J. Foster Dep.") at 57:21–58:1, 65:11–14, 91:25–92:2, 101:1–5, 114:15–117:10, 121:24–122:14, 186:15–187:15, 210:7–16.) [redacted] (*Id.* at 237:14–20.) [redacted] (O'Connor Decl., Ex. 6 at 2 (emphasis added); O'Connor Decl., Ex. 5, J. Foster Dep. at 147:3–150:4, 168:3–11, 175:19–176:9).

## III. LEGAL STANDARDS

A class certification order is "inherently tentative," *Officers for Justice v. Civil Service Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982), and may be "altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The standard "is the same for class decertification as it is with class certification: a district court must be satisfied that the requirements of Rules 23(a) and (b) are met to allow plaintiffs to maintain the action on a

[1] Larry Martinelli is also represented by the Bursor & Fisher firm.

representative basis." *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 502 (E.D. Cal. 2014). On a motion for decertification, the "party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *Arredondo,* 301 F.R.D. at 502 (same); *Campbell v. PricewaterhouseCoopers, LLP*, 287 F.R.D. 615, 619 (E.D. Cal. 2012) ("[I]n the case of a motion to decertify a class, the Ninth Circuit rule is that the party resisting the motion bears the burden of showing that the motion should not be granted."). In deciding whether to decertify a class, a district court will "resolve factual disputes by a preponderance of the evidence." *Fraser v. Wal-Mart Stores, Inc.*, 2016 WL 6208367, at *2 (E.D. Cal. Oct. 24, 2016). Plaintiff therefore bears the burden of showing a fact is "more likely than not." *Martin v. Sysco Corp.*, 325 F.R.D 343, 354 (E.D. Cal. 2018).

## IV. MS. MARTINELLI'S LACK OF CREDIBILITY RENDERS HER AN INADEQUATE CLASS REPRESENTATIVE

The Court should decertify the classes because Ms. Martinelli's lack of credibility renders her unable to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4) (adequacy). The "honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010). A plaintiff's lack of credibility renders him an inadequate class representative when it "jeopardize[s] the interests of absent class members" and goes to "issues directly relevant to the litigation." *Id*.

Ms. Martinelli's discredited testimony about her Benecol purchases calls into question her veracity on key issues in this case. Whether Ms. Martinelli actually purchased Benecol goes to nearly every element of her claims, including standing, reliance, and economic injury.[2] If the jury

[2] *See, e.g.*, *Valtierra v. Wells Fargo Bank, N.A.*, 2011 WL 2078024, at *3 (E.D. Cal. May 25, 2011) ("Showing actual reliance is an element of . . . fraud."); *Beasley v. Lucky Stores, Inc.*, 2020 WL 408971, at *2 (N.D. Cal. Jan. 24, 2020) (parties alleging claims under the CLRA, UCL, and FAL "must demonstrate actual reliance on the allegedly deceptive or misleading statements"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *29 n.6 (N.D. Cal. Aug. 30, 2017) (reliance is an element of negligent misrepresentation); *Kwikset*

cannot believe that Ms. Martinelli relied on the label and purchased Benecol as she alleges she did, her claims will fail along with those of the class. Here, the jury has every reason to believe that Ms. Martinelli is lying on each of these points. The only evidence that Ms. Martinelli ever purchased Benecol is her own, uncorroborated testimony that she bought Benecol for her husband every few weeks for five or six years at Safeway, Raley's, and Walmart. Nothing about this story stands up to scrutiny. Ms. Martinelli's husband has no memory of ever eating Benecol. (O'Connor Decl., Ex. 8, L. Martinelli Decl. ¶ 4.) Safeway's records do not show that Ms. Martinelli ever purchased Benecol—of Ms. Martinelli's more than 2,700 purchases from Safeway since 2008, not one was of Benecol. (Decl. of T. Bell of Safeway ¶¶ 5, 6, Ex. A.) Raley's records similarly show that Ms. Martinelli never purchased Benecol. (Decl. of L. Weis of Raley's ¶ 6, Ex. A.) And Ms. Martinelli could not have purchased Benecol at Walmart because McNeil never shipped Benecol products to any Walmart in California. (Decl. of A. Sentie ¶ 5.)

Ms. Martinelli also cannot credibly testify about exactly ***when*** she purportedly purchased Benecol. The timing of her supposed purchases is critical because McNeil removed the "No Trans Fat" claim from the label in 2011. (O'Connor Decl., Ex. 3, Steele Decl. ¶ 20.) Anyone who started purchasing Benecol after 2011 cannot be a member of the class. And any class members who purchased Benecol both before and after the label change likely cannot show the "No Trans Fat" claim was material to their purchase because they purchased Benecol regardless of the presence or absence of that claim. Here, Ms. Martinelli testified that she purchased Benecol every few weeks for five or six years until 2015 and that the only reason she bought Benecol was because "No Trans Fats" appeared on the label of every tub she bought. (O'Connor Decl., Ex. 1, J. Martinelli Dep. at 126:13-20, 134:9-13, 183:21–185:8, 188:8–11.) This testimony cannot be true because it is undisputed that, for most of that time, the "No Trans Fats" claim was not on the Benecol label. What's more, Ms. Martinelli recently appears to have changed her story: her

