1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
2
Neal J. Deckant (State Bar No. 322946)
Brittany S. Scott (State Bar No. 327132)
3
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
4
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
5
E-Mail: ltfisher@bursor.com
        ndeckant@bursor.com
6
        bscott@bursor.com

7
**BURSOR & FISHER, P.A.**
Joseph I. Marchese (admitted *pro hac vice*)
8
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue, Third Floor
9
New York, NY  10019
Telephone: (646) 837-7150
10
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
11
        fklorczyk@bursor.com

12
**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
13
701 Brickell Avenue, Suite 1420
Miami, FL 331331
14
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
15
E-Mail: scott@bursor.com

16
*Class Counsel*

17
**UNITED STATES DISTRICT COURT**

18
**EASTERN DISTRICT OF CALIFORNIA**

19

20
JOANN MARTINELLI, individually and on
behalf of all others similarly situated,

21
                    Plaintiff,

22
        v.

23
JOHNSON & JOHNSON and McNEIL
24
NUTRITIONALS, LLC,

25
                    Defendants.

26

27

28

Case No.: 2:15-cv-01733-MCE-DB

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Date:  September 23, 2021
Time:  2:00 p.m.
Courtroom 7, 14th Floor
Hon. Morrison C. England, Jr.

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 23, 2021 at 2:00 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at the Robert T. Matsui United States Courthouse, 501 I Street. Sacramento, CA 95814, Courtroom 7, 14th Floor, in the courtroom of the Honorable Morrison C. England, Jr., Plaintiff JoAnn Martinelli will and hereby does move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Stipulation of Class Action Settlement, (ii) provisionally certify the Settlement Class[1] for the purposes of preliminary approval, designate her as the Class Representative, and appoint Bursor & Fisher, P.A. as counsel for the Settlement Class, (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time, and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met. This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declaration of Neal J. Deckant, the accompanying Declaration of JoAnn Martinelli, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated: August 10, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  */s/ Neal J. Deckant*
       Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
Brittany S. Scott (State Bar No. 327132)

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Stipulation of Settlement, filed concurrently herewith. *See* Deckant Decl. Ex. 1.

1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
            ndeckant@bursor.com
            bscott@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (admitted *pro hac vice*)
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue, Third Floor
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
            fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 331331
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

    I.    Plaintiff's Allegations............................................................... 2

    II.   The Litigation History ............................................................. 3

    III.  Settlement Negotiations .......................................................... 4

TERMS OF THE SETTLEMENT AGREEMENT ........................................... 4

    I.    Class Definition ....................................................................... 5

    II.   Monetary Relief ...................................................................... 5

    III.  Release..................................................................................... 5

    IV.  Notice And Administration Expenses ..................................... 6

    V.   Incentive Awards .................................................................... 6

    VI.  Attorneys' Fees And Expenses ............................................... 6

LEGAL STANDARD ......................................................................................... 6

ARGUMENT........................................................................................................ 8

    I.    The Settlement Class Meets All Requirements Of Fed. R. Civ. P. 23(a) And 23(b)(3) ......................................................................... 8

           A.   Fed. R. Civ. P. 23(a)(1) – Numerosity ........................... 8

           B.   Fed. R. Civ. P. 23(a)(2) – Commonality ......................... 8

           C.   Fed. R. Civ. P. 23(a)(3) – Typicality............................... 9

           D.   Fed. R. Civ. P. 23(a)(4) – Adequacy ............................... 9

           E.   Fed. R. Civ. P. 23(b)(3) – Predominance And Superiority ............. 11

    II.   The Court Should Preliminarily Approve The Settlement Because It Is Fair, Adequate, And Reasonable ........................................................ 12

           A.   The Settlement Class Meets All Of The *Hanlon* Factors................. 13

                1.   *Hanlon* Factor 1 – The Strength Of Plaintiff's Case............. 13

                2.   *Hanlon* Factor 2 – The Risk, Expense, Complexity, And Likely Duration Of Further Litigation .................................. 15

                3.   *Hanlon* Factor 3 – The Risk Of Maintaining Class Action Status Throughout The Trial ........................................ 16

                4.   *Hanlon* Factor 4 – The Amount Offered In Settlement ........ 16

5.   *Hanlon* Factor 5 – The Extent Of Discovery Completed And The Stage Of The Proceedings ................................................ 17

6.   *Hanlon* Factor 6 – The Experience And Views Of Counsel . 17

B.   The Settlement Class Meets All Of The New Rule 23(e)(2) Factors ....................................................................................... 18

1.   Rule 23(e)(2)(A) – The Class Representative And Class Counsel Have Adequately Represented The Class ............... 18

2.   Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length ................................................................................. 18

3.   Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate .............................................................................. 18

4.   Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other ....................................... 19

III.   The Proposed Notice Plan Should Be Approved ....................................... 20

CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997) ........................................................................ 13

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
　2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ................................. 16

*Deluca v. Farmers Ins. Exchange*,
　2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ................................ 20

*Fisher v. Osmose Utilities Services, Inc.*,
　2021 WL 1259731 (E.D. Cal. Apr. 5, 2021) ........................ 15, 17, 18

*Fitzhenry-Russell v. Coca-Cola Co.*,
　2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) ................................. 16

*G. F. v. Contra Costa County*,
　2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................. 20

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
　2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................... 15, 19

