**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
        ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (admitted *pro hac vice*)
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
        fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Ave., Suite 1420
Miami, FL  33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN MARTINELLI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC,<br><br>Defendants. | Case No. 2:15-cv-01733-MCE-DB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  March 24, 2022<br>Time:  2:00 p.m.<br>Courtroom:  7, 14th Floor<br>Judge:  Hon. Morrison C. England, Jr. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 24, 2022, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, located at the Robert T. Matsui United States Courthouse, 501 I Street, Courtroom 7, 14th Floor, Sacramento, CA 95814, in the courtroom of the Honorable Morrison C. England, Jr., Plaintiff JoAnn Martinelli ("Plaintiff") and Class Counsel, Bursor & Fisher, P.A., will and hereby do move, pursuant to Fed. R. Civ. P. 23(e) and the Court's September 28, 2021 Order Preliminarily Approving Class Action Settlement (ECF No. 270), for an order:  (1) granting final approval of the Stipulation of Class Action Settlement (the "Settlement" or "Settlement Agreement") submitted herewith; (2) finally certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); (3) finding the class notice as implemented satisfies Rule 23 and due process; (4) finally appointing Plaintiff as Class Representative; (5) finally appointing Bursor & Fisher, P.A. as Class Counsel under Rule 23(g); (6) finally appointing JND Legal Administration ("JND") as the Settlement Administrator; and (7) any other relief the Court deems just and proper.

This motion is made on the grounds that final approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.  In support of the Motion, Plaintiff will rely upon the attached Memorandum of Points and Authorities; the Declaration of Neal J. Deckant (the "2/9 Deckant Decl.") filed contemporaneously herewith, and the exhibits attached thereto (including the Settlement Agreement); the Declaration of Jennifer M. Keough (the "JND Decl."), and the exhibits attached thereto; the records, pleadings, and papers filed in this Action; and any other written and oral arguments that may be presented to the Court. This Motion is unopposed by Defendants and Settlement Class Members.

**PLEASE TAKE FURTHER NOTICE THAT** the undersigned hereby requests oral argument.

\* \* \*

A Proposed Final Approval Order and Judgment is submitted herewith.

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should grant final approval to the class action settlement in this case and certify the Settlement Class.

Dated: February 9, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  ___*/s/ Neal J. Deckant*___

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
         ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (admitted *pro hac vice*)
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
         fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Ave., Suite 1420
Miami, FL  33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*

1

**TABLE OF CONTENTS**

2

PAGE(S)

3    I.      INTRODUCTION ................................................................................................1

4    II.     FACTUAL AND PROCEDURAL BACKGROUND, AND SETTLEMENT
5            TERMS .............................................................................................................2

     III.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
6            APPROPRIATE ...................................................................................................2

7    IV.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS AND RULE 23 ....................4

8    V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
             ADEQUATE, AND IT SHOULD BE APPROVED BY THE COURT ..............................6
9
             A.    Procedural Fairness: The Negotiation Process ........................................9
10
             B.    Substantive Fairness: The *Hanlon* Factors ...........................................10
11
                   1.    The Strength Of Plaintiff's Case ...............................................10
12
                   2.    The Risk Of Continuing Litigation.............................................11
13
                   3.    The Risk Of Maintaining Class Action Status ...........................13
14
                   4.    The Settlement Provides Excellent Relief To The Class.............13
15
                   5.    The Extent Of Discovery............................................................15
16
                   6.    The Views Of Experienced Counsel Support Granting Final
17                       Settlement Approval ..................................................................15

18                 7.    The Response Of Class Members Has Been Overwhelmingly
                         Positive ....................................................................................16
19
             C.    The Rule 23(e)(2) Factors ....................................................................17
20
                   1.    The Class Representative And Class Counsel Have
21                       Adequately Represented The Class............................................17

22                 2.    The Settlement Was Negotiated At Arm's Length.......................17

23                 3.    The Settlement Provides Adequate Relief To The Class .............18

24                 4.    The Settlement Treats All Class Members Equally .....................21

25   VI.     CONCLUSION .................................................................................................22

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ................................................................. 7

*Alvarez v. Farmers Ins. Exch.*,
    2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .......................................... 21

*Alvarez v. Sirius XM Radio Inc.*,
    2020 WL 7314793 (C.D. Cal. July 15, 2020) .......................................... 19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................. 2, 3

*Arreola v. Shamrock Foods Co.*,
    2021 WL 4220630 (C.D. Cal. Sept. 16, 2021) ..................................... 8, 16

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) .................................................. 3, 7, 8, 11

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) .................................................................... 2

*Blandino v. MCM Constr., Inc.*,
    2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ......................................... 20

*Boyd v. Avanquest N. Am. Inc*,
    2015 WL 4396137 (N.D. Cal. July 17, 2015) .................................... 18, 22

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) .................................................. 7, 15, 18

*Carlotti v. ASUS Computer Int'l*,
    2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ........................................ 6, 7

*Carter v. XPO Logistics, Inc.*,
    2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ........................................ 8, 14

*Chambers v. Whirlpool Corp.*,
    214 F. Supp. 3d 877 (C.D. Cal. 2016) ....................................................... 3

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................. 4, 8

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) .................................................................. 9

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................. 7

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................................ 4

*Ferrell v. Buckingham Prop. Mgmt.*,
   2021 WL 488314 (E.D. Cal. Feb. 10, 2021) ............................................................ 7

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .............................................. 10, 17, 20

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ......................................................... 21

*Greko v. Diesel U.S.A., Inc.*,
   2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ......................................................... 21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................................... 2, 4, 7, 8

