UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN MARTINELLI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC,<br><br>Defendants. | No. 2:15-cv-01733-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

Through this class action, Plaintiff JoAnn Martinelli ("Plaintiff"), individually and on behalf of others similarly situated, seeks relief from Defendants Johnson & Johnson and McNeil Nutritionals, LLC (collectively "Defendants") arising from the labeling and sale of Benecol Regular and Light Spreads ("Benecol Spreads"). On September 28, 2021, the Court preliminarily approved the settlement agreement reached by the parties. ECF No. 270. Presently before the Court is Plaintiff's unopposed Motion for Final Approval of Class Action Settlement. ECF Nos. 273 ("Mot. Final Approval"), 277. Also before the Court is Plaintiff's unopposed Motion for an Award of Attorneys' Fees, Reimbursements of Costs and Expenses, and an Incentive Award. ECF Nos. 271 ("Mot. Att'y Fees"), 275.

///

///

For the reasons set forth below, Plaintiff's Motion for Final Approval is GRANTED whereas the Motion for Attorneys' Fees is GRANTED in part and DENIED in part.[1]

## BACKGROUND[2]

### A. Procedural History

On August 14, 2015, Plaintiff commenced this putative class action in this Court, asserting claims for breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, violation of California's Consumers Legal Remedies Act, violation of California's Unfair Competition Law, violation of California's False Advertising Law, negligent misrepresentation, and fraud.  ECF No. 1.  Plaintiff subsequently filed the operative FAC on October 16, 2015.  ECF No. 9.  In 2017, the parties participated in their first mediation session before Judge Garrett E. Brown, Jr. (Ret.), at Judicial Arbitration and Mediation Services ("JAMS").  Ex. 1, Stipulation of Class Action Settlement, Deckant Decl., ECF No. 265-1 ("Settlement Agreement"), at 3. However, no resolution was reached.  Id.

Between April and July 2018, Plaintiff filed a motion for class certification and both parties filed motions to exclude expert testimony and other evidence, all of which were fully briefed.  ECF Nos. 171, 175–76, 182–84, 193, 195, 204.  On July 6, 2018, the parties participated in their second mediation with Judge Wayne R. Andersen (Ret.) at JAMS, but they again failed to reach a settlement.  Settlement Agreement, at 3.

On March 29, 2019, the Court denied the motions to exclude and granted in part and denied in part Plaintiff's motion for class certification.  ECF No. 216.  The following classes were certified:

---

[1] Because oral argument would not be of material assistance, the Court ordered these matters submitted on the briefs.  E.D. Local Rule 230(g).

[2] For an account of the class allegations, the Court refers to those set forth in its prior Memorandum and Order, which were taken, sometimes verbatim, from the First Amended Complaint ("FAC").  See ECF No. 216, at 2–3.

> 1. The "Multi-State Express Warranty Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California, and all Benecol purchasers between August 24, 2011 and December 31, 2011 in Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia; and
>
> 2. The "California Class," consisting of all Benecol purchasers between January 1, 2008 and December 31, 2011 in California.

Id. at 19. Almost one year later, on March 18, 2020, Plaintiff filed a motion for entry of the proposed notice plan, which Defendants opposed. ECF Nos. 221, 226, 229. Defendants subsequently filed a motion to modify the class definition on April 2, 2020, which Plaintiff opposed. ECF Nos. 227, 230, 232. Lastly, on October 15, 2020, Defendants filed a motion to decertify the classes, but to date, Plaintiff has not opposed that motion. ECF No. 247. All three motions remain pending.

On November 6, 2020, the Court granted the parties' stipulation to stay the present action so the parties could engage in settlement negotiations. ECF Nos. 254–55. The parties participated in their third mediation session with Judge Andersen, which began on November 16, 2020. Settlement Agreement, at 3. Those settlement negotiations continued for several months with the assistance of Judge Andersen and culminated in the parties reaching the proposed Settlement Agreement. Id. On August 10, 2021, Plaintiff filed an unopposed motion for preliminary approval of the class action settlement, which this Court granted. ECF Nos. 265, 270.