---

*Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (plaintiffs asserting UCL and FAL claims must show "economic injury" and that defendant's false advertising caused the injury); *Hale v. Sharp Healthcare,* 183 Cal. App. 4th 1373, 1386 (2010) ("plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm"); *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (to prove a claim for breach of express warranty, the representation must form a "basis of the bargain").

responses to McNeil's written discovery indicate she now cannot remember (1) whether she ever bought Benecol from 2012 to 2015 or (2) whether "No Trans Fat" appeared on the label then. (O'Connor Decl., Ex. 4, Request For Admission Resp. Nos. 1–24.) Ms. Martinelli represents a class of those who purchased Benecol beginning more than 12 years ago, yet she now claims she cannot remember basic facts about her purported purchases from five years ago—or indeed, whether she ever made those purchases at all.[3]

Lastly, Ms. Martinelli is unable to testify credibly about her reasons for purportedly purchasing Benecol to be able to establish the reliance and materiality elements of her legal claims. Ms. Martinelli claimed at her deposition that she would not have purchased Benecol had she known it contained some trans fat, and that she "saw the Benecol statement that there were no trans fats and that is why [she] purchased the product." (O'Connor Decl., Ex. 1, J. Martinelli Dep. at 129:9–12; *see also id.* at 120:6–16, 131:10–12, 187:18–25, 188:1–11.) [redacted] Magistrate Judge Barnes, in denying Plaintiff's motion to quash the subpoena for Dr. Foster's deposition (Dkt. 236), found Defendants had made a prima showing his testimony could be relevant when they argued that Ms. Martinelli's health issues and the medical advice she received, particularly relating to cholesterol, bore directly on reliance and materiality. Here, Ms. Martinelli's claimed exclusive reliance on the "no trans fats" statement on the Benecol label is undercut by the evidence that her doctor recommended Benecol to lower her high cholesterol—that is, assuming Ms. Martinelli purchased Benecol at all.

Similar concerns about a putative class representative's ability to testify on key issues have led other courts to deny class certification on adequacy grounds. In *Bowling v. Johnson & Johnson*, the court denied class certification because it found the plaintiff could not have

---

[3] If the Court grants McNeil's motion to amend the class definition, Ms. Martinelli's credibility and memory issues will be even more problematic because the class will then be limited to consumers who purchased Benecol in a narrow window of time between August 14, 2011 and December 31, 2011. (Dkt. 227).

purchased Benecol in the manner she claimed. 2019 WL 1760162, at *6 (denying class certification because plaintiff was "vulnerable to serious attacks on her credibility" since the evidence showed that she could not have purchased Benecol in the manner that she testified). Similarly, in *Bohn v. Pharmamvite*, the plaintiff testified that she purchased the defendants' Vitamin E product at Costco, but as in this case, independent evidence established that Costco did not sell the Vitamin E product during the time that plaintiff claimed. 2013 WL 4517895, at *2 (C.D. Cal. Aug. 7, 2013). The court denied class certification because the "inconsistencies in [p]laintiff's statements regarding her purchase . . . raise serious questions about her standing to assert the UCL and CLRA claims" and "pose[] a more than probable concern that her credibility will be a significant issue at trial, undermining the interest of the classes." *Id.* at *3.[4]

As in those cases, Ms. Martinelli's lack of credibility on core issues in this case renders her an inadequate class representative. The claims of the class should not stand or fall based on the questionable veracity of this named plaintiff—precisely the risk the class would face if Ms. Martinelli were allowed to continue as its representative.

## V. MRS. MARTINELLI DID NOT PURCHASE BENECOL AND HER CLAIMS ARE THEREFORE ATYPICAL

The class should also be decertified because Ms. Martinelli's claims are not "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3) (typicality); *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1076 (N.D. Cal. 2019) (granting decertification where class representative no longer satisfied the typicality requirement). Ms. Martinelli's claims are atypical of the class's claims for at least three reasons.

---

[4] *See also Jovel v. Boiron Inc.*, 2014 WL 1027874, at *4 (C.D. Cal. Feb. 27, 2014) (denying class certification because plaintiff could not credibly testify that he relied on a product label that was critical to his claims under the UCL and CLRA); *Ryan v. Jersey Mike's Franchise Sys.*, 2014 WL 1292930, at *8 (S.D. Cal. Mar. 28, 2014) ("Plaintiff's inconsistency on critical facts [between her deposition testimony and arguments in her response brief] raises serious concerns about his . . . ability to adequately represent the class."); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150 (S.D.N.Y. 2010) ("[T]he Court worries that the credibility of [the named representative] will become the focus of cross-examination at trial, impeding her ability to effectively represent the class.").