*Gray v. Golden Gate Nat. Recreational Area*,
　279 F.R.D. 501 (N.D. Cal. 2011) .................................................... 11

*Greer v. Dick's Sporting Goods, Inc.*,
　2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ................................ 15

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ................................................. passim

*Hawkins v. Kroger Co.*,
　337 F.R.D. 518 (S.D. Cal. 2020) ............................................... 13, 14

*Hefler v. Wells Fargo & Co.*,
　2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)............................ 19, 21

*Hilsley v. Ocean Spray Cranberries, Inc.*,
　2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ............................. passim

*In re Anthem, Inc. Data Beach Litig.*,
　327 F.R.D. 299 (N.D. Cal. 2018) .................................................... 17

*In re Apple Computer Sec. Litig.*,
　1991 WL 238298 (N.D. Cal. Sept. 6, 1991).................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................ 20

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................... 13

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ............................................. 21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................... 18, 19

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................. 17

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................... 19

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................... 9

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .......................................................... 7, 8, 9

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................... 8

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
   2020 WL 4212811 (N.D. Cal. July 22, 2020) .......................................... 10, 13

*Kramer v. XPO Logistics, Inc.*,
   2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) ................................................ 20

*Martinelli v. Johnson & Johnson*,
   2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ........................................ passim

*Millan v. Cascade Water Services, Inc.*,
   310 F.R.D. 593 (E.D. Cal. 2015) ...................................................... 8, 9, 10

*Murillo v. Pacific Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010) .......................................................... 8, 13

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .......................................................... 8, 9, 15

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............................................. 23

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ............................................................................................................ 9

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) .......................................................................................... 1, 3

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................................ 16, 19

*Shames v. Hertz Corp.*,
  2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)....................................................................... 15

*Smith v. Kaiser Foundation Hospitals*,
  2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) .................................................................... 15

*Vega v. Weatherford U.S., Limited Partnership*,
  2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ................................................................. 15, 18

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................................................................... 11

*Wal–Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................................................................... 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) .......................................................................................... 13

**STATUTES**

Cal. Civ. Code § 1750 ........................................................................................................ 4

California Business and Professions Code § 17200 ............................................................. 4

California Business and Professions Code § 17500 ............................................................. 4

**RULES**

Fed. R. Civ. P. 23 ..................................................................................................... passim

**OTHER AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004)................................................................. 8, 22

Newberg On Class Actions (1992) ................................................................................... 8, 11

Plaintiff JoAnn Martinelli ("Plaintiff"), by and through Class Counsel, respectfully submits this memorandum in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.  The Settlement Agreement (hereafter, "Settlement") is attached as Exhibit 1 to the Declaration of Neal J. Deckant (the "Deckant Decl."), filed herewith.

## **INTRODUCTION**

In this putative class action, Plaintiff alleges that Defendants Johnson & Johnson and McNeil Nutritionals, LLC (collectively, "Defendants") misled consumers by labeling Benecol Regular Spreads and Benecol Light Spreads (collectively, the "Benecol Spreads") as containing "No Trans Fats" and "No Trans Fatty Acids," when in fact the Benecol Spreads do contain trans fat through the use of partially hydrogenated oils.  *See* First Amended Complaint ("FAC"), ECF No. 9, at ¶ 3; *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) ("Benecol's label prominently states that Benecol contains 'No Trans Fat.'  That statement is not true.").

For six years, Plaintiff and Class Counsel have vigorously litigated this action.  Plaintiff and Class Counsel have conducted extensive discovery, including Plaintiff sitting for a full-day deposition and Class Counsel taking depositions of a number of Defendants' key employees. Deckant Decl. ¶ 2.  And Plaintiff and Class Counsel won a hotly contested class certification motion, in which the Court certified a "Multi-State Express Warranty Class" of consumers in ten states and a California only class.  *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *10 (E.D. Cal. Mar. 29, 2019) (England, J.).  Meanwhile, Defendants have maintained a strong defense every step of the way, including filing motions to modify the class definition (ECF No. 227) and to decertify the class altogether (ECF No. 247).

With summary judgment and trial looming, Plaintiff and Class Counsel decided to attempt to settle this action with Defendants.  Deckant Decl. ¶¶ 3-4.  And, after three full rounds of settlement negotiations facilitated by a private mediators, the parties reached a settlement that will provide Class Members who submit a valid claim a full refund or a substantially full refund. *Id*.  Specifically, the Class Action Settlement Agreement (the "Settlement") provides for the establishment of a $2,000,000 Claim Fund from which consumers in the U.S. can obtain full refund for as many tubs of Benecol Spreads for which they have Proofs of Purchase, or, an

amount of $5 (*i.e.*, roughly the price for Benecol Spreads at retail) per tub of Benecol Spreads without Proof of Purchase, up to four tubs (*i.e.*, up to $20 per claimant without proof of purchase).  In short, Plaintiff and Class Counsel have made extensive relief available to the Settlement Class, which is by all measures an excellent result.

The Court should have no hesitation finding that the Settlement falls within the range of possible approval.  It is the product of extended arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Class Members are treated fairly under the terms of the Settlement.  Plaintiff, by and through her counsel, has conducted an extensive investigation into the facts and law relating to this matter as set forth below and in the accompanying Deckant Declaration.  Plaintiff and her counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed information, documents, and materials that they deemed necessary and appropriate to enable them to enter into the Settlement on a fully informed basis.  It is an outstanding result for Settlement Class Members.

Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A. ("Bursor & Fisher") as Class Counsel; (4) appoint JoAnn Martinelli as the Class Representative for the Settlement Class; and (5) approve the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.    PLAINTIFF'S ALLEGATIONS

As the Ninth Circuit recognized, the labeling of Benecol Spreads "prominently states that Benecol contains 'No Trans Fat.'  That statement is not true." *Reid*, 780 F.3d at 967.  Rather, Plaintiff alleges that Benecol Spreads "contain partially hydrogenated oils, which always contain trans fat." FAC ¶ 12.  Based on these representations, Plaintiff alleges that Defendants charged a price premium for the Benecol Spreads. *Martinelli*, 2019 WL 1429653, at *3 ("[Plaintiff's experts] concluded that the measure of damages for the class rests on the fact that a certain percentage of the price consumers paid for Benecol constituted a 20.8% price premium[,] about

$1.00[,] solely attributable to the No Trans Fat claim.") (internal quotations omitted).

Accordingly, Plaintiff alleges that not only was she deceived by Defendants' misrepresentations, she also suffered financial injury as a result of these misrepresentations.  FAC ¶¶ 3, 5, 7.

Defendants, for their part, contest Plaintiff's allegations.  Defendants argue that the labeling of Benecol Spreads is not misleading because, among other reasons, the labels clearly identified that the product contained partially hydrogenated oils.  Defendants dispute that there is any price premium attributable to the alleged misrepresentation.

## II.   THE LITIGATION HISTORY

On August 14, 2015, Plaintiff commenced a putative Rule 23 class action asserting claims for breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*, violation of California's False Advertising Law ("FAL"), California Business and Professions Code § 17500, *et seq.*, negligent misrepresentation, and fraud.  ECF No. 1.

On October 16, 2015, Plaintiff filed the FAC, asserting the same claims.  Defendants answered the FAC on October 30, 2015, denying liability.  ECF No. 11.  The parties then engaged in extensive discovery, including a number of fact and expert depositions, and exchanged multiple rounds of written discovery, resulting in the production of tens of thousands of pages of documents.

On April 28, 2018, Plaintiff filed a Motion for Class Certification.  ECF Nos. 171, 182. Defendants opposed Plaintiff's Motion.  ECF Nos. 175.   The parties also filed motions to exclude expert testimony and other evidence.  ECF Nos. 176, 183, 184, 193, 195, 204.  On March 29, 2019, the Court granted Plaintiff's motion for class certification and certified two classes: (1) the "Multi-State Express Warranty Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California, and all Benecol purchasers between August 24, 2011 and December 31, 2011 in Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia; and (2) the "California Class," consisting of all

Benecol purchasers between January 1, 2008 and December 31, 2011 in California.  ECF No. 216.

On March 20, 2020, Plaintiff filed a Motion for Entry of the Proposed Notice Plan.  ECF No. 221, 229.  Defendants opposed this motion.  ECF No. 226.  Defendants also filed a Motion to Modify the Class Definition on April 2, 2020, which Plaintiff opposed.  ECF Nos. 227, 230, 232.  These motions are currently pending.  The Parties also continued to engage in merits discovery.

On October 15, 2020, Defendants filed a Motion to Decertify the Classes.  ECF No. 247.  Plaintiff has not yet filed an opposition to this motion.

On October 27, 2020, the Parties filed a Stipulation and Proposed Order requesting that the Court stay the Action so that the Parties could engage in settlement negotiations.  ECF No. 254.  On November 6, 2020, the Court granted the stipulation.  ECF No. 255.

## III.   SETTLEMENT NEGOTIATIONS

Substantial, arm's-length settlement negotiations have occurred between the parties, spanning several years.  The parties engaged in three full rounds of mediation before the Settlement was reached.  Deckant Decl. ¶ 3-4.

In 2017, the parties participated in their first mediation with Judge Garrett E. Brown, Jr. (Ret.) at JAMS.  That mediation did not result in a resolution.  *Id.*  Then, On July 6, 2018, the parties engaged in their second mediation with Judge Wayne R. Andersen (Ret.) at JAMS.  This mediation also failed to result in a resolution.  *Id.*

On November 16, 2020, the parties attended a virtual mediation with Judge Wayne R. Andersen (Ret.) at JAMS.  *Id.*  Although the parties did not reach a settlement that day, the parties continued settlement negotiations for several months thereafter with the assistance of Judge Andersen.  *Id.*  The parties' post-mediation negotiations with Judge Andersen resulted in the present Settlement.  *Id.*

## <u>TERMS OF THE SETTLEMENT AGREEMENT</u>

The key terms of the Class Action Settlement Agreement ("Settlement"), attached as Exhibit 1 to the Deckant Declaration, are briefly summarized as follows.