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................................... 21

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........................................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................................................... 8

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................................................... 22

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
   2014 WL 7240144 (N.D. Cal. Dec. 19, 2014) .......................................................... 7

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ....................................................... 20

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................. 15, 20

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................... 3, 13

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 15, 16

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................... 7, 17, 20

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ......................................................................... 7, 17

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................................................ 21

*Johnson v. Triple Leaf Tea Inc.*,
    2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ...................................................... 13

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017).......................................................... 1, 8, 13, 16

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) .................................................. passim

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .............................................................................. 14

*Linney v. Cellular Alaska P'ship*,
    1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................................ 20

*Miguel-Sanchez v. Mesa Packing, LLC*,
    2021 WL 4893394 (N.D. Cal. Oct. 20, 2021) ...................................................... 11

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................................... 4

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)........................................................ 11, 13, 14, 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... 4, 8, 10, 13

*Pena v. Taylor Farms Pac., Inc.*,
    2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ......................................................... 8

*Perks v. Activehours, Inc.*,
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ................................................. 18, 21

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................ passim

*Ross v. Trex Co., Inc.*,
    2013 WL 6622919 (N.D. Cal. 2013) ...................................................................... 9

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016)......................................................................... 5, 6

*State of California v. eBay, Inc.*,
    2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ..................................................... 22

*Torchia v. W.W. Grainger, Inc.*,
   304 F.R.D. 256 (E.D. Cal. 2014) ............................................................... 16

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ............................................................... 20

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................... 18

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................. 19, 21

*Wellens v. Sankyo*,
   2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ........................................... 21

*Young v. Polo Retail, LLC*,
   2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .............................................. 9

**RULES**

Fed. R. Civ. P. 8 ............................................................................................ 12

Fed. R. Civ. P. 12(b)(6) ............................................................................... 12

Fed. R. Civ. P. 23 ................................................................................... passim

**OTHER AUTHORITIES**

4 Newberg on Class Actions § 11:53 (4th ed. 2013) ...................................... 5

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ............................... 7

Federal Judicial Center, Manual for Complex Litigation § 21.62 (4th ed. 2004) ........................... 11

## I.     INTRODUCTION

On September 28, 2021, this Court preliminarily approved the Class Action Settlement between Plaintiff JoAnn Martinelli ("Plaintiff") and Defendants Johnson & Johnson and McNeil Nutritionals, LLC ("Defendants"), and directed that notice shall be sent to the Settlement Class. *See* Order Preliminarily Approving Class Action Settlement, ECF No. 270.  The settlement administrator, JND Legal Administration ("JND"), has implemented the Court-approved notice plan, and the digital effort of notice alone was designed to reach at least 70% of likely Settlement Class Members.  The reaction from the Settlement Class has been overwhelmingly positive. Namely, after sending direct notice successfully to approximately 42,275 class members via email and 31,813 class members via U.S. Mail – plus publication notice – there were 63,344 claims submitted, **no** requests for exclusion, and **no** objections.[1]  *See* JND Decl. ¶¶ 16-17, 25, 27, 29.  The lack of any objections demonstrates that the Settlement has the support and approval of the Class.[2]

The Settlement was reached after several years of settlement negotiations, including three full rounds of mediation, with Judge Garrett E. Brown, Jr. (Ret.) and Judge Wayne R. Andersen (Ret.), both of whom are experienced neutrals affiliated with JAMS.  Under the terms of the Settlement, Defendants have agreed to "make available a total Claim Fund of up to two million dollars ($2,000,000) for payment of Valid Claims, attorneys' fees and expenses, administration costs, and the Incentive Award."  Settlement § 2.1.  From the Claim Fund, purchasers of the Benecol Spreads may recoup up to the full purchase price[3] of several tubs of the Benecol Spreads, subject to *pro rata* reduction.  *Id.* § 2.1.2.  "[I]f the total value of all Valid Claims exceeds the $2 million Claim Fund after reduction of the Claim Fund by the payment of attorneys' fees and expenses, administration costs, and the Incentive Award," payments will be subject to *pro rata*

---

[1] The deadline to object or opt-out of the Settlement was January 26, 2022.  *See* Order Preliminarily Approving Class Action Settlement (ECF No. 270) ¶ 17.

[2] *See, e.g.*, *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) (Orrick, J.); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *Arreola v. Shamrock Foods Co.*, 021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021).

[3] Specifically, Settlement Class Members with a Proof of Purchase "shall be entitled to a full monetary refund of the amount(s) shown on the Proof of Purchase, for as many units of the Benecol Spreads as he or she has a Proof of Purchase."  Settlement § 2.1.2.1.  Settlement Class Members without a Proof of Purchase will be entitled to $5 per unit of Benecol Spreads, with a cap of four units per Settlement Class Member.  *Id.* § 2.1.2.2.

reduction.  *Id.* § 2.1.2.3.  In all, this is an excellent deal.  The Court should have no hesitation in granting final approval.

## II.        FACTUAL AND PROCEDURAL BACKGROUND, AND SETTLEMENT TERMS

The factual and procedural background of this matter, including the key terms of the Settlement Agreement, are discussed at ¶¶ 4-16 of the January 12, 2022 Deckant Declaration.  *See* ECF No. 271-1.