**B.    Settlement Agreement**

Pursuant to the Settlement Agreement, Plaintiff seeks to certify the following settlement class ("Settlement Class"): "All individuals who purchased Benecol Spreads in the United States from January 1, 2008 through December 31, 2011 for personal use." Settlement Agreement, at 6. Under the proposed settlement, Defendants "shall make available a total Claim Fund of up to two million dollars ($2,000,000) for payment of Valid Claims, attorneys' fees and expenses, administration costs, and the Incentive Award." Id. at 7. The amount owed to each class member will be determined as follows:

3

> For any Settlement Class Member who provides a Proof of Purchase, the Settlement Class Member shall be entitled to a full monetary refund of the amount(s) shown on the Proof of Purchase, for as many units of the Benecol Spreads as he or she has a Proof of Purchase.
>
> For any Settlement Class Member who does not provide a Proof of Purchase, but who submits a Claim Form, either online or via mail, attesting, swearing or affirming under penalty of perjury that he or she purchased Benecol Spreads during the Settlement Class period, the amount paid to each Settlement Class Member will be $5 per unit of Benecol Spreads, with a cap of 4 units per Settlement Class Member (i.e., up to $20 per Settlement Class Member).
>
> Payments to Claimants may be subject to pro rata reduction if the total value of all Valid Claims exceeds the $2 million Claim Fund after reduction of the Claim Fund by the payment of attorneys' fees and expenses, administration costs, and the Incentive Award.

Id. at 8.  Furthermore, Class Counsel will seek "payment for an award of attorneys' fees, costs and expenses of up to one-third of the total value of the Settlement[,]" as well as "an Incentive Award payable to the Class Representative in an amount not to exceed $7,500.00."[3]  Id. at 10.

## ANALYSIS

**A.    Class Certification**

A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a)[4] have been met, and that at least one of the requirements of Rule 23(b) have been met.  Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  The Court has already determined that certification of the Settlement Class solely for purposes of settlement is appropriate in that:  (1) the class members are so numerous that joinder of all class

---

[3] The Settlement Agreement lists "Class Counsel" as Scott A. Bursor and the law firm Bursor & Fisher, P.A., and the "Class Representative" as the named Plaintiff JoAnn Martinelli.  Settlement Agreement, at 4.

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

4

members is impracticable; (2) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (3) Plaintiff's claims are typical of the claims of the Settlement Class; (4) Plaintiff and her counsel have fairly and adequately represented and protected the interests of the Settlement Class;[5] and (5) a class action and class-wide resolution of the action via class action settlement procedures is superior to other available methods for the fair and efficient adjudication of the controversy.  See ECF No. 270, at 3.  No party or class member has objected to certification of the Settlement Class, and there is nothing before the Court to suggest that these prior findings should not be affirmed.  Therefore, the Court affirms its prior certification of the Settlement Class for settlement purposes inasmuch as the requirements of Rule 23(a)–(b) are satisfied.

### B.    Fairness Determination

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e). "Approval under [Rule] 23(e) is a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).  "The universally applied standard in determining whether a court should grant final approval to a class action settlement is whether the settlement is fundamentally fair, adequate, and reasonable."  Id. (citation and internal quotation marks omitted).

"In December 2018, Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'"  Briseño v. Henderson, 998 F.3d 1014, 1023 (9th Cir. 2021). Specifically, Rule 23(e)(2) provides the following:

---

[5] See also Fed. R. Civ. P. 23(e)(2)(A) (in determining whether the proposed settlement is fair, reasonable and adequate, a court must consider, in part, whether "the class representatives and class counsel have adequately represented the class").