***First***, as discussed, Ms. Martinelli is subject to "unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508. The Ninth Circuit has held that a named plaintiff's claims are atypical, and a court should not certify a class, if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* ("[Plaintiff's] unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class."). Here, Ms. Martinelli will be preoccupied at trial with attempting to persuade the jury that she did purchase Benecol, when nearly every piece of evidence demonstrates she did not. *See Bowling*, 2019 WL 1760162, at *6–7 (finding that the unrebutted evidence that plaintiff "could not have purchased Benecol Light in the manner in which she testified" raised unique defenses "meritorious enough to require the plaintiff to devote considerable time to rebut them"). Ms. Martinelli will be forced to reconcile overwhelming contrary evidence, including how none of her more than 2,700 purchases from Safeway over many years was of Benecol, and how her Raley's purchase records similarly show no Benecol purchases. She will have to explain how she could have purchased Benecol at her neighborhood Walmart, even though no Walmart in California ever sold Benecol, and why her husband does not remember ever eating Benecol, even though Ms. Martinelli purportedly bought it for him for years and, according to her, he enjoyed its taste. [redacted] Ms. Martinelli will also have to explain her insistence that she bought Benecol because of the "No Trans Fat" claim on the label, when that statement was not on the label for most of the time when she was allegedly buying Benecol—which itself strongly suggests she never laid eyes on the product. In short, there is a real danger that absent class members' claims will fail because defenses unique to Ms. Martinelli will become the focus of the litigation. The class should be decertified on this basis alone.

***Second,*** because the preponderance of the evidence shows she never bought Benecol, Ms. Martinelli is not "part of the class" she seeks to represent and did not "suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). The typicality

requirement "assure[s] that the interest of the named representative aligns with the interests of the class," *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011), and depends on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508. Here, however, the evidence overwhelmingly suggests that Ms. Martinelli never purchased Benecol and therefore never suffered any injury, let alone the same injury as the class. *Martin*, 325 F.R.D at 354 (denying certification of certain class claims where plaintiff failed to prove necessary facts were "more likely than not" in light of conflicting evidence). In *Stearns v. Ticketmaster*, for example, the named plaintiff never saw or signed up for the allegedly fraudulent online ticket sale program at issue, and the Ninth Circuit held the plaintiff's consumer fraud claims were therefore "far from typical of the class." 655 F.3d at 1019; *see also Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 227 (N.D. Cal. 2015) (claims of proposed class representatives who did not submit evidence that they purchased the allegedly deceptively labeled fruit drink or saw the product labels before purchasing it were not typical of the class). In fact, courts have found typicality to be lacking even where a plaintiff purchased a product that was similar, but different from, the product purchased by the rest of the class.[5] Here, the preponderance of the evidence shows that Ms. Martinelli did not purchase Benecol at all. The only evidence that she actually purchased Benecol is her own, uncorroborated testimony, which is almost entirely contradicted by the documentary evidence showing she could not have purchased Benecol in the manner she claims. In short, the weight of the evidence shows that Ms. Martinelli did not suffer any injury, let alone the same injury as the class, and her claims are therefore atypical of their claims.

---

[5] *Weiner v. Dannon Co., Inc.*, 255 F.R.D. 658, 666 (C.D. Cal. Jan. 30, 2009) (plaintiff's claim was atypical because the plaintiff "has never purchased DanActive"); *Major v. Ocean Spray Cranberries, Inc.*, 2013 WL 2558125, at *3–4 (N.D. Cal. June 10, 2013) (plaintiff's claim atypical because she sought to represent classes that were "so broad . . . that they encompass products that she herself did not purchase"); *Herron v. Best Buy Stores, LP*, 2016 WL 1572909, at *7 (E.D. Cal. Apr. 19, 2016) (plaintiff's claim was not typical because the product purchased by plaintiff did not contain the packaging, including the claim at issue, than the product purchased by other class members); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 621–22 (S.D. Cal. 2007) (same).

***Third***, Ms. Martinelli does not have standing to pursue her claims against Defendants. If "none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019). Plaintiffs in a consumer fraud case may demonstrate standing with evidence showing they "paid a price premium for a mislabeled product or [] would not have purchased the product had he or she known about the misbranding." *Nguyen v. Medora Holdings, LLC*, 2015 WL 4932836, *5 (N.D. Cal. Aug. 18, 2015) (collecting cases, citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)). Here, however, the preponderance of the evidence shows that Ms. Martinelli never purchased Benecol, never lost any money, and never suffered any kind of injury-in-fact. Ms. Martinelli therefore cannot demonstrate a requisite case or controversy and cannot seek relief on behalf of herself or any other member of the class. "[W]hen a class is certified and the class representatives are subsequently found to lack standing"—as is the case here—"the class should be decertified and the case dismissed." *NEI Contracting & Eng'g, Inc.*, 926 F.3d at 532.

## VI. CONCLUSION

For the foregoing reasons, the Court should decertify the Multi-State Express Warranty Class and the California Class, which were certified in the Court's March 29, 2019 Memorandum and Order, Dkt. 216.

Dated: October 15, 2020

**O'MELVENY & MYERS LLP**

By: /s/ Carlos M. Lazatin
Carlos M. Lazatin

Carlos M. Lazatin (State Bar No. 229650)
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: clazatin@omm.com

Richard B. Goetz (State Bar No. 115666)
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: rgoetz@omm.com

Hannah Chanoine (*Pro Hac Vice*)
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: hchanoine@omm.com

*Attorneys for Defendants*