I.      **CLASS DEFINITION**

The "Settlement Class" or "Settlement Class Members" is defined as "[a]ll individuals who purchased Benecol Spreads in the United States from January 1, 2008 through December 31, 2011 for personal use." Settlement § 1.23.[2]

II.     **MONETARY RELIEF**

Defendants have agreed to "make available a total Claim Fund of up to two million dollars ($2,000,000) for payment of Valid Claims, attorneys' fees and expenses, administration costs, and the Incentive Award." Settlement § 2.1. From the Claim Fund, Settlement Class Members with a Proof of Purchase are entitled to a full refund "for as many units of the Benecol Spreads as he or she has a Proof of Purchase." *Id.* § 2.1.2.1. And Settlement Class Members without a Proof of Purchase will be entitled to $5 per unit of Benecol Spreads, with a cap of four units per Settlement Class Member. *Id.* § 2.1.2.2. The Claim Fund will be funded on a claims-made basis, that is, Defendants commit to funding the Claim Fund in an amount sufficient to pay the value of all valid claims plus attorneys' fees and expenses, claim administration costs, and any incentive award, up to a maximum total of $2 million. "[I]f the total value of all Valid Claims exceeds the $2 million Claim Fund after reduction of the Claim Fund by the payment of attorneys' fees and expenses, administration costs, and the Incentive Award," payments will be subject to pro rata reduction. *Id.* § 2.1.2.3.

III.    **RELEASE**

In exchange for the relief described above, Defendants and each of their related and affiliated entities as well as all "Released Persons" as defined in Settlement § 1.21 will receive a

---

[2] The Settlement Class does not include "Defendants and all of Defendants' past and present respective parents, subsidiaries, divisions, affiliates, persons and entities directly or indirectly under its or their control in the past or in the present, Defendants' respective assignors, predecessors, successors, and assigns, and all past or present partners, shareholders, managers, members, directors, officers, employees, agents, attorneys, insurers, accountants, and representatives of any and all of the foregoing." Settlement § 1.21. The Settlement Class also does not include any Settlement Class Members who opt to exclude themselves from the Settlement. *Id.* ¶ 1.23.

1 full release of all claims arising out of or related to the purchase of the Benecol Spreads.  *See*

2 Settlement §§ 6.1-6.5 for full release language.

3 **IV.    NOTICE AND ADMINISTRATION EXPENSES**

4        All costs for notice to the Settlement Class as required in §§ 4.1-4.4 of the Settlement,

5 Costs of Settlement Administration under §§ 4.5-4.6 of the Settlement, shall be paid by

6 Defendants out of the Claim Fund.  Settlement § 2.2.

7 **V.    INCENTIVE AWARDS**

8        In recognition for her efforts on behalf of the Settlement Class, Defendants have agreed

9 that Plaintiff Martinelli may receive, subject to Court approval, an incentive award of $7,500

10 from the Claim Fund, as appropriate compensation for her time and effort serving as a Class

11 Representative and a party to the Litigation.  Settlement § 3.2.

12 **VI.    ATTORNEYS' FEES AND EXPENSES**

13        Defendants have agreed to pay, subject to Court approval, attorneys' fees in the amount

14 of no more than one-third of the total value of the Settlement, inclusive of costs and expenses.

15 Settlement § 3.1.  The attorneys' fees and expenses, if approved, shall be paid out of the Claim

16 Fund.  *Id.* § 1.3.

17                    <u>**LEGAL STANDARD**</u>

18        Approval of class action settlements involves a two-step process.  First, the Court must

19 make a preliminary determination whether the proposed settlement appears to be fair and is

20 "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th

21 Cir. 2008) ("*In re Syncor*").  If so, notice can be sent to class members and the Court can

22 schedule a final approval hearing where a more in-depth review of the settlement terms will take

23 place.  *See* MANUAL FOR COMPLEX LITIGATION § 21.312 at 293-96 (4th ed. 2004).

24        At the preliminary approval stage, "[t]he court is really only concerned with whether the

25 proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as

26 unduly preferential treatment of class representatives or segments of the class, or excessive

27 compensation of attorneys."  *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal.

28 2010) (internal quotations omitted).  Notice of a settlement should be disseminated where "the

proposed settlement appears to be the product of serious, informed, non collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting NEWBERG ON CLASS ACTIONS § 11.25 (1992)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (finding that "[t]he question currently before the court is whether this settlement should be preliminarily approved" for the purposes of notifying the putative class members of the proposed settlement and proceeding with a fairness hearing, which requires the court to consider whether the settlement appears to be fair and "*falls within the range of possible approval*") (emphasis added).

Nevertheless, a review of the standards applied in determining whether a settlement should be given final approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions. *See In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983)); *see also Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.").  While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate. *See In re Syncor*, 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to

compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

## ARGUMENT

## I. THE SETTLEMENT CLASS MEETS ALL REQUIREMENTS OF FED. R. CIV. P. 23(A) AND 23(B)(3)

"Before the court may evaluate a class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the settlement class must meet the requirements of Rules 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Millan*, 310 F.R.D. at 603. "Once subsection (a) is satisfied, the putative class must then fulfill the requirements of Rule 23(b)(3)." *Id.* The Settlement Class meets all of these requirements.

### A. Fed. R. Civ. P. 23(a)(1) – Numerosity

A proposed class must be so numerous that joinder of all members individually is impractical. Fed. R. Civ. P. 23(a)(1). "[G]enerally, forty or more members will satisfy the numerosity requirement." *Millan*, 310 F.R.D. at 603. Here, the Court previously found the numerosity requirement was met where "between 2008 and 2011, Defendants sold 1,854,859 units of Benecol in the Multi-State Express Warranty Class states and 806,630 units in California." *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *6 (E.D. Cal. Mar. 29, 2019) (England, J.). However, the Settlement Class has been expanded to include all purchasers of Benecol Spreads across the United States between 2008 and 2011, which will naturally include more consumers. *See* Settlement § 1.23. Accordingly, numerosity is easily met for the purposes of preliminary approval.