## III.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.  Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that:

> [Q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  The Ninth Circuit "has directed that [Rule 23] be liberally construed to effectuate its remedial purposes," and courts are to adopt a standard of flexibility in evaluating class certification.  *Blackie v. Barrack*, 524 F.2d 891, 906 n.22 (9th Cir. 1975); *see also id.* at 904 n.19 ("[Avoidance of duplicative proceedings] is a major purpose of a class action; the 'common question' requirement should be interpreted to obtain that objective.  … The common question requirement should not be restrictively interpreted … as to do so would eliminate the class action deterrent for those who engage in [unlawful schemes].").  Additionally, in assessing whether the

class certification requirements of Rule 23 have been satisfied, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Here, the Court's Preliminary Approval Order provisionally certified a Class, for settlement purposes, defined as: "[a]ll individuals who purchased Benecol Regular Spreads and Benecol Light Spreads in the United States from January 1, 2008 to December 31, 2011 for personal use" (the "Settlement Class").  ECF No. 270 ¶ 3.  The Court found that "[t]he requirements for certification of the Settlement Class under Fed. R. Civ. P. 23(a) and 23(b)(3) have been satisfied for settlement purposes."  *Id*. ¶ 4.  Notably, no substantive changes have occurred since that finding, and, more importantly, no objections have challenged that conclusion.  The Court may therefore rely on the same rationale as explained in the preliminary approval order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and (b) in connection with final approval.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) ("Because the Objections do not appear to raise a viable challenge to th[e] conclusion [that certification of a settlement class is appropriate], the Court will rely on the rationale for class certification as explained in the Preliminary Approval Order.").

Accordingly, the Court's previous finding should be made final here.  *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) ("Because circumstances have not changed, and for the reasons set forth in its Order of November 12, 2015, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).") (citation omitted); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal. 2015) ("In the Court's Order granting preliminary approval of the settlement, the Court found that the putative class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  The Court is unaware of any changes that would alter its analysis, and the parties did not indicate either in their papers or at the fairness hearing that any such developments had occurred.  Thus, the

1    Court concludes that all four of Rule 23(a)'s requirements have been met.") (citations omitted).[4]

2    **IV.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS AND RULE 23**

3            Before final approval can be granted, due process and Rule 23 require that the notice

4    provided to the Settlement Class is "the best notice that is practicable under the circumstances,

5    including individual notice to all members who can be identified through reasonable effort."  Fed.

6    R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

7            "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

8    *Hanlon*, 150 F.3d at 1025.  Such notice to class members must be reasonably calculated under the

9    circumstances to apprise interested parties of the pendency of the settlement proposed and to afford

10   them an opportunity to present their objections.  *See* Fed. R. Civ. P. 23(e)(1) ("The court must

11   direct notice [of a proposed class settlement] in a reasonable manner to all class members who

12   would be bound by the proposal[.]"); *see also Officers for Justice v. Civil Serv. Comm'n of City &*

13   *Cty. of San Francisco*, 688 F.2d 615, 6245 (9th Cir. 1982) (citation omitted) ("The class must be

14   notified of a proposed settlement in a manner that does not systematically leave any group without

15   notice."); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  It must

16   clearly state essential information regarding the settlement, including the nature of the action, terms

17   of the settlement, and class members' options.  *See* Fed. R. Civ. P. 23(c)(2)(B).

18           A class action settlement notice "is satisfactory if it generally describes the terms of the

19   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

20   forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), *cert.*

21   *denied*, 543 U.S. 818 (2004); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir.

22   2009) (same).   At its core, all that notice must do is "fairly apprise the prospective members of the

23   class of the terms of the proposed settlement and of the options that are open to them in connection

24   with the proceedings." *Id.* (citation omitted).  "The notice should provide sufficient information to

25   allow class members to decide whether they should accept the benefits of the settlement, opt out

26

27   _____

28   [4] Plaintiff incorporates by reference her prior arguments regarding certification of the Settlement Class, as set forth in the Motion for Preliminary Approval, rather than repeating them here.  *See* ECF No. 265 at 8-12.

and pursue their own remedies, or object to its terms." *Id.* "[N]otice is adequate if it may be understood by the average class member." 4 Newberg on Class Actions § 11:53, at 167 (4th ed. 2013); *see also Rodriguez*, 563 F.3d at 962 ("Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]"). Ultimately, "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (citation omitted). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010). As discussed below, the notice plan implemented in this case easily meets this standard of reasonableness. *See* JND Decl. ¶ 6 (the digital effort of notice alone was designed to reach at least 70% of likely Settlement Class Members).

First, the Court approved the Parties' proposed Notice Plan in its September 28, 2021 Order Preliminarily Approving Class Action Settlement. *See* ECF No. 270 ¶ 8. After an evaluation of the terms of these notices and the plan for their distribution, the Court found that the notice plan met the requirements of Rule 23 and due process. *See id.* ("The Court determines that the Class Notice, as set forth in the parties' Stipulation of Settlement, complies with all legal requirements, including but not limited to the Due Process Clause of the United States Constitution."). The Settlement Administrator, JND, then implemented the notice plan precisely as set out in the Settlement Agreement and as ordered by the Court. *See* JND Decl. ¶ 6.

The notice plan has now been fully carried out, and it was a resounding success on every level. Pursuant to the Settlement, Defendants provided JND with a list containing the names, email and/or mailing addresses, and status of a total of 88,541 potential Settlement Class Members. *See id.* ¶ 13. Initially, JND sent the notice by email and U.S. Mail to all class members identified by Defendants. Specifically, JND emailed 76,139 notices to Settlement Class Members, of which 33,864 emails bounced back as undeliverable, and it also mailed notices via U.S. Mail to 31,813 Settlement Class Members. *Id.* ¶¶ 15-17. JND also developed and hosted a dedicated settlement website ([www.benecolsettlement.com](www.benecolsettlement.com)) that provided detailed information about the settlement,

provided downloadable claim and exclusion forms and online claim submission capabilities, and clearly set forth the deadlines for Class Members to act, and it further set up a toll-free hotline that Class Members could call if they had questions about the settlement, along with an email address and postal mailing address.[5]  *Id*. ¶¶ 6-12.