>If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>(A) the class representatives and class counsel have adequately represented the class;
>
>(B) the proposal was negotiated at arm's length;
>
>(C) the relief provided for the class is adequate, taking into account:
>
>(i) the costs, risks, and delay of trial and appeal;
>
>(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
>(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
>(iv) any agreement required to be identified under Rule 23(e)(3);[6] and
>
>(D) the proposal treats class members equitably relative to each other.

See also Briseño, 998 F.3d at 1023–24. In the Ninth Circuit, "a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by" the following factors:

>(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Kim v. Allison, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935, 946 (9th Cir. 2011)); but see Briseño, 998 F.3d at 1025–26 (recognizing that while most factors "fall within the ambit of the revised Rule 23(e)," "Congress provided district courts with new instructions—such as analyzing the 'terms of the settlement' and 'terms of any proposed award of attorney's fees'—that

---

[6] "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

require them to go beyond our precedent."). The Ninth Circuit has made clear that these factors are not an "exhaustive list of relevant considerations," and that "the relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case." Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 625 (9th Cir. 1982). Furthermore, the Court must ensure that the parties reached their settlement through arms-length negotiation and that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Id.

### 1. Procedural Fairness

Before examining the aforementioned factors, the Court must "consider the procedure by which the parties arrived at their settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud." Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 613 (E.D. Cal. 2015); see also Fed. R. Civ. P. 23(e)(2)(B) (considering whether "the proposal was negotiated at arm's length"). "Participation in mediation tends to support the conclusion that the settlement process was not collusive." Palacios v. Penny Newman Grain, Inc., No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *8 (E.D. Cal. July 6, 2015) (citation and internal quotation marks omitted); but see In re Bluetooth, 654 F.3d at 948 ("[T]he mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement.").

As noted above, the parties engaged in three separate mediations by Judges Brown and Andersen at JAMS before reaching the proposed Settlement Agreement. See Settlement Agreement, at 3; Deckant Decl. ISO Mot. Final Approval, ECF No. 273-1, at 2 ¶ 3 (stating, in part, that the parties "reached a fair and reasonable compromise after negotiating the terms of the Settlement at arms'-length and with the assistance of neutral mediators."). In addition to the mediations, the parties, represented by experienced counsel, engaged in written discovery and contested motion practice over


six years, meaning, as this Court previously found, that "the Parties and their counsel had sufficient information to evaluate the strengths and weaknesses of the case and to conduct informed settlement discussions." ECF No. 270, at 2.  As a result, the Court finds that the parties' negotiations constituted genuine and informed arms-length bargaining.

### 2. Substantive Fairness

In determining whether the proposed Settlement Agreement is fair, reasonable, and adequate, the Court will address each of the factors set forth by Rule 23(e)(2) and Ninth Circuit precedent.

#### a. Strength of the Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation; and Risk of Maintaining Class Action Status Throughout Trial

Regarding these three factors, "the Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Shames v. Hertz Corp., No. 07-CV-2174-MMA (WMC), 2012 WL 5392159, at *5 (S.D. Cal. Nov. 5, 2012) (quoting Nat'l Rural Telecomms., 221 F.R.D. at 526); see also Fed. R. Civ. P. 23(e)(2)(C)(i) (considering "the costs, risks, and delay of trial and appeal").  Here, while the parties have engaged in extensive discovery and contested motion practice, there is no guarantee that Plaintiff and the Settlement Class would obtain a favorable, unanimous jury verdict.  Since its inception, Defendants have vigorously defended against this action by challenging liability and asserting defenses on the merits under Rules 8 and 12(b).  Deckant Decl. ISO Mot. Final Approval, ECF No. 273-1, at 2–3 ¶ 5.  Although this Court previously granted, in part, Plaintiff's motion for class certification, Defendants have subsequently moved to decertify the class or modify the class definition, "both of which pose a risk that most or all Class Members would recover nothing."  Deckant Decl. ISO Mot. Att'y Fees, ECF No. 271-1, at 5 ¶ 17. Furthermore, both sides have retained expert witnesses, which, should this case go to trial, makes it "virtually impossible to predict with any certainty which testimony would be

credited, and ultimately, which expert version would be accepted by the jury." Mot. Final Approval, at 20. Even if Plaintiff "prevail[s] at every stage of this litigation, there remains a substantial likelihood that Class Members would not be awarded significantly more than (or even as much as) is offered under this settlement." Id.