### B. Fed. R. Civ. P. 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). "This

requirement has been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (internal quotations omitted); *Martinelli*, 2019 WL 1429653, at *6 ("This requirement is construed permissively"). "Indeed, "for purposes of Rule 23(a)(2), even a single common question will do." *In re Yahoo*, 2020 WL 4212811, at *2 (internal quotations omitted); *Millan*, 310 F.R.D at 603 ("All questions of fact and law need not be common to satisfy the rule.").

"Here, every class member has the same basic claim—they purchased Benecol because of statements on the product's packaging and those statements were false." *Martinelli*, 2019 WL 1429653, at *6. "Resolution of this common claim depends on a critical common question of fact: whether Defendants' statements were in fact false." *Id.* Accordingly, "answering this common question of fact will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (internal quotations omitted). Thus, commonality is satisfied.

### C. Fed. R. Civ. P. 23(a)(3) – Typicality

Fed. R. Civ. P.23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "Typicality does not require the claims to be identical." *Martinelli*, 2019 WL 1429653, at *6. "Rather, the Ninth Circuit has found typicality is met if the requisite claims share a common issue of law or fact [] and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Id.* (internal quotations omitted); *see also Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 509 (N.D. Cal. 2011) ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."). Here, the Court previously found Plaintiff's claims were "typical of the proposed class" because she allegedly relied in part on "the 'no trans fat' claim in making her purchasing decision." *Martinelli*, 2019 WL 1429653, at *6. Typicality is therefore met.

### D. Fed. R. Civ. P. 23(a)(4) – Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has

"identified two issues for determining the adequacy of representation: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will 'prosecute the action vigorously on behalf of the class.'" *Martinelli*, 2019 WL 1429653, at *6 (quoting *Hanlon*, 150 F.3d at 1020).  Adequacy is presumed where a fair settlement was negotiated at arm's-length.  NEWBERG ON CLASS ACTIONS §11.28, at 11-59.

As to the first inquiry, the named Plaintiff and Class Counsel have no conflicts of interests with the Class.  *See* Declaration of JoAnn Martinelli ("Martinelli Decl."), at ¶ 7.  Rather, the named Plaintiff, like each absent Class Member, has a strong interest in proving Defendants' common course of conduct, and obtaining redress.  *Id.* ¶¶ 2, 7.

As to the second inquiry, Plaintiff and Class Counsel have vigorously and competently pursued the Class Members' claims.  Class Counsel has litigated this action for six years, undertaking significant discovery and winning a contested motion for class certification, and they subsequently opposed Defendants' motion to clarify and modify the class definition.  Deckant Decl. ¶ 10; *see also Martinelli*, 2019 WL 1429653, at *7 ("[T]he Court finds that class counsel will fairly and adequately protect the interests of the classes.").  Class Counsel also negotiated this settlement at arm's-length with the assistance of a certified mediator after three full rounds of mediation.  Deckant Decl. ¶¶ 3-4; *see also Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (the use of a mediator "tends to support the conclusion that the settlement process was not collusive").  The Settlement provides potential full refunds to Class Members – the exact relief that Plaintiff sought on behalf of herself and the Class Members.  Further, Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are highly experienced in class action litigation.  *See* Deckant Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.).

Likewise, Plaintiff Martinelli has fought for the rights of the Settlement Class at every step of the process, including constant communication with Class Counsel, overseeing the drafting of certain documents, and sitting for a full-day deposition.  Martinelli Decl. ¶ 4; *see also Martinelli*, 2019 WL 1429653, at *7 (finding Plaintiff was an adequate representative of the class

where "Plaintiff's claims are typical of the proposed class and thus can represent the interests of the class").  Plaintiff was prepared to testify at trial.  Martinelli Decl. ¶¶ 1, 7.

Thus, in pursing this litigation, Class Counsel, as well as the named Plaintiff, have advanced and will continue to advance and fully protect the common interests of all members of the Settlement Class.  Accordingly, Rule 23(a)(4) is satisfied.  *Martinelli*, 2019 WL 1429653, at *7.

### E.  Fed. R. Civ. P. 23(b)(3) – Predominance And Superiority

Fed. R. Civ. P. 23(b)(3) requires Plaintiff to prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022.

Beginning with predominance, predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."  *Martinelli*, 2019 WL 1429653, at *7.  As both the Supreme Court and Ninth Circuit have explained, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (same).

Here, predominance is met because "common questions … present a significant aspect of the case and [] can be resolved for all members of the class in a single adjudication."  *Murillo*, 266 F.R.D. at 476.  These common questions include, but are not limited to: (1) whether Defendants' representations regarding the Benecol Spreads were false and misleading or

reasonably likely to deceive consumers; (2) whether the Benecol Spreads are mislabeled; (3) whether Defendants breached an express or implied warranty; (5) whether Defendants defrauded Plaintiff and the Settlement Class; and (6) whether Plaintiff and the Settlement Class have been injured by the wrongs complained of, and if so, whether Plaintiff and the Settlement Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.  *See In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d at 563 (finding predominance met where "the class claims turn on the automakers' common course of conduct—their fuel economy statements"); *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 541 (S.D. Cal. 2020) (predominance met where "common and cohesive issue is whether Kroger wrongfully labeled its breadcrumbs as containing '0g Trans Fat'").

Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  "In cases where Plaintiff [is] unable to proceed individually because the disparity between litigation costs and the recovery sought is too high, the class-action device may be an effective means to pool claims which would be uneconomical to litigate individually."  *In re Yahoo*, 2020 WL 4212811, at *7.

Here, "the average price of Benecol was $4.80 and without a class action, most class members will not expend the time or the resources to seek recovery."  *Martinelli*, 2019 WL 1429653, at *8.  "[I]t would be unfeasible for many of the purported class members to obtain relief on an individual basis."  *Id.*; *see also Hawkins*, 337 F.R.D. at 543 ("It is more efficient to resolve the common questions regarding accuracy and materiality of the '0g Trans Fat' label in a single proceeding rather than to have individual courts separately hear these cases.").  Accordingly, superiority is met.

## II.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE

Fed. R. Civ. P. 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this determination, the Ninth Circuit has instructed district courts to balance several

factors: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon*, 150 F.3d at 1026 (the "*Hanlon* Factors").[3]

"These factors substantively track those provided in 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

  (i)   the costs, risks, and delay of trial and appeal;

  (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other."

*Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020).  The new Rule 23(e) factors are "not intended to 'displace' any factors developer over the years in the circuit courts."  *Smith v. Kaiser Foundation Hospitals*, 2020 WL 5064282, at *9 (S.D. Cal. Aug. 26, 2020) (citing Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment).

Here, the Settlement Class meets both the *Hanlon* Factors and the new Rule 23(e)(2) factors.

## A.  The Settlement Class Meets All Of The *Hanlon* Factors

### 1.  Hanlon Factor 1 – The Strength Of Plaintiff's Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the

---

[3] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

district court's determination is nothing more than an amalgam of delicate balancing, gross

approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations

omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator

arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

*Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010)

Here, although Plaintiff and Class Counsel had confidence in their claims, a favorable

outcome was not assured.  Deckant Decl. ¶¶ 9-10.  Defendants have filed motions to decertify

the litigation class (ECF No. 247), or to modify the class definition and exclude numerous

consumers from the certified class (ECF No. 227).  *Id.* ¶ 10.  While Plaintiff and Class Counsel

were confident they would defeat these motions, "the prospect of decertification [or

modification] … supports preliminary approval of the Settlement." *Vega v. Weatherford U.S.,

Limited Partnership*, 2016 WL 7116731, at *8 (E.D. Cal. Dec. 7, 2016); *see also Fisher v.

Osmose Utilities Services, Inc.*, 2021 WL 1259731, at *4 (E.D. Cal. Apr. 5, 2021) (preliminary

approval warranted where "[t]here was also a risk of decertification").

Beyond this, Plaintiff and Class Counsel recognize that they would face risks on a motion

for summary judgment and at trial.  Deckant Decl. ¶ 10; *see also Shames v. Hertz Corp.*, 2012

WL 5392159, at *6 (S.D. Cal. Nov. 5, 2012) ("Plaintiffs faced significant uncertainty and risk of

nonrecovery at trial, making a pre-trial settlement a reasonable tactical choice.").  Defendants

vigorously deny Plaintiff's allegations and assert that neither Plaintiff nor the Class suffered any

harm or damages.  In addition, Defendants would no doubt present a vigorous defense at trial,

and there is no assurance that the Class would prevail – or even if they did, that they would not

be able to obtain an award of damages significantly more than achieved here absent such risks.

Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an

outstanding opportunity to obtain significant relief at this stage in the litigation.  Deckant Decl. ¶

10.  The Settlement also abrogates the risks that might prevent them from obtaining any relief.

*Id.*; *see also Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal.

Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with

the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff

class.").  Accordingly, this factor is met.

### 2.  Hanlon Factor 2 – The Risk, Expense, Complexity, And Likely Duration Of Further Litigation

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as decertification, having summary judgment granted against Plaintiff, or losing at trial.  Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Curtis-Bauer*, 2008 WL 4667090, at *4 ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Even assuming that Plaintiff was to survive summary judgment and decertification, she would face the risk of establishing liability at trial in light of conflicting expert testimony between their own expert witnesses and Defendants' expert witnesses.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *4 (N.D. Cal. Oct. 3, 2019) (granting final approval where "[t]here would be a battle of the experts regarding consumer understanding and materiality of the representation and the computation of damages, if any").  The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

Moreover, even if Plaintiff prevailed at trial, in light of the possible damage theories that could be presented by both sides, there is a substantial likelihood that Class Members may not be awarded significantly more than is offered to them under this Settlement on an individual basis.  For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for the plaintiff after an extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100 million.  However, weeks later, Judge Ware overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant.  *Id.*  Here, by settling, Plaintiff and the Settlement Class avoid these risks, as well as the delays and risks of the appellate process.  Therefore, this factor also weighs in favor of approving the settlement.

### 3. Hanlon Factor 3 – The Risk Of Maintaining Class Action Status Throughout The Trial

In addition to the risks of continuing the litigation, Plaintiff would also face risks in decertification and maintaining class status through trial. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted); *Fisher*, 2021 WL 1259731, at *4 (preliminary approval warranted where "[t]here was also a risk of decertification"). Defendants have also moved to modify the class definition, which, if granted, would narrow the universe of consumers eligible for benefits as compared to the current Settlement. From their prior experience, Class Counsel anticipates that Defendants would likely appeal any additional certification decision pursuant to Rule 23(f), and/or move for decertification at a later date. "These potential difficulties with maintaining class certification in this case counsel in favor of approving the settlement." *In re Anthem, Inc. Data Beach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018).