As a result of these efforts, JND successfully disseminated the Court-approved notices via email and/or postal mail to approximately 72,187 Settlement Class Members.  *Id.* ¶ 19.  Accordingly, the <u>Court-approved notices were designed to reach at least 70% of the Settlement Class</u>.  *Id.*  This comprehensive reach easily satisfies the standard of reasonableness against which its adequacy must be measured.  *See Spann*, 314 F.R.D. at 330; Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010) (noting that a notice plan is reasonable if it reaches at least 70% of the class).  Moreover, **no** Class Members have requested to be excluded from the Class, and **no** Class Members have objected to the Settlement.  *See* JND Decl. ¶¶ 25, 27.  Therefore, the notice plan was a resounding success.

Given the broad reach of the notices and the comprehensive information such notices provided to Class Members, the requirements of due process and Rule 23 are easily met.  *See, e.g.*, *Rodriguez*, 563 F.3d at 962 ("The Notice advises class members that a majority (hence, not all) of the class representatives approve the settlement.  It describes the aggregate amount of the settlement fund and the plan for allocation, thereby complying with what we require.").

## V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND IT SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019).  To determine whether to approve a settlement, courts examine procedural and substantive

---

[5] JND also notified the appropriate state and federal officials pursuant to CAFA.  *See* JND Decl. ¶ 3.

fairness in light of the "strong judicial policy" in favor of settlement of class action suits. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979) (Orrick, J.) ("[T]he court should remain cognizant of the overriding public interest in settling large class actions[.]"); *Ferrell v. Buckingham Prop. Mgmt.*, 2021 WL 488314, at *3 (E.D. Cal. Feb. 10, 2021) (slip op.) ("The Ninth Circuit has repeatedly affirmed that a strong judicial policy favors settlement of class actions.") (citing *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015) ("Judicial policy strongly favors settlement of class actions.").[6] This is particularly true in complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Ferrell*, 2021 WL 488314, at *3. Fairness is determined upon review of both the terms of the settlement agreement (substantive fairness) and the negotiating process that led to such agreement (procedural fairness). *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

In terms of procedural fairness, a presumption of fairness, adequacy, and reasonableness attaches to a class action settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *See In re Pac.*, 47 F.3d at 378; *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted). As the Ninth Circuit has recognized, although the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

---

[6] *See also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (acknowledging the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2014 WL 7240144, at *4 (N.D. Cal. Dec. 19, 2014); Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 830 (N.D. Cal. 2017) (Orrick, J.) (quoting *Officers for Justice*, 688 F.2d at 625); *see also id.* ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation.") (internal quotation marks omitted); accord Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate").

Courts must also consider whether a proposed settlement is substantively fair.  In making this determination, the Ninth Circuit has instructed district courts to balance several factors (the "*Hanlon* factors"):  (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members of the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir. 2004) (same); *Pena v. Taylor Farms Pac., Inc.*, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019) (Orrick, J.) (same).  "The court need not consider all of these factors, or may consider others." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("The factors in a court's fairness assessment will naturally vary from case to case."); *Arreola v. Shamrock Foods Co.*, 2021 WL 4220630, at *4 (C.D. Cal. Sept. 16, 2021) ("Each factor does not necessarily apply to every class action settlement, and other factors may be considered.").

In addition to these factors, courts should also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed

award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  There is significant overlap between the Rule 23(e)(2) and *Hanlon* factors, which complement, rather than displace each other.

### A.    Procedural Fairness: The Negotiation Process

In this case, there is no question that the Settlement was arrived at through genuine arm's length bargaining after a developed factual record that allowed the parties to have a "clear view of the strengths and weaknesses of their case[]."  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citations omitted).  Accordingly, it is entitled to a presumption of reasonableness.  *Ross v. Trex Co., Inc*., 2013 WL 6622919, at *3 (N.D. Cal. 2013) ("[T]here is no fraud or collusion underlying this Settlement, and it was reached after good faith, arms'-length negotiations, warranting a presumption in favor of approval.") (citation omitted); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution[.]").

As is discussed further below, the circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair.  Here, the Settlement was reached after years of negotiation and three mediation sessions before well-respected mediators affiliated with JAMS, Judge Garrett E. Brown, Jr. (Ret.) and Judge Wayne R. Andersen (Ret.).  *See* 1/12 Deckant Decl. ¶ 12 (ECF No. 271-1).  Additionally, Class Counsel had engaged in written discovery, which informed their views at mediation, including: (1) performing extensive pre-litigation investigation into the Benecol Spreads and associated marketing to assist with the drafting of Plaintiff's complaint; (2) serving multiple rounds of discovery requests on Defendants and seeking discovery from third parties; (3) reviewing thousands of documents produced by Defendants, including complex scientific and statistical documents; (4) taking depositions of Defendants' three expert witnesses and several fact witnesses; and (5) defending the depositions of Plaintiff Martinelli and

her physician, as well as Plaintiff's expert witnesses.  *See id.* ¶ 3.  Moreover, the negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients.  *See id.* ¶¶ 20-23.  In such situations, the Ninth Circuit adopts a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement is reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.  *See Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (noting that the court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery") (citation omitted).  Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.  *Id.*

Thus, as the Court found at preliminary approval, "[t]he agreement contained in that Stipulation of Settlement was reached as a result of extensive arm's-length negotiations between the Parties and their counsel with the assistance of an experienced mediator."  Order Preliminarily Approving Class Action Settlement (ECF No. 270) ¶ 2.  The Settlement is therefore entitled to a presumption of reasonableness.