Moreover, it is clear that the litigation would continue on far longer, possibly for years, if the case did not settle. This case has already been ongoing for over seven years and no trial date is currently set. Additionally, the Court has not yet ruled on Defendants' pending motions to decertify the class or modify the class definition, and the parties have indicated their intentions to file motions for summary judgment in the absence of settlement. See Deckant Decl. ISO Mot. Final Approval, ECF No. 273-1, at 2–3 ¶ 5. Needless to say, such protracted litigation would likely come at considerable expense to both parties. Thus, these factors weigh in favor of approving the Settlement Agreement.[7]

### b. Settlement Amount; Distribution of Relief; and Equitable Treatment

To determine whether the Settlement Amount is fair, "the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." Shames, 2012 WL 5392159, at *6 (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000)); see also Fed. R. Civ. P. 23(e)(2)(C)(ii), (D) (considering "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" and whether "the proposal treats class members equitably relative to each other"). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not

---

[7] Under Rule 23(e)(2)(C)(iv) and (e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." According to Plaintiff, "there is related litigation pending in the Southern District of New York, captioned Chamlin v. Johnson & Johnson, No. 1:19-cv-03852-AJN (S.D.N.Y.), bringing similar claims regarding the alleged mislabeling of Benecol Spreads under New York law." Mot. Final Approval, at 26–27. "On or about July 19, 2021, Defendants' counsel, Plaintiff's counsel, and the parties to the Chamlin matter entered into a separate individual settlement of the claims asserted in that action, as part of their efforts to resolve all Benecol litigation against Defendants." Id.

9

per se render the settlement inadequate or unfair." In re Mego, 213 F.3d at 459 (quoting Officers for Just., 688 F.2d at 628).

Here, the total proposed gross settlement amount is $2,000,000 "for payment of Valid Claims, attorneys' fees and expenses, administration costs, and the Incentive Award." Settlement Agreement, at 7. To date, the Settlement Administrator JND Legal Administration ("JND") "has received a total of 63,654 preliminarily valid Claim Forms (63,233 Online Claim Forms submitted electronically and 421 Claim Forms submitted by mail)." Keough Decl., ECF No. 273-2, at 7 ¶ 29. "Of these, 309 claims with Proof of Purchase were submitted and 63,344 claims without Proof of Purchase were submitted." Id. Based on these numbers, the following estimates are provided:

> At the current claims rate, assuming that attorneys' fees, costs and expenses, and the client incentive award are approved in full, JND estimates that a pro rata reduction will be necessary, such that "each Settlement Class Member providing Proof of Purchase will receive a pro rata average of $44.54 and each claimant whose submitted claim did not include Proof of Purchase will receive a pro rata average of $12.87."

Mot. Final Approval, at 22 (citing Keough Decl., ECF No. 273-2, at 7 ¶ 29); see also Settlement Agreement, at 8. According to Plaintiff, "[t]his is an excellent recovery, given Plaintiff's theory of damages, which 'rests on the fact that a certain percentage of the price consumers paid for Benecol constituted a [20.8%] price premium [about $1.00] solely attributable to the No Trans Fat claim." Mot. Final Approval, at 22 (citing Mot. Class Certification, ECF No. 174, at 18) (brackets in original); see also Deckant Decl. ISO Mot. Att'y Fees, ECF No. 271-1, at 5 ¶ 15 ("Plaintiff sought damages based on a 'price premium' theory, amount to approximately $1.00 per tub of Benecol Spreads.").