### 4. Hanlon Factor 4 – The Amount Offered In Settlement

By any measure, the Settlement here offers meaningful relief for the Settlement Class. The settlement allows purchasers of the Benecol Spreads in the *entire* United States to recoup the *full purchase price*[4] of several tubs of the Benecol Spreads. Settlement § 2.1.2. Further, Plaintiff's damages theory at class certification was a price premium of $1.00 based on the "No Trans Fat" claim. *Id.*, at *3; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) ("[D]amages would be limited to a fraction of total sales if Plaintiffs were to prevail at trial. Damages for the nationwide class would be based on the price premium method, which is based on the difference between the value of the Products with the 'No Artificial Flavors' statement and the actual value received.").

---

[4] Specifically, Settlement Class Members with a Proof of Purchase "shall be entitled to a full monetary refund of the amount(s) shown on the Proof of Purchase, for as many units of the Benecol Spreads as he or she has a Proof of Purchase." Settlement § 2.1.2.1. Settlement Class Members without a Proof of Purchase will be entitled to $5 per unit of Benecol Spreads, with a cap of four units per Settlement Class Member. *Id.* § 2.1.2.2.

### 5. Hanlon Factor 5 – The Extent Of Discovery Completed And The Stage Of The Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The Settlement here is the result of six years of litigation. Deckant Decl. ¶ 9. Class Counsel has reviewed thousands of pages of documents, taken numerous depositions of Defendants' key employees, and proffered several expert reports. *Id.* ¶ 2. Further, Class Counsel won a hotly contested class certification motion. *Id.* Only now, with summary judgment and trial looming, Class Counsel elect to mediate this matter with Defendants in an attempt to reach a settlement. *Id.* ¶¶ 3-4. The Settlement is thus the result of fully-informed negotiations, and Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement. Accordingly, this *Hanlon* Factor also weighs in favor of preliminary approval. *Vega*, 2016 WL 7116731, at *9 (factor weighed in favor of settlement where "[g]iven the discovery completed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with a mediator").

### 6. Hanlon Factor 6 – The Experience And Views Of Counsel

"The recommendations of Plaintiff's counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in class action litigation. *See* Deckant Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.). Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation. This factor is therefore also met.

### B.  The Settlement Class Meets All Of The New Rule 23(e)(2) Factors

#### 1.  *Rule 23(e)(2)(A) – The Class Representative And Class Counsel Have Adequately Represented The Class*

"The Ninth Circuit has explained that 'adequacy of representation ... requires that two questions be addressed: (a) do the named Plaintiff and their counsel have any conflicts of interest with other class members and (b) will the named Plaintiff and their counsel prosecute the action vigorously on behalf of the class?'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d at 462). Here, this prong is met for the same reasons as Plaintiff and Class Counsel met the adequacy prong under Fed. R. Civ. P. 23(a)(4).  *See* Argument § I.D, *supra*; *see also Hilsley*, 2020 WL 520616, at *5 ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

#### 2.  *Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length*

A court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).  Here, both Class Counsel and counsel for Defendants are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides."  *Hilsley*, 2020 WL 520616, at *5.  Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations facilitated by a neutral mediator."  *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted); *see also* Deckant Decl. ¶¶ 3-4.  And the Settlement occurred after "extensive discovery, providing both sides adequate opportunity to assess the pros and cons of settlement and further litigation."  *Deluca v. Farmers Ins. Exchange*, 2020 WL 5071700, at *3 (N.D. Cal. Aug. 24, 2020).  Thus, this prong is met.

#### 3.  *Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate*

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided

for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement."  *Hilsley*, 2020 WL 520616, at *6.

As to "the costs, risks, and delay of trial and appeal," Plaintiff established above that this factor is met.  *See* Argument §§ II.A.1-II.A.3, *supra*.

As to "the effectiveness of any proposed method of distributing relief to the class," "[t]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  *Hilsley*, 2020 WL 520616, at *7.  As described *infra*, the proposed notice plan and claims procedure is straightforward and comports with due process.  *See* Argument § III, *infra*.  The plan was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (internal quotations omitted).

As to "the terms of any proposed award of attorney's fees," Class Counsel will petition this Court for an award of one-third of the total value of the Settlement, inclusive of costs and expenses.  Settlement § 3.1.  While this is somewhat higher than the "benchmark award" of 25% recognized by courts in this Circuit, Plaintiff's Counsel will establish in their forthcoming fee application that the exceptional results delivered to Settlement Class Members warrants a modest upward departure.  *See Hanlon*, 150 F.3d at 1029.

In light of the foregoing, the Settlement provides adequate relief to the Settlement Class under Rule 23(e)(2)(C).

> ### 4. Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other

Under this factor, courts consider whether the Settlement "improperly grant[s]

1  preferential treatment to class representatives or segments of the class." *Hefler*, 2018 WL

2  6619983, at *8. Here, Settlement Class Members with a Proof of Purchase are entitled to a full

3  refund "for as many units of the Benecol Spreads as he or she has a Proof of Purchase."

4  Settlement § 2.1.2.1. And Settlement Class Members without a Proof of Purchase will be

5  entitled to $5 per unit of Benecol Spreads, with a cap of four units per Settlement Class Member.