## B.    Substantive Fairness: The *Hanlon* Factors

### 1.    The Strength Of Plaintiff's Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotation marks omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories, and defenses on both sides before engaging in arms-length negotiations with Defendants' counsel. *See* 1/12 Deckant Decl. ¶¶ 3-6.  Although Plaintiff and Class Counsel had confidence in their claims, they recognize that a favorable outcome was not assured and that they would face risks at

class certification, summary judgment, and trial.  *See* 1/12 Deckant Decl. ¶ 33.  Defendants

vigorously deny Plaintiff's allegations and asserts that neither Plaintiff nor the Class suffered any

harm or damages.  In addition, Defendants would no doubt present a vigorous defense at trial, and

there is no assurance that the Class would prevail – or even if they did, that they would be able to

obtain an award of damages significantly more than achieved here absent such risks.  In other

words, "[a]lthough the class members (or some of them) arguably might have received more if they

had proceeded to trial and prevailed on the merits of their case, they also faced a risk that the

resulting recovery would be smaller than what is currently expected." *Miguel-Sanchez v. Mesa*

*Packing, LLC*, 2021 WL 4893394, at \*6 (N.D. Cal. Oct. 20, 2021).  The Settlement abrogates these

risks to Plaintiff and the Class.  *See Rodriguez*, 563 F.3d at 965–66 ("[O]ne factor 'that may bear

on review of a settlement'" is "the advantages of the proposed settlement versus the probable

outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the

class and individual class members[.]'") (citing Federal Judicial Center, Manual for Complex

Litigation § 21.62, at 316 (4th ed. 2004)).  "Further, the benefit of receiving an award in the

immediate future has its own value." *Miguel-Sanchez*, 2021 WL 4893394, at \*6 (citing

*Bellinghausen*, 306 F.R.D. at 255).  Thus, in the eyes of Class Counsel, the proposed Settlement

provides the Class with an outstanding opportunity to obtain significant relief at this stage in the

litigation.

## 2.    The Risk Of Continuing Litigation

Next, approval of the proposed settlement is appropriate given the risks associated with

continued litigation.  By reaching a favorable settlement now, Plaintiff seeks to avoid significant

expense and delay, and instead ensure recovery for the class.  "Generally, 'unless the settlement is

clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

with uncertain results.'" *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at \*4 (N.D. Cal. July 11,

2014) (Orrick, J.) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D.

523, 526 (C.D. Cal. 2004)) (internal quotation marks omitted).  "Moreover, settlement is favored

where, as here, significant procedural hurdles remain, including class certification and an

anticipated appeal." *Id.* (citing *Rodriguez*, 563 F.3d at 966).

Here, the Parties engaged in significant written discovery prior to mediation.  1/12 Deckant Decl. ¶ 3.  The next steps in the litigation would have been for Plaintiff to oppose Defendants' Motion to Decertify the Classes, and for the Court to rule on Defendants' Motion to Modify the Class Definition, which would then lead into contested motions for summary judgment and a jury trial.  *Id.* ¶¶ 8-9.  Such motion practice would be, at minimum, costly and time-consuming for the Parties and the Court, and create risk that a litigation class would be decertified and/or that the Settlement Class would recover nothing at all.  For example, Plaintiff is aware that Defendants would continue to assert defenses on the merits, including that Plaintiff's allegations are insufficient under Fed. R. Civ. P. 8 and 12(b)(6).  Plaintiff and Class Counsel are also aware that Defendants would continue to oppose class certification vigorously, and would continue to seek to decertify the classes and modify the class definition.  Plaintiff and Class Counsel further understand that Defendants would prepare a competent defense at trial.  Even assuming that Plaintiff were to survive summary judgment, she would likely face the risk of establishing liability at trial as a result of conflicting expert testimony between her own expert witnesses and Defendants' expert witnesses.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.  Additionally, looking beyond trial, Defendants could appeal the merits of any adverse decision.  Even if Plaintiff were to prevail at every stage of this litigation, there remains a substantial likelihood that Class Members would not be awarded significantly more than (or even as much as) is offered to them under this Settlement. *See, e.g.*, *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs awarding over $100 million in damages, entering judgment in favor of individual defendants, and ordering new trial for corporate defendant).

In sum, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery."  *Larsen*, 2014 WL 3404531, at *4 (Orrick, J.).  The Settlement, on the other hand, permits a prompt resolution of this action on

1   terms that are fair, reasonable and adequate to the Class.  This result will be accomplished years

2   earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty.

3   "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving

4   the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### 3.        The Risk Of Maintaining Class Action Status

6         In addition to the risks of continuing the litigation, Plaintiff would also face risks in

7   maintaining class certification through trial.  The Court has not yet ruled on Defendants' Motion to

8   Modify the Classes, nor has the Court ruled on Defendants' additional Motion to Decertify the

9   Classes.  1/12 Deckant Decl. ¶¶ 8-9.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6

10  (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is

11  one that weighs in favor of settlement.") (internal citations omitted).  Risk, expense, and delay

12  permeate such a process.  "[C]onsummating this Settlement promptly in order to provide effective

13  relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that

14  is certain and immediate.  *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal.