Similarly, Rule 23(e) requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). As previously addressed, the Settlement Agreement offers a full monetary refund for class members who submit a Proof of Purchase whereas those who only submit a Claim Form may still receive

///

between $5 to $20.  Settlement Agreement, at 8.  Regarding distribution of funds, under the Settlement Agreement,

> [e]very Claimant will have the option of receiving payment by check or by electronic payment.  Claimants may select an electronic payment option on the Claim Form for payment of a claim.  If the Claimant does not select any payment option, the Claimant will be sent payment by check.  All settlement checks issued to Claimants will be valid and negotiable for a period of one hundred twenty (120) days.

Settlement Agreement, at 8.  The method of distribution outlined here is a proper and effective method for processing class member claims and "ensure[s] that it facilitates filing legitimate claims."  Alvarez v. Sirius XM Radio Inc., No. CV 18-8605 JVS (SSx), 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes).

Finally, the Court also finds the pro rata distribution set forth in the Settlement Agreement to be equitable.  See Fed. R. Civ. P. 23(e)(2)(D) (considering whether "the proposal treats class members equitably relative to each other"); Settlement Agreement, at 8.  Class Members who submit a Proof of Purchase are entitled to receive "a full monetary refund of the amount(s) shown on the Proof of Purchase" with no limit on the number of units purchased.  Id.  Those who submit a Claim Form and not a Proof of Purchase are still entitled to receive a pro rata share albeit for a limited amount, but the Court does not find this to be unfair.  Id. (stating that such class members may receive "$5 per unit of Benecol Spreads, with a cap of 4 units per Settlement Class Member (i.e., up to $20 per Settlement Class Member).").  Overall, the Court finds that the settlement amount and its distribution to the class members are fair, reasonable, and adequate, and thus these factors weigh in favor of approving the Settlement.

### c. Extent of Discovery and Stage of Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citation omitted).  Here, Plaintiff provides the following:

///

11

> Plaintiff, by and through her counsel, has conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation, through: (1) performing extensive pre-litigation investigation into the Benecol Spreads and associated marketing to assist with the drafting of Plaintiff's complaint; (2) serving multiple rounds of discovery requests on Defendants and seeking discovery from third parties; (3) reviewing thousands of documents produced by Defendants, including complex scientific and statistical documents; (4) taking depositions of Defendants' three expert witnesses and several fact witnesses; and (5) defending the depositions of Plaintiff Martinelli and her physician, as well as Plaintiff's expert witnesses. The parties also held numerous telephonic and written discussions regarding Plaintiff's allegations, discovery, and the prospects of settlement, as well as three mediation sessions.

Mot. Final Approval, at 23 (citing Deckant Decl. ISO Mot. Att'y Fees, ECF No. 271-1, at 2 ¶ 3). As previously discussed, the parties have also engaged in contested motion practice, including motions for class certification and to exclude expert testimony and evidence. The Court finds that after seven years of litigation and extensive discovery, the parties have gained a clear view of the strengths and weaknesses of their cases, thus enabling them to engage in meaningful settlement negotiations. These factors weigh in favor of finding the Settlement fair, reasonable, and adequate.

### d.    Experience and Views of Counsel

In this case, Class Counsel "has significant experience in litigating class actions of similar size, scope, and complexity to the instant action." Deckant Decl. ISO Mot. Final Approval, ECF No. 273-1 at 3–4 ¶ 10; see also Ex. 2, id., at 74–101 (firm resume). They have been appointed class counsel in dozens of state and federal court cases and have "served as trial counsel for class action plaintiffs in six jury trials," winning all six with multimillion dollar recoveries. Id. at 3–4 ¶¶ 10–11; see also Deckant Decl. ISO Mot. Att'y Fees, ECF No. 271-1, at 6–11 ¶¶ 21–22. As indicated in its prior Order, the Court is satisfied that Class Counsel has adequately represented the class. ECF No. 270 ¶¶ 4, 6; see also Fed. R. Civ. P. 23(e)(2)(A) (considering, in part, whether "class counsel have adequately represented the class"). As such, Class Counsel's support of the Settlement is accorded significant consideration and weighs heavily in favor of finding the

1  Settlement fair, reasonable, and adequate. See Nat'l Rural Telecomms., 221 F.R.D.
2  at 528 (according great weight to the "recommendation of counsel, who are most closely
3  acquainted with the facts of the underlying litigation[,]" because "parties represented by
4  competent counsel are better positioned than courts to produce a settlement that fairly
5  reflects each party's expected outcome in the litigation.") (citation omitted).