6  *Id.* § 2.1.2.2. These awards (*i.e.*, $5 and a full refund, respectively) are roughly equivalent as

7  "the average price of Benecol was $4.80 *Martinelli*, 2019 WL 1429653, at *8. Further, the *pro*

8  *rata* reduction of claims reduction if "the total value of all Valid Claims exceeds the $2 million

9  Claim Fund" (Settlement § 2.1.2.3) is also equitable. *Hilsley*, 2020 WL 520616, at *7 ("This pro

10  rata distribution ensures that Settlement Class Members will receive the maximum amount of the

11  settlement fund and that no money will revert back to Defendant."). Thus, this Rule 23(e)(2)

12  factor is also met because "the agreement appears to treat class members roughly equally." *In re*

13  *Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7389330, at *3 (S.D.N.Y.

14  Dec. 16, 2020).

15  **III.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED**

16         Once preliminary approval of a class action settlement is granted, notice must be directed

17  to class members. For class actions certified under Rule 23(b)(3), including settlement classes

18  like this one, "the court must direct to class members the best notice that is practicable under the

19  circumstances, including individual notice to all members who can be identified through

20  reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class

21  settlement and requires the Court to "direct notice in a reasonable manner to all class members

22  who would be bound by a proposal." Fed R. Civ. P Rule 23(e)(1).

23         When a court is presented with class notice pursuant to a settlement, both the class

24  certification notice and notice of settlement may be combined in the same notice. MANUAL FOR

25  COMPLEX LITIGATION § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the

26  Rule 23(e) notice are sometimes combined."). This notice allows Class Members to decide

27  whether to opt out of or participate in the class and/or to object to the Settlement and argue

28  against final approval by the Court. *Id.* The proposed notice program here informs the Class of

their rights and includes a comprehensive plan for direct notice, a settlement website, and a toll-free help line.  Settlement Class Members can also complete and submit the Claim Form electronically, which provides for ease of access.  *Hilsley*, 2020 WL 520616, at *7 ("The claims process is straightforward and allows Settlement Class members to make a claim by submitting a valid and timely Claim Form to the Settlement Administrator without complication.").

Here, the parties have selected JND Class Action Services as their proposed Notice Administrator, and have designed a notice plan to achieve at least 70% reach to the Settlement Class, consistent of both direct notice and publication notice.  *See* Deckant Decl. ¶ 7.  The notice accurately informs Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.  In addition, the notice provides information on how Class Members can object and opt out of the Class and to send those objections to the Court, information on how Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the contact information of Class Counsel. The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process.  *See* Exs. B, F to the Settlement (Deckant Decl. Ex. 1).

**Direct Notice:**  A notice substantially in the form attached as Exhibit F to the Settlement shall mailed to the last known mailing address of any Class Member whose contact information is available to Defendants.  Settlement § 4.4.

**Media Plan:**  The Settlement Administrator shall disseminate Class Notice to Settlement Class Members in the manner described in Ex. C to the Settlement.  *See* Deckant Decl. Ex. 1. The Media Plan is designed to have a reach of at least seventy (70) percent of Settlement Class Members.  Settlement § 1.15; *see also Perks v. Activehours, Inc.*, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.") (internal quotations omitted).

**Settlement Website:**  A settlement website will be maintained by the Settlement Administrator and contain the following information: (i) the Long Form Notice; (ii) the Claim

1  Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement; (v) the operative

2  Class Action Complaint filed in the Litigation; and (vi) any other materials agreed upon by the

3  Parties and/or required by the Court.  Settlement § 1.26.  The Settlement Website shall provide

4  Settlement Class Members with the ability to complete and submit the Claim Form

5  electronically.

6       **CAFA Notice:**  The parties shall also cause to be disseminated the notice to public

7  officials required by the Class Action Fairness Act ("CAFA").  *See* Settlement § 2.3.

8       Defendants shall pay for providing notice to the Settlement Class in accordance with the

9  Preliminary Approval Order, and the costs of such notice, together with the Costs of Settlement

10 Administration, from the Settlement Fund to be established as part of the Settlement.  *See*

11 Settlement § 2.2.  Furthermore, the proposed methods of giving notice are appropriate because

12 they provide a fair opportunity for Class Members to obtain full disclosure of the conditions of

13 the Settlement and to make an informed decision regarding the proposed Settlement.  Thus, the

14 notices and notice procedures amply satisfy the requirements of due process.

15 **<u>CONCLUSION</u>**

16      For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's

17 Motion for Preliminary Approval.

18

19 Dated: August 10, 2021          Respectfully submitted,

20                                      **BURSOR & FISHER, P.A.**

21                                      By:  */s/ Neal J. Deckant*

                                        Neal J. Deckant

22

23                                    L. Timothy Fisher (State Bar No. 191626)

                                   Neal J. Deckant (State Bar No. 322946)

24                                    Brittany S. Scott (State Bar No. 327132)

                                   1990 North California Boulevard, Suite 940

25                                    Walnut Creek, CA  94596

                                   Telephone: (925) 300-4455

26                                    Facsimile: (925) 407-2700

27                                    E-Mail: ltfisher@bursor.com

                                         ndeckant@bursor.com

28                                          bscott@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (admitted *pro hac vice*)
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue, Third Floor
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
        fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 331331
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*