15  Nov. 16, 2015).  The Settlement eliminates these risks, expenses, and delay.

### 4.        The Settlement Provides Excellent Relief To The Class

17        The determination of "the fairness, adequacy, and reasonableness of the amount offered in

18  settlement is not a matter of applying a 'particular formula.'"  *Knapp*, 283 F. Supp. 3d at 832

19  (Orrick, J.) (citing *Rodriguez*, 563 F.3d at 965).  Instead, the Court's analysis of whether a

20  settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and

21  rough justice."  *Id.*  In assessing the consideration available to Class Members in a proposed

22  Settlement, "[i]t is the complete package taken as a whole, rather than the individual component

23  parts, that must be examined for overall fairness."  *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting

24  *Officers for Justice*, 688 F.2d at 628).  Because a settlement provides certain and immediate

25  recovery, courts often approve settlements even where the benefits obtained as a result of the

26  settlement are less than those originally sought.  "[I]t is well-settled law that a proposed settlement

27  may be acceptable even though it amounts to only a fraction of the potential recovery that might be

28

---

available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In this case, Defendants have agreed to "make available a total Claim Fund of up to two million dollars ($2,000,000) for payment of Valid Claims, attorneys' fees and expenses, administration costs, and the Incentive Award." Settlement § 2.1. Specifically, Settlement Class Members with a Proof of Purchase "shall be entitled to a full monetary refund of the amount(s) shown on the Proof of Purchase, for as many units of the Benecol Spreads as he or she has a Proof of Purchase." Settlement § 2.1.2.1. Settlement Class Members without a Proof of Purchase will be entitled to $5 per unit of Benecol Spreads, with a cap of four units per Settlement Class Member. *Id.* § 2.1.2.2. "[I]f the total value of all Valid Claims exceeds the $2 million Claim Fund after reduction of the Claim Fund by the payment of attorneys' fees and expenses, administration costs, and the Incentive Award," payments will be subject to *pro rata* reduction. *Id.* § 2.1.2.3. To date, 63,233 claims have been received. *See* JND Decl. ¶ 29. At the current claims rate, assuming that attorneys' fees, costs and expenses, and client incentive award are approved in full, JND estimates that a *pro rata* reduction will be necessary, such that "each Settlement Class Member providing Proof of Purchase will receive a *pro rata* average of $44.54 and each claimant whose submitted claim did not include Proof of Purchase will receive a *pro rata* average of $12.87." *Id.* This is an excellent recovery, given Plaintiff's theory of damages, which "rests on the fact that a certain percentage of the price consumers paid for Benecol constituted a [20.8%] price premium [about $1.00] solely attributable to the No Trans Fat claim." Mot. Class Cert., at 18 (ECF No. 174).

Defendants have further agreed to pay the costs of notice, administration, reasonable attorneys' fees and costs for Class Counsel, and an incentive award to Plaintiff Martinelli from the Claim Fund established by the Settlement. Settlement §§ 2.1.1, 2.2(a)-(c), 3.1-3.2.

Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the proposed Settlement is more than reasonable. *See Carter*, 2019 WL 5295125, at *3 (Orrick, J.) ("The amount of the settlement is fair, adequate and reasonable given the risks of continued litigation.").

5.      **The Extent Of Discovery**

Under this factor, courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Plaintiff, by and through her counsel, has conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation, through: (1) performing extensive pre-litigation investigation into the Benecol Spreads and associated marketing to assist with the drafting of Plaintiff's complaint; (2) serving multiple rounds of discovery requests on Defendants and seeking discovery from third parties; (3) reviewing thousands of documents produced by Defendants, including complex scientific and statistical documents; (4) taking depositions of Defendants' three expert witnesses and several fact witnesses; and (5) defending the depositions of Plaintiff Martinelli and her physician, as well as Plaintiff's expert witnesses.  *See* 1/12 Deckant Decl. ¶ 3 (ECF No. 271-1).  The parties also held numerous telephonic and written discussions regarding Plaintiff's allegations, discovery, and the prospects of settlement, as well as three mediation sessions.  *Id.* ¶ 3.  Thus, the proposed Settlement is the result of fully informed negotiations.

6.      **The Views Of Experienced Counsel Support Granting Final Settlement Approval**

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.* [hereinafter *Betchel Corp.*], 485 F. Supp. 610, 622 (N.D. Cal. 1979) (Orrick, J.); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same).  Deference to Class Counsel's evaluation of the Settlement is appropriate because "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs."  *Betchel Corp.*, 485 F. Supp. at 622; *see also Rodriguez*, 563 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* 1/12 Deckant Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A.  Based on their experience,

Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### 7. The Response Of Class Members Has Been Overwhelmingly Positive

The objection and opt-out deadlines lapsed on January 26, 2022.  By that date, not a single Class Member objected to the Settlement, and no Class Members have opted out.  *See* JND Decl. ¶¶ 25, 27.  Such an overwhelmingly positive response from Class Members strongly supports final approval.  *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) (Orrick, J.) ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'  A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.  …  [T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming district court's finding that 54 objections out of 376,301 putative class members reflected a favorable reaction); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("[T]he absence of a large number of objections to a proposed class action settlement raises a *strong presumption* that the terms of a proposed class settlement action are favorable to the class members.") (emphasis added and citation omitted); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 270 (E.D. Cal. 2014) ("Significantly, no objections were filed by Class Members following service of the Class Notice Packet.  …  Therefore, this factor weighs in favor of the Settlement.") (internal citation omitted); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.  It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Arreola v. Shamrock Foods Co.*, 2021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021) ("[N]one [of the settlement class members] objected or opted out.  A low proportion of opts outs and objections

'indicates that the class generally approves of the settlement.'  Therefore, this factor weighs in favor of final approval.") (citations omitted).