### e.   Reaction of Class Members

In the Ninth Circuit, the number of class members who object to a proposed settlement is a factor the Court may consider in its settlement approval analysis. Rodriguez v. W. Pub. Corp., 563 F.3d 948, 963 (9th Cir. 2009). "The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement." Shames, 2012 WL 5392159, at *8 (citations omitted). Here, no class members have objected to or opted out of the Settlement. Keough Decl., ECF No. 273-2, at 6–7 ¶¶ 25, 27. Notice to the class members was administered in the method previously approved by this Court. See ECF No. 270, at 4–5; see generally Keough Decl., ECF No. 273-2. This factor thus weighs in favor of the Settlement Agreement. After considering all of the Rule 23(e)(2) and Ninth Circuit factors, the Court finds that the Settlement Agreement is fair, reasonable, and adequate, and Plaintiff's unopposed Motion for Final Approval is thus GRANTED.

### C.   Attorneys' Fees and Expenses

Where the payment of attorneys' fees is part of the negotiated settlement, the fee settlement must be evaluated for fairness in the context of the overall settlement. Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); see also Fed. R. Civ. P. 23(e)(2)(C)(iii) (considering "the terms of any proposed award of attorney's fees, including timing of payment"). Courts must ensure that the attorneys' fees awarded in a class action are reasonable, even if the parties have already agreed on an amount. In re Bluetooth, 654 F.3d at 941; see Briseño, 998 F.3d at 1024–25 (holding that "courts must apply Bluetooth's heightened scrutiny" to both pre- and post-class certification settlements "in assessing whether the division of funds between the

class members and their counsel is fair and 'adequate.'"). In the Ninth Circuit, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295–96 (9th Cir. 1994)).

Under the percentage-of-recovery method, the prevailing attorneys are awarded a percentage of the common fund recovered for the class. Id. In applying this method, courts typically set a benchmark of 25 percent of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record. Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). Under the lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the hours they reasonably expended on the litigation times their reasonably hourly rates. Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003).

Under either method, the amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." In re Bluetooth, 654 F.3d at 942. Even if the court chooses to apply the percentage-of-recovery method, calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award. Vizcaino, 290 F.3d at 1050–51.

Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has held that "district courts must apply the Bluetooth factors to scrutinize fee arrangements . . . to determine if collusion may have led to class members being shortchanged." Briseño, 998 F.3d at 1026. Those three factors are: (1) whether "counsel receive[d] a disproportionate distribution of the settlement," (2) whether the parties agreed to a "'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and

1 (3) whether "the parties arrange for fees not awarded to revert to defendants rather than
2 be added to the class fund[.]" In re Bluetooth, 654 F.3d at 947 (citations omitted); see
3 also Briseño, 998 F.3d at 1026–27 (stating that, while "[d]isproportionate fee awards,
4 clear sailing agreements, and kicker clauses all may be elements of a good deal[,] . . .
5 they may also signal a collusive settlement, and district courts must scrutinize them
6 where they appear.").