### C.   The Rule 23(e)(2) Factors

#### 1.   The Class Representative And Class Counsel Have Adequately Represented The Class

As is discussed further below, Plaintiff's interests here are aligned with other class members' interests because she claims she suffered the same injuries: purchasing Benecol Spreads containing the representation "No Trans Fats."  Because Plaintiff and the Class suffered these alleged injuries as a result of Defendants' common course of conduct, Plaintiff has an interest in vigorously pursuing the claims of the class.  Further, numerous other courts in this Circuit have previously found that Plaintiff's attorneys adequately meet the obligations and responsibilities of Class Counsel.  *See* 1/12 Deckant Decl. ¶¶ 21-22; *see also id*. Ex. 2, Firm Resume of Bursor & Fisher, P.A.; *Williams v. Facebook, Inc.*, No. 3:18-cv-01881, ECF No. 51 (N.D. Cal June 26, 2018) ("[The] Bursor firm … ha[s] extensive experience in handling class actions and complex litigation, including products liability and consumer protection cases; appear[s] to have knowledge of applicable law; and ha[s] extensive resources.") (appointing Bursor & Fisher class counsel to represent a putative nationwide class of all persons who installed Facebook Messenger applications and granted Facebook permission to access their contact list).

#### 2.   The Settlement Was Negotiated At Arm's Length

In evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations.  When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378; *Garner*, 2010 WL 1687832, at *9.  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate.  *See In re Syncor*, 516 F.3d at 1100.

Here, counsel for both Plaintiff and Defendants are experienced in class action litigation, engaged in protracted settlement discussions, and reached this settlement with the assistance of

1    experienced neutrals.  1/12 Deckant Decl. ¶ 14.  In other words, the negotiations were conducted at

2    arm's length, non-collusive, well-informed (in that they were conducted after an assessment of the

3    strengths and weaknesses of the claims on both sides), conducted between counsel on both sides

4    with significant class action experience, and utilized at the appropriate time the assistance of a

5    well-respected mediator.  Under such circumstances, the proposed Settlement is entitled to a

6    presumption of reasonableness, and the Court is entitled to rely upon counsel's opinions and

7    assessments.  *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021)

8    ("[T]he Court found that Class Counsel have substantial experience in litigating and settling

9    consumer class actions.  Despite the relatively early stage of the litigation, Class Counsel obtained

10   sufficient information to make an informed decision about the Settlement and about the legal and

11   factual risks of the case.  …  The Settlement was also the product of arm's-length negotiations

12   through mediation sessions and follow-up communications supervised by [an experienced neutral].

13   There is no indication of any collusion between the parties."); *Boyd v. Avanquest N. Am. Inc*

14   [hereinafter *Avanquest*], 2015 WL 4396137, at *3 (N.D. Cal. July 17, 2015) (Orrick, J.) ("[U]se of

15   mediator 'tends to support the conclusion that the settlement process was not collusive.'") (quoting

16   *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012));

17   *Bechtel Corp.*, 485 F. Supp. at 622-25 (Orrick, J.).  Accordingly, the second Rule 23(e)(2) factor

18   has been met.

19                      **3.    The Settlement Provides Adequate Relief To The Class**

20          Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and

21   appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

22   the method of processing class-member claims, if required; (iii) the terms of any proposed award of

23   attorney's fees, including timing of payment; and (iv) any agreement required to be identified

24   under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).  These factors subsume several *Hanlon* factors

25   including: "the risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor

26   2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the

27   amount offered in settlement" (*Hanlon* Factor 4).  As noted above, the Settlement has met each of

28   the *Hanlon* factors.  *Supra* §§ V.A(1)-(5).  As to "any agreement required to be identified by Rule

23(e)(3)[,]" as previously mentioned in Plaintiff's motion for preliminary approval, ECF No. 269 at 19–20, there is related litigation pending in the Southern District of New York, captioned *Chamlin v. Johnson & Johnson*, No. 1:19-cv-03852-AJN (S.D.N.Y.), bringing similar claims regarding the alleged mislabeling of Benecol Spreads under New York law.  On or about July 19, 2021, Defendants' counsel, Plaintiff's counsel, and the parties to the *Chamlin* matter entered into a separate individual settlement of the claims asserted in that action, as part of their efforts to resolve all Benecol litigation against Defendants.

As to "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes).  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *Id*.  Here, under the terms of the Settlement, Settlement Class Members with a Proof of Purchase "shall be entitled to a full monetary refund of the amount(s) shown on the Proof of Purchase, for as many units of the Benecol Spreads as he or she has a Proof of Purchase."  Settlement § 2.1.2.1.  Settlement Class Members without a Proof of Purchase will be entitled to $5 per unit of Benecol Spreads, with a cap of four units per Settlement Class Member.  *Id*. § 2.1.2.2.  The Court should find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective."  *Id*.

Next, as to "the terms of any proposed award of attorney's fees," Class Counsel have applied for the recovery of attorneys' fees, costs, and expenses in the amount of $666,666.66, which constitutes one-third of the total value of the Settlement.  Settlement § 1.14.  The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiff and the Class.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, Class Counsel has easily satisfied each factor.

1    First, with respect to the results achieved, Class Counsel's efforts have secured a Settlement

2 Fund with a total value of $2,000,000. As discussed in detail above, this is an excellent result. *See*

3 *supra*.