7 In addition, the Ninth Circuit has identified a number of other factors that may be
8 relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks
9 of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the
10 fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.
11 Vizcaino, 290 F.3d at 1048–50. Based on these factors, the percentage amount can be
12 adjusted upward or downward depending on the circumstances of the case. Paul,
13 Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989). Indeed, "in most
14 common fund cases, the award exceeds th[e] benchmark." In re Omnivision Techs.,
15 Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Percentage awards of between
16 twenty and thirty percent are common. See In re Activision Sec. Litig., 723 F. Supp.
17 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that
18 nearly all common fund awards range around 30% even after thorough application of
19 either the lodestar or twelve-factor method."); Vizcaino, 290 F.3d at 1047. Nonetheless,
20 an explanation is necessary when the district court departs from the 25% recovery
21 benchmark. Powers, 229 F.3d at 1256–57.

22 Here, Class Counsel seeks an award of $666,666.66 for attorneys' fees and
23 reimbursement of costs and expenses, which amounts to approximately 33 ⅓ percent of
24 the settlement amount. Mot. Att'y Fees, at 2, 9. Based on the Court's review of the
25 case; the positive results received after seven years of litigation that included extensive
26 discovery, contested motion practice, and mediation; the risks taken on by counsel (and
27 specifically, by accepting the case on contingency, see Deckant Decl. ISO Mot. Att'y
28 Fees, ECF No. 271-1, at 17 ¶ 33); and the experience and skill of counsel, the Court

15

finds this award to be fair and reasonable. Though 33 ⅓ percent represents an upward departure from the standard 25 percent benchmark, the Court finds it appropriate under the circumstances. Moreover, a comparison to awards typically made in common fund cases suggests that an award amounting to one-third of the settlement amount is appropriate here. See In re Omnivision Techs., Inc., 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds th[e] benchmark."). Lastly, Defendants have agreed to the requested fees and no class member has objected, further supporting a finding that the fees are reasonable.

As for the lodestar crosscheck, at the time of briefing, Class Counsel had expended 2,901.1 hours over six years of litigation. Deckant Decl. ISO Mot. Att'y Fees, ECF No. 271-1, at 11 ¶ 25; see also Ex. 3, id., at 119–70. Given that this lengthy case has included extensive discovery, contested motion practice, and three rounds of mediation, the Court has no reason to believe that a favorable result could have been achieved in less time, nor is there any indication that counsel spent unnecessary time on the case.

As for counsel's hourly rates, a range of $250 per hour for associates to $1,000 per hour for the most senior partners, or a blended rate of $670.18 per hour, is high in this district.[8] As many cases in the Eastern District observe, "prevailing hourly rates in the Eastern District of California are in the $400/hour range," with some courts noting a higher range for partners, commensurate with experience. Bond v. Ferguson Enterprises, Inc., No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011); see also Zakskorn v. Am. Honda Motor Co., Inc., No. 2:11-cv-02610-KJM-KJN, 2015 WL 3622990, at *14 (E.D. Cal. June 9, 2015). Thus, the Court finds

---

[8] Class Counsel contends that its rates "have been deemed reasonable by Courts across the country, including in California, New York, Michigan, Illinois, Missouri, and New Jersey[,]" and that "[n]o court has ever cut [their] fee application by a single dollar on the ground that [their] hourly rates were not reasonable." Deckant Decl. ISO Mot. Att'y Fees, ECF No. 271-1, at 12–13 ¶¶ 29–30. But while the Court must certainly take into account the "rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney" as "evidence of the prevailing market rate," United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990), the rate determinations by other district judges are not binding on this Court.

counsel's reference to a current lodestar of $1,944,259.20 to be high (2,901.1 hours x blended hourly rate of $670.18).  However, counsel appears to have taken this into consideration in its request of $666,666.66, which includes a negative multiplier of 0.34 based on their current lodestar.  Deckant Decl. ISO Mot. Att'y Fees, ECF No. 271-1, at 11 ¶ 25.  Furthermore, Class Counsel does not seek a separate award for the reimbursement of costs and expenses.  See id. at 11–12 ¶ 27 (stating that Class Counsel "has expended $289,500.70 in out-of-pocket expenses in connection with the prosecution of this action.").  Given the foregoing, the Court finds the lodestar amount reasonable.  Ultimately, the Court finds that 33 ⅓ percent of the common fund, or $666,666.66, is a fair and reasonable award for attorneys' fees and reimbursement of costs and expenses in this case and does not constitute a disproportionate distribution of the settlement.[9]  See In re Bluetooth, 654 F.3d at 947.