4    Second, Plaintiff has established that there are significant risks in entering a protracted

5 litigation. *See supra*. Thus, "[i]n the absence of settlement now, the parties would incur significant

6 additional costs in discovery, including depositions, … a survey of [defendant's] customers

7 regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014

8 WL 3404531, at *4. "Moreover, settlement is favored where, as here, significant procedural

9 hurdles remain, including class certification and an anticipated appeal." *Id.* (citing *Rodriguez*, 563

10 F.3d at 966). "Avoiding such unnecessary and unwarranted expenditure of resources and time

11 would benefit all parties, as well as conserve judicial resources." *Id.* (citing *Garner*, 2010 WL

12 1687832, at *10). "Accordingly, the high risk, expense, and complex nature of the case weigh in

13 favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

14    Third, as noted above, *see supra*, Class Counsel's time and efforts in this litigation have

15 generated material benefits for Settlement Class Members, in the form of monetary relief. *See also*

16 Settlement §§ 2.1-2.4.

17    Fourth, Plaintiff's counsel's requested fee is consistent with market rates as reflected by

18 awards made in similar cases. Indeed, courts in this Circuit routinely approve fee requests for one-

19 third of a common fund. *See, e.g., Blandino v. MCM Constr., Inc.*, 2014 WL 11369763, at *3

20 (N.D. Cal. Mar. 6, 2014) (Orrick, J.) (awarding 33% of settlement fund in attorneys' fees); *In re*

21 *Lidoderm Antitrust Litig.*, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (Orrick, J.) (awarding

22 33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 460 (9th Cir. 2000) (affirming

23 33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18,

24 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming 33.3% fee award) ("The $2,000,000

25 requested by class counsel amounts to one-third of this common fund. … Courts in this district

26 have consistently approved attorneys' fees which amount to approximately one-third of the relief

27 procured for the class.") (citations omitted); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379

28 (affirming 33% fee award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal.

2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding fee of 32.8%); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687829, at *1 (N.D. Cal. Apr. 22, 2010) ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases."); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee award); *Larsen*, 2014 WL 3404531, at *9 (Orrick, J.) ("[Counsel's] request for attorneys' fees in the amount of 28% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.") (citations omitted); *Wellens v. Sankyo*, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (Orrick, J.) (awarding 36% of $8,200,000 settlement fund in fees).[7]

Finally, the requested fees are also fair given the significant time Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all absent a successful resolution.  Thus, because of the contingent nature of the fee and the financial burden carried by Plaintiff and the Class, Plaintiff's Counsel's requested fee award of one-third of the total Settlement Fund is reasonable and appropriate in this case.  *See Vizcaino*, 290 F.3d at 1048–50.

The Settlement therefore provides adequate relief to the Class under Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

### 4. The Settlement Treats All Class Members Equally

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'"  *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)).  In assessing this factor, "the Court considers whether the proposal 'improperly grant[s] preferential treatment to class representatives or segments of the class.'"  *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, courts in this Circuit have found that allocating Settlement benefits to Class Members, pursuant to the Settlement Agreement, in this manner is equitable.  *See Perks*, 2021 WL 1146038, at *6 ("This *pro rata* distribution is inherently equitable because it treats Class Members

---

[7] *See also Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) (Orrick, J.) ("Fee award percentages generally are higher in cases where the common fund is below $10 million.") (citations omitted); *accord Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *11 (N.D. Cal. Apr. 26, 2013).

1  fairly based on the amount of each member's potential damages."); *In re Extreme Networks, Inc.*

2  *Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution

3  equitable); *Avanquest*, 2015 WL 4396137, at *3 (Orrick, J.) ("[T]he proposed settlement agreement

4  'does not improperly grant preferential treatment to class representatives or segments of the class[]'

5  because all class members are treated in the same way and there is no difference in treatment

6  throughout the class.") (internal citations omitted) (quoting *State of California v. eBay, Inc.*, 2014

7  WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014)).  Thus, this factor weighs in favor of granting

8  approval.

9  **VI.    CONCLUSION**

10          For the reasons set forth above, Plaintiff respectfully requests that the Court grant her

11  unopposed Motion for Final Approval of the Settlement.  A Proposed Order granting final approval

12  and certifying the Settlement Class is submitted herewith.

13

14  Dated: February 9, 2022                    Respectfully submitted,

15                                             **BURSOR & FISHER, P.A.**

16                                             By:    */s/ Neal J. Deckant*

17                                             L. Timothy Fisher (State Bar No. 191626)
                                               Neal J. Deckant (State Bar No. 322946)
18                                             1990 North California Boulevard, Suite 940
                                               Walnut Creek, CA  94596
19                                             Telephone: (925) 300-4455
                                               Facsimile: (925) 407-2700
20                                             E-Mail: ltfisher@bursor.com
                                                      ndeckant@bursor.com
21
                                               **BURSOR & FISHER, P.A.**
22                                             Joseph I. Marchese (admitted *pro hac vice*)
                                               Frederick J. Klorczyk III (State Bar No. 320783)
23                                             888 Seventh Avenue
                                               New York, NY  10019
24                                             Telephone: (646) 837-7150
                                               Facsimile: (212) 989-9163
25                                             E-Mail: jmarchese@bursor.com
                                                      fklorczyk@bursor.com
26
                                               **BURSOR & FISHER, P.A.**
27                                             Scott A. Bursor (State Bar No. 276006)
                                               701 Brickell Ave., Suite 1420
28                                             Miami, FL  33131

Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*