### D. Incentive Award

"Named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."  Staton, 327 F.3d at 977.  The district court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion."  Id. at 975.  To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."  Id.

Here, Plaintiff requests an incentive award of $7,500, which constitutes approximately 0.38 percent of the total settlement amount.  Mot. Att'y Fees, at 22.  Courts have generally found that $7,500 incentive payments are reasonable.  See, e.g., Pelletz v. Weyerhaeuser Co., 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) (approving incentive awards of $7,500 each to the four class representatives of a class between 110,000 and 140,000 members in a settlement for an unspecified amount and

---

[9] The Settlement Agreement does not contain a clear sailing agreement or a kicker clause.

in which attorneys' fees were capped at $1.75 million); Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau, No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (awarding incentive payment of $7,500 to class representative of a class of 8,057 members in a settlement of $1.5 million).

According to a declaration from Class Counsel,

> Throughout the litigation, Plaintiff Martinelli held regular meetings with Class Counsel by phone and through email to receive updates on the progress of the case and to discuss strategy. She assisted in Class Counsel's pre-suit investigation by discussing her experiences, she assisted in drafting the complaints that have been filed in this action, and she reviewed the complaints for accuracy before they were filed. She also searched for and produced documents, responded to Defendants' interrogatories, and sat for a full-day deposition, as did her husband.
>
> Plaintiff Martinelli was intimately involved in the settlement process, and has continued to keep abreast of settlement progress to date. Thus, Plaintiff Martinelli was actively involved in the litigation and devoted substantial time and effort to the case.

Deckant Decl. ISO Mot. Att'y Fees, ECF No. 271-1, at 19 ¶¶ 40–41. However, the average recovery under the settlement is approximately $44.54 for class members providing Proof of Purchase and $12.87 for those who do not. See Keough Decl., ECF No. 273-2, at 7 ¶ 29. The disparity between the approximate class member recovery and the proposed $7,500 incentive award to Plaintiff is considerable, particularly in light of the fact that there is no evidence that Plaintiff spent more time assisting counsel than occurs in the average case. Instead, the Court awards Plaintiff an incentive award of $5,000, which is approximately 0.25 percent of the total settlement amount and still considerable in light of the average class member recovery.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Final Approval of Class Action Settlement, ECF No. 273, is GRANTED. Plaintiff's Motion for an Award of Attorneys'

Fees, Reimbursement of Costs and Expenses, and an Incentive Award, ECF No. 271, is GRANTED in part and DENIED in part.  The Court hereby orders as follows:

1. The Court certifies for settlement purposes only a class consisting of all individuals who purchased Benecol Regular and Benecol Light Spreads in the United States from January 1, 2008, through December 31, 2011, for personal use.  This class satisfies the applicable criteria for class certification under Rule 23(a) and (b)(3);

2. Scott A. Bursor and Bursor & Fisher, P.A., are appointed as Class Counsel;

3. Class Counsel is awarded attorneys' fees, costs, and expenses in the amount of $666,666.66, to be paid in the time and manner described in the Settlement Agreement;

4. Plaintiff JoAnn Martinelli is appointed the Class Representative;

5. The Class Representative is awarded $5,000 as an incentive award, to be paid in the time and manner described in the Settlement Agreement;

6. This action is hereby DISMISSED with prejudice and without costs as against Defendants and Released Persons;

7. The Court reserves continuing jurisdiction over the parties for the purposes of implementing, enforcing, and/or administering the Settlement Agreement or enforcing the terms of the judgment;

8. All pending motions and hearing dates are hereby VACATED; and

9. The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated: September 8, